## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

ALAN GOLDMAN,

      Plaintiff

           v.

MCCONNELL VALDES, LLC;
ANTONIO A. ARIAS-LARCADA, his wife
MRS. ARIAS, and the Conjugal Partnership
composed by them;
JOSE IRIZARRY-CASTRO;
JOHN DOE; MARY DOE
UNKNOWN INSURANCE COMPANY;

      Defendants

CIVIL NO.:  24cv01136(SCC)

## ANSWER TO VERIFIED AMENDED COMPLAINT AND COUNTERCLAIM

**TO THE HONORABLE COURT:**

**NOW APPEAR** co-defendants Antonio Arias Larcada, his wife Mrs. Arias, and the Conjugal Partnership constituted between them, and McConnell Valdés, LLC., through their undersigned counsel, and very respectfully state and pray as follows:

### Jurisdiction and Venue

The allegations regarding jurisdiction and venue are legal conclusions that do not require a responsive pleading.  In the alternative, they are denied for lack of sufficient information at this time to form a belief as to their truth or falseness.

### Parties

1.  Admitted.

2.  Admitted.

3.  Admitted.

4.  As to the allegations of paragraph 4, it is admitted that Mr. and Mrs. Arias are married to each other under the laws of Puerto Rico and that they are residents of and domiciled in Puerto Rico.  The remaining allegations are denied.

5.  The allegations of paragraph #5 are not addressed to the appearing defendants and hence do not require a responsive pleading.  In the alternative, they are denied for lack of sufficient information at this time to form a belief as to their truth or falseness.

6.  The allegations of paragraph #6 are not addressed to the appearing defendants and hence do not require a responsive pleading.  In the alternative, they are denied for lack of sufficient information at this time to form a belief as to their truth or falseness.

7.  The allegations of paragraph #7 are not addressed to the appearing defendants and hence do not require a responsive pleading.  In the alternative, they are denied for lack of sufficient information at this time to form a belief as to their truth or falseness.

**Relevant Facts**

8.  Admitted.

9.  Denied to the extent the quoted language includes the term "real property" which does not appear in the text of Paragraph 15 of the "Option to Purchase Agreement.  Instead, the term "Property" is used therein.  The rest of the allegation is admitted.

10. As to the allegations of paragraph 10, it is admitted, based upon information provided by Mr. Goldman, that he agreed to sell the subject property in Dorado, Puerto Rico for $3,150,000.00.  It is affirmatively alleged that, regardless of whether Mr. Goldman later subjectively considered his agreement to sell the property for $3,150,000 a "mistake", he repeatedly indicated to his counsel that he freely agreed to the purchase price because he needed to liquidate his only available and unencumbered property quickly (and use the $800,000 deposit paid directly to him by Teal Peak) to avoid a default on a separate business deal in Vermont that he was involved in.  It is further affirmatively alleged that Mr. Goldman advised Mr. Arias that he had cut and pasted the relevant language in the contract from another contract, that he claimed he had misunderstood the term "equitable remedies" and that his intent had been to make the Buyer whole in the event the closing did not take place.  The remaining allegations are denied for lack of sufficient information at this time to form a belief as to their truth or falseness.

11. The allegations of paragraph 11 are legal conclusions which do not require a responsive pleading.  In the alternative, they are denied as drafted.

12. The allegations of paragraph 12 are legal conclusions which do not require a responsive pleading.  In the alternative, they are denied as drafted.

13. The allegations of paragraph 13 are legal conclusions which do not require a responsive pleading.  In the alternative, they are denied as drafted.

14. As to the allegations of paragraph 14, it is admitted, upon information and belief and based on representations made by Mr. Goldman, that he is not a lawyer and

did not consult a lawyer when drafting and agreeing to paragraph 15 of the sales contract.  The remaining allegations of paragraph 14 are legal conclusions which do not require a responsive pleading.  In the alternative, they are denied as drafted.

15. The allegations of paragraph 15 are legal conclusions which do not require a responsive pleading.  In the alternative, they are denied for lack of sufficient information at this time to form a belief as to their truth or falseness.

16. Denied.  It is affirmatively alleged that, regardless of whether Mr. Goldman later subjectively considered his agreement to sell the property for $3,150,000 a "mistake", he repeatedly indicated to his counsel that he freely agreed to the purchase price because he needed to liquidate his only available and unencumbered property quickly (and use the $800,000 deposit paid directly to him by Teal Peak) to avoid a default on a separate business deal in Vermont that he was involved in.

17. Admitted.

18. Admitted.

19. Denied.  It is affirmatively alleged that Mr. Arias provided Mr. Goldman with legal advice and representation in order to defend him from the allegations of the Complaint.  At no time did Mr. Arias make any representation to Mr. Goldman as to the final outcome of the case or state that he had "nothing to worry about".  To the contrary, Mr. Arias advised Mr. Goldman that the case involved issues of credibility and that he would have to explain his point of view in court if he were to have any chance of prevailing.  He also advised Mr.

Goldman at various times during the course of the litigation that he should try to settle to avoid the cost and risk of a trial.

20. Denied.  It is affirmatively alleged that Mr. Arias developed a factual and legal theory, based on Mr. Goldman's representations, in order to defend him in the case, and so advised Mr. Goldman.  Such legal theory was grounded in Mr. Arias' reasonable interpretations of the facts and the applicable law, and was never "proven completely wrong as a matter of law."

21. As to the allegations of paragraph 21, it is admitted that Mr. Goldman made several payments to McConnell Valdés totaling approximately $195,893.90 and that he still owes $53,607.30, which McConnel Valdés is still attempting to collect.    The remaining allegations of paragraph 21 are denied.    It is affirmatively alleged that these legal fees and expenses were reasonable and corresponded to legal services and expenses which were in fact provided and incurred and which benefited Mr. Goldman's interests.

22. Admitted, with the caveat that no letters in bold type appear in the original email.

23. Admitted, with the caveats that no letters in bold type appear in the original email and that the quoted language is incomplete and taken out of context.

24. As to the allegations of paragraph 24, it denied that Mr. Arias gave wrong advice and incorrect assurances to the effect that Mr. Goldman could not be ordered by the trial court to sign any deed of purchase and sale of the property. It is affirmatively alleged that Goldman did not consult Arias nor did he seek his advice or permission to repair the home located on the Property, and that he

was warned that he performed such repairs at his own peril due to the pending Teal Peak litigation.  It is further affirmatively alleged that such repairs benefitted Goldman, as the Property had been abandoned, broken into and was in a state of disrepair.  The remaining allegations of paragraph 24 are denied for lack of sufficient information at this time to form a belief as to their truth or falseness.

25. As to the allegations of paragraph 25, it is denied that Mr. Arias made any representations and promises to Mr. Goldman as to the final outcome of the case he was representing him in.  The remaining allegations of paragraph 25 are denied for lack of sufficient information at this time to form a belief as to their truth or falseness.

26. Admitted, with the caveat that no letters in bold type appear in the original quoted language of the Memorandum and Order.  It is affirmatively alleged that, although the Motion to Dismiss was denied by the Court,  Mr. Goldman's legal theory was not dismissed, as the Court ruled that the seller had the burden of demonstrating the lack of proportion between the alleged breach and the penalty, a factual matter to be decided after a bench trial.

27. Denied as drafted.  It is affirmatively alleged that Judge Delgado-Hernandez's Memorandum and Order of March 24, 2022, was discussed with Mr. Goldman at length, explaining both its substance and its effect upon the case.  Goldman was specifically told that because of this Order he would have to prepare himself to testify at a bench trial.

28. As to the allegations of paragraph 28, it is admitted that the Joint Proposed Pretrial Order was filed in Civil Case No. 3:20-civ-1747 and that it stated in part that "Mr. Goldman is not a lawyer and understood that the language and intent behind Clause 15 was for Mr. Goldman to have the right to retain the Property and opt out of the Option Agreement, for whatever reason, before or after the option was exercised by the purchaser, by returning the Option Fee and paying any additional costs…".  It is also admitted that no efforts were made to amend the previous pleadings.  It is affirmatively alleged that the Proposed Pretrial Order was prepared in accordance with Mr. Arias' best legal judgment, which included reasonable choices as to what matters to include therein, including amendments to the pleadings and evidence to be presented at trial.  It is affirmatively alleged that any amendments to the pleadings at that stage were unnecessary and/or unwarranted, and that the substance of the Proposed Pretrial Order was thoroughly communicated to Mr. Goldman, who received and approved a draft before it was filed. The remaining allegations of paragraph 28 are denied.

29. As to the allegations of paragraph 29, it is admitted that in the Joint Proposed Pretrial Order, the buyer alleged damages estimated at $8,160,000.00 for loss of rental income of $35,000.00 per month, and that Mr. Goldman alleged that another neighbor, "Mr. Long then purchased the property next door for $2,500,000.00.  Within a year, Mr. Long flipped the property and sold it to another purchaser for $10,500,000.00 for a multimillion dollars profit."  It is also admitted that the defendant did not seek any legal remedies in the case

under Articles 287 and 290 of the Civil Code of Puerto Rico of 2020 or under the previous Civil Code of Puerto Rico of 1930. It is affirmatively alleged that any such remedies were unwarranted and unnecessary under the facts and the law as understood by the appearing defendants and would not have made any difference in the case, even if relevant. It is affirmatively alleged that the Proposed Pretrial order was prepared in accordance with Mr. Arias' best legal judgment, which included reasonable choices as to what legal theories and evidence could be presented at trial. It is affirmatively alleged that the substance of the Proposed Pretrial Order was thoroughly communicated to Mr. Goldman, who received and approved a draft before it was filed. The remaining allegations of paragraph 29 are denied.

30. Admitted. It is affirmatively alleged that the Proposed Pretrial Order was prepared in accordance with Mr. Arias' best legal judgment, which included reasonable choices as to what evidence to present at trial. It is further affirmatively alleged that while Mr. Goldman's "possible declined mental abilities" or "possible mental state of confusion" might still have been the subject of Goldman's testimony, they were so speculative so as to have little or no bearing on his theory of the case, and even if proven, could potentially backfire and/or make no difference in the outcome. It is further affirmatively alleged that any evidence from treating physicians, medical experts or medical records would have likely been inadmissible and/or would not have played any significant role in the outcome of the case. It is affirmatively alleged that the

substance of the Proposed Pretrial Order was thoroughly communicated to Mr. Goldman, who received and approved a draft before it was filed.

31. Denied.  It is affirmatively alleged that the matters alluded to were not "errors and omissions" and that, in any event, Mr. Goldman was kept reasonably appraised of all significant developments in the case, including the contents of the Proposed Pretrial Order, a draft of which we received and approved before it was filed.

32. It is admitted that on March 26, 2023, Mr. Goldman requested that Mr. Arias and McConnell withdraw from the case.  The remaining allegations are denied for lack of sufficient information at this time to form a belief as to their truth or falseness.

33. Admitted.

34. Denied for lack of sufficient information at this time to form a belief as to their truth or falseness.

35. Denied.  It is affirmatively alleged that Mr. Goldman was first made aware of Judge Delgado's Memorandum and Order shortly after it was issued.

36. Admitted.

**Count 1**
**Unjust Enrichment**
**(as to McConnell Valdés, Mr. Arias and Mr. Irizarry)**

37. The responses to the allegations of paragraphs 1 through 36 are realleged as if fully set forth herein.

38. Admitted.

39. Admitted.

40. Admitted, except the allegation that Mr. Arias is "well known", which is denied.

41. The allegations of paragraph 41 are legal conclusions which do not require a responsive pleading. In the alternative, they are denied.

42. The allegations of paragraph 42 are denied as drafted. It is affirmatively alleged that attorneys are guided by the applicable rules of ethics and professional responsibility which generally require them to avoid provoking unnecessary delays or litigation expenses or charging unreasonable fees.

43. Denied. It is affirmatively alleged that McConnell Valdés, Mr. Arias and Mr. Irizarry complied with their professional duties towards Mr. Goldman by providing reasonable legal counsel, in accordance with Mr. Goldman's stated goals and expectations, and charging necessary and reasonable legal fees for same.

44. Denied. It is affirmatively alleged that McConnell Valdés, Mr. Arias and Mr. Irizarry complied with their professional duties towards Mr. Goldman by providing reasonable legal counsel, in accordance with Mr. Goldman's stated goals and expectations, and charging necessary and reasonable legal fees for same.

45. The allegations of paragraph 45 are legal conclusions which require no responsive pleading. Alternatively, they are denied.

46. Denied. It is affirmatively alleged that McConnell Valdés, Mr. Arias and Mr. Irizarry complied with their professional duties towards Mr. Goldman by providing reasonable legal counsel, in accordance with Mr. Goldman's stated

goals and expectations, and charging necessary and reasonable legal fees for same. It is further affirmatively alleged that the doctrine of unjust enrichment does not apply to this case.

47. Denied. It is affirmatively alleged that McConnell Valdés, Mr. Arias and Mr. Irizarry complied with their professional duties towards Mr. Goldman by providing reasonable legal counsel, in accordance with Mr. Goldman's stated goals and expectations, and charging necessary and reasonable legal fees for same. It is further affirmatively alleged that the doctrine of unjust enrichment does not apply to this case.

48. Denied. It is affirmatively alleged that McConnell Valdés, Mr. Arias and Mr. Irizarry complied with their professional duties towards Mr. Goldman by providing reasonable legal counsel, in accordance with Mr. Goldman's stated goals and expectations, and charging necessary and reasonable legal fees for same. It is further affirmatively alleged that Mr. Goldman suffered no monetary losses as a result of any action or omission of McConnell Valdés, Mr. Arias and Mr. Irizarry.

49. Denied. It is affirmatively alleged that McConnell Valdés, Mr. Arias and Mr. Irizarry complied with their professional duties towards Mr. Goldman by providing reasonable legal counsel, in accordance with Mr. Goldman's stated goals and expectations, and charging necessary and reasonable legal fees for same. It is further affirmatively alleged that the doctrine of unjust enrichment does not apply to this case, and that, in any event, Mr. Goldman suffered no

monetary losses as a result of any action or omission of McConnell Valdés, Mr. Arias and Mr. Irizarry.

50. As to the allegations of paragraph 50, it is admitted that Mr. Goldman mentioned to his lawyers that he had allegedly suffered at least one Transient Ischemic Attack ("TIA"). It is denied that Mr. Goldman indicated that he suffered from any diminished mental capacity; it is affirmatively alleged that Mr. Goldman repeatedly denied having any diminished capacity in conversations with Mr. Arias and Mr. Irizarry.

51. As to the allegations of paragraph 51, it is admitted that Mr. Arias and Mr. Irizarry did not review or obtain Mr. Goldman's medical and psychiatric records, because they were not pertinent to the strategy that they had agreed upon with Mr. Goldman to pursue in defending his interests in the case. It is denied that Mr. Goldman indicated that he suffered from any diminished mental capacity, and it is affirmatively alleged that Mr. Goldman repeatedly denied having any diminished capacity in conversations with Mr. Arias and Mr. Irizarry.

52. As to the allegations of paragraph 52, it is admitted that McConnell Valdés, Mr. Arias and Mr. Irizarry alleged in court filings that Mr. Goldman's was a senior citizen and recovering cancer survivor with underlying medical conditions. The remaining allegations are denied.

53. As to the allegations of paragraph 53, it is admitted that Mr. Goldman's attorneys averred that he "vehemently defends his position that he acted professionally and was willing to close within the exercise period." The

remaining allegations of paragraph 53 are denied. It is affirmatively alleged that, in conversations with Mr. Arias and Mr. Irizarry, Mr. Goldman repeatedly denied having at any time any diminished mental capacity. It is further affirmatively alleged that Mr. Goldman repeatedly indicated to his counsel that he was of sound mind at the time he agreed to sell his property in Puerto Rico, and that he freely agreed to the purchase price because he needed to liquidate his only available and unencumbered property quickly (and use the $800,000 deposit paid directly to him by Teal Peak) to avoid a default on a separate business deal in Vermont that he was involved in. Neither Arias nor Irizarry nor any lawyer from McConnell Valdés was in any way involved in the decision to enter into the "Option to Purchase Agreement" signed by Mr. Goldman on October 23, 2020.

54. Denied. It is affirmatively alleged that, regardless of whether Mr. Goldman later subjectively considered his agreement to sell the property for $3,150,000 a "mistake", he repeatedly indicated to his counsel that he freely agreed to the purchase price because he needed to liquidate his only available and unencumbered property quickly (and use the $800,000 deposit paid directly to him by Teal Peak) to avoid a default on a separate business deal in Vermont that he was involved in. Neither Mr. Arias nor Mr. Irizarry nor any lawyer from McConnell Valdés was in any way involved in the decision to enter into the "Option to Purchase Agreement" signed by Mr. Goldman on October 23, 2020.

55. Denied as drafted. It is affirmatively alleged that, consistent with the theory of the case approved by Mr. Goldman, McConnell and Mr. Arias argued in the

"Answer to Complaint and Counterclaim", on behalf of their client, that "[b]y manipulating the competing offers TPC pressured Mr. Goldman to sell below the market price in Dorado Beach [Estates]" and that "[b]ased on current real estate market in Dorado Beach [Estates] and the specific location of Mr. Goldman's Property, which is above eighty-five (85) foot contour of the exclusive and original Dorado Beach Estate[s], Mr. Goldman estimates that had he closed caving under the pressure of TPC he would have failed to realize in excess of $3,000,000 in the sale."   It is further affirmatively alleged that, although these arguments were made in pleadings, Goldman admitted in writing to the buyer when he lowered the purchase price: "I was greedy", and that he repeatedly indicated to his counsel that he freely agreed to the purchase price because he needed to liquidate his only available and unencumbered property quickly (and use the $800,000 deposit paid directly to him by Teal Peak) to avoid a default on a separate business deal in Vermont that he was involved in.

56. Denied.  It is affirmatively alleged that Mr. Goldman repeatedly denied having any diminished capacity in conversations with Mr. Arias and Mr. Irizarry.  It is further affirmatively alleged that Mr. Goldman repeatedly indicated to his counsel that he was of sound mind at the time he agreed to sell the Property, and that he freely agreed to the purchase price because he needed to liquidate his only available and unencumbered property quickly (and use the $800,000 deposit paid directly to him by Teal Peak) in order to avoid a default on a separate business venture in Vermont that he was involved in.

57. The allegations of paragraph 57 are legal conclusions which require no responsive pleading. In the alternative, they are denied.

58. The allegations of paragraph 58 are denied for lack of sufficient information at this time to form a belief as to their truth or falseness.

COUNT II – BREACH OF CONTRACT – LEGAL MALPRACTICE

(AS TO MCCONNELL VALDES, LLC; MR. ARIAS; MR. IRIZARRY)

59. The responses to the allegations of paragraphs 1 through 58 are realleged as if fully set forth herein.

60. Admitted.

61. Admitted.

62. Admitted, except the allegation that Mr. Arias is "well-known", which is denied.

63. The allegations of paragraph 63 are legal conclusions which require no responsive pleading. Alternatively, they are admitted.

64. Denied. It is affirmatively alleged that the defendants compiled at all times with their contractual obligations towards Mr. Goldman, competently and proficiently representing him, despite Mr. Goldman's own failure to comply with his own contractual obligations towards McConnell Valdés.

65. Denied. It is affirmatively alleged that the defendants gathered all pertinent information, performed competent legal research, and considered the applicable law, always making reasonable choices during their representation of Mr. Goldman to serve his best interests, in accordance with their best professional judgment.

66. Denied.  It is affirmatively alleged that the defendants gathered all pertinent information, performed competent legal research, and considered the applicable law, always making reasonable choices during their representation of Mr. Goldman to serve his best interests, in accordance with their best professional judgment.

67. Denied.  It is affirmatively alleged that the defendants gathered all pertinent information, performed competent legal research, and considered the applicable law, always making reasonable choices during their representation of Mr. Goldman to serve his best interests, in accordance with their best professional judgment.

68. The allegations of paragraph 68 are denied as drafted.  It is affirmatively alleged that this was precisely Mr. Goldman's defense and his expected testimony at trial.

69. The allegations of paragraph 69 are denied.  It is affirmatively alleged that, based on Mr. Goldman's representations, Mr. Goldman signed the "Option to Purchase Agreement" without consulting any attorney, and that neither Mr. Arias nor any other lawyer at McConnell Valdés prepared the "Option to Purchase Agreement" or provided any advice to Mr. Goldman in relation thereto.

70. Denied.  It is affirmatively alleged that McConnell Valdés, Mr. Arias and Mr. Irizarry did not provide "wrong or wrongful advice" to Mr. Goldman, and that even if they had, it would not have constituted a breach of their contract for

professional services, nor would it have given rise to any claim for damages against them.

71. Denied.  It is affirmatively alleged that Mr. Goldman obtained relief for his alleged "mistakes" when he sold the property subject of the suit to the plaintiff for $3,800,000.

72. As to the allegations of paragraph 72, it is admitted that Mr. Goldman paid $195,893.90 in legal fees and expenses to McConnell Valdés.  It is denied that he obtained no relief.  It is affirmatively alleged that Mr. Goldman obtained relief for his alleged "mistakes", both because McConnell defended him competently in the lawsuit filed against him, and because he ultimately sold the property subject of the suit to the plaintiff for $3,800,000.

73. As to the allegation of paragraph 73 that Mr. Goldman spent $242,900, it is denied for lack of sufficient information at this time to form a belief as to its truth or falseness.  The remaining allegations of paragraph 73 are denied.  It is affirmatively alleged that Mr. Goldman acted independently in making the decision to spend money on repairs and maintenance of his property, in part because it had been abandoned and broken into and therefore required both repairs and maintenance.  It is further affirmatively alleged that some portion of the $242,900 Mr. Goldman allegedly spent corresponded to Homeowner Association fees owed by him.  Thus, in addition to the repairs and maintenance expenses which were necessary for upkeep of the Property, as the registered owner of the Property, Mr. Goldman had an obligation to pay thousands of

dollars in Homeowner Association fees during the pendency of the Teal Peak lawsuit.

74. Denied.  It is affirmatively alleged Mr. Goldman suffered no damages as a result of any alleged action or omission by the appearing defendants.

75. The allegations of paragraph 75 are denied for lack of sufficient information at this time to form a belief as to their truth or falseness.  It is affirmatively alleged that neither Mr. Arias nor any other lawyer at McConnell Valdés was in any way involved in the negotiation or execution of the "Option to Purchase Agreement".

76. Denied.   It is affirmatively alleged that the defendants gathered all pertinent information, performed competent legal research, and considered the applicable law, always making reasonable choices during their representation of Mr. Goldman to serve his best interests, in accordance with his instructions and their best professional judgment.

77. Denied.  It is affirmatively alleged that defendants sought adequate relief for their client, always making reasonable choices during their representation of Mr. Goldman to serve his best interests, in accordance with his instructions and their best professional judgment.  Such choices included advising Goldman to manage the risks of litigation by attempting to settle the Teal Peak case.

78. The allegation of paragraph 78 that "it was obvious, or should have been obvious, that the Buyer was obtaining a huge, disproportionate financial advantage, by forcing Seller to transfer an asset that was worth more than twice as much, and probably three times as much, as the sales price that was agreed

upon…" is denied as drafted, as this was not "obvious" to any reasonable observer. Alternatively, it is denied for lack of sufficient information at this time to form a belief as to their truth or falseness. The remaining allegations of paragraph 78 are denied. It is affirmatively alleged that Mr. Goldman repeatedly indicated to his counsel that he freely agreed to the purchase price because he needed to liquidate his only available and unencumbered property quickly (and use the $800,000 deposit paid directly to him by Teal Peak) to avoid a default on a separate business deal in Vermont that he was involved in. It is further affirmatively alleged that neither Mr. Arias nor any other lawyer at McConnell Valdés was in any way involved in the negotiation or execution of the "Option to Purchase Agreement".

79. Denied. It is affirmatively alleged that defendants sought adequate relief for their client and adequately advised him, always making reasonable choices during their representation of Mr. Goldman to serve his best interests, in accordance with his instructions and their best professional judgment.

80. Admitted.

81. Denied as drafted. It is admitted that reference was made in the Proposed Pretrial Order to Mr. Goldman's age and medical conditions and that no physicians were announced as witnesses, because this was not the strategy devised by and discussed with Mr. Goldman to defend his interests at trial. It is affirmatively alleged that the Proposed Pretrial Order was prepared in accordance with Mr. Arias' best legal judgment, which included reasonable choices as to what evidence to present at trial. It is further affirmatively alleged

that Puerto Rico's statutes addressing the need to protect senior citizens were inapplicable to Mr. Goldman, as he was not a resident of Puerto Rico. It is further affirmatively alleged that while Mr. Goldman's "possible declined mental abilities" or "possible mental state of confusion" could well have been the subject of his testimony at trial, they were so speculative so as to have little or no bearing on his theory of the case, and even if proven, could potentially backfire and/or make no difference in the outcome. It is further affirmatively alleged that Mr. Goldman repeatedly indicated to his counsel that he was of sound mind at the time he agreed to sell the Property, and that he freely agreed to the purchase price because he needed to liquidate his only available and unencumbered property quickly (and use the $800,000 deposit paid directly to him by Teal Peak) in order to avoid a default on a separate business venture in Vermont that he was involved in. It is further affirmatively alleged that any evidence from treating physicians, medical experts or medical records would have likely been inadmissible and/or would not have played any significant role in the outcome of the case. Finally, it is affirmatively alleged that the substance of the Proposed Pretrial Order was thoroughly communicated to Mr. Goldman, who reviewed and approved a draft before it was filed.

82. Denied as drafted. It is affirmatively alleged that the Proposed Pretrial Order was prepared in accordance with Mr. Arias' best legal judgment, which included reasonable choices as to what evidence to present at trial. It is further affirmatively alleged that Mr. Goldman was thoroughly briefed on its contents and was provided with a draft before it was filed, which he commented on. It

is further affirmatively alleged that Mr. Arias and McConnell made numerous unsuccessful efforts to secure the services of an appraiser willing to appraise the property, serve as a witness for deposition and testify at trial.  However, even if such an expert could have been secured, it is doubtful that Mr. Goldman would have been willing and able to retain such an expert, based on his history of late payments for legal services and eventual default.   It is further affirmatively alleged that any evidence about the market value of the property would have likely been inadmissible and/or would not have played any significant role in the outcome of the case.

83. Denied.  It is affirmatively alleged that defendants sought adequate relief for their client and adequately advised him, always making reasonable choices during their representation of Mr. Goldman to serve his best interests, in accordance with his instructions and their best professional judgment.  It is further alleged that under Puerto Rico law any claim for legal malpractice sounds in tort, not breach of contract.  It is further affirmatively alleged that Mr. Goldman did not suffer any adverse consequences as a result of any action or omission of the defendants.

84. The allegations of paragraph 84 are denied for lack of sufficient information at this time to form a belief as to their truth or falseness.   It is affirmatively alleged that Mr. Goldman's new counsel did not move the Court to reopen the case, nor did they claim that Mr. Arias or McConnell Valdés had failed to competently represent Mr. Goldman.

85. Denied.  Mr. Goldman can hardly be said to have made a "mistake" when he repeatedly indicated to his counsel that he freely agreed to the purchase price of $3,150,000 because he needed to liquidate his only available and unencumbered property quickly (and use the $800,000 deposit paid directly to him by Teal Peak) to avoid a default on a separate business deal in Vermont that he was involved in.  The allegations of paragraph 85 regarding the market value of the property are denied for lack of sufficient information at this time to form a belief as to their truth or falseness.  To the extent that the remaining allegations of paragraph 85 are legal conclusions, they do not require a responsive pleading.  In the alternative, they are denied.

86. Denied.  It is affirmatively alleged that defendants sought adequate relief for their client, always making reasonable choices during their representation of Mr. Goldman to serve his best interests, in accordance with his instructions and their best professional judgment.

87. Denied as drafted.  It is admitted that reference was made in the Proposed Pretrial Order to Mr. Goldman's age and medical conditions and that no physicians were announced as witnesses, because this was not the strategy devised by and discussed with Mr. Goldman to defend his interests at trial.  It is affirmatively alleged that the Proposed Pretrial Order was prepared in accordance with Mr. Arias' best legal judgment, which included reasonable choices as to what evidence to present at trial.  It is further affirmatively alleged that while Mr. Goldman's "possible declined mental abilities" or "possible mental state of confusion" could well have been the subject of his testimony at

trial, they were so speculative so as to have little or no bearing on his theory of the case, and even if proven, could potentially backfire and/or make no difference in the outcome. It is further affirmatively alleged that Mr. Goldman repeatedly indicated to his counsel that he was of sound mind at the time he agreed to sell the Property, and that he freely agreed to the purchase price because he needed to liquidate his only available and unencumbered property quickly (and use the $800,000 deposit paid directly to him by Teal Peak) in order to avoid a default on a separate business venture in Vermont that he was involved in. It is further affirmatively alleged that any evidence from treating physicians, medical experts or medical records would have likely been inadmissible and/or would not have played any significant role in the outcome of the case. It is affirmatively alleged that the substance of the Proposed Pretrial Order was thoroughly communicated to Mr. Goldman, who reviewed and approved a draft before it was filed.

88. The allegations of paragraph 88 are denied for lack of sufficient information at this time to form a belief as to their truth or falseness.

## COUNT III -TORTS RESULTING FROM EXTRACONTRACTUAL FAULT/NEGLIGENCE

89. The responses to the allegations of paragraphs 1 through 88 are realleged as if fully set forth herein.

90. The allegation of paragraph 90 that "Mr. Arias, Mr. Irizarry, and McConnell Valdés are liable for their joint negligence, as would be the case in any ordinary

tort case" is denied.  The remaining allegations are legal conclusions that do not require any responsive pleading.  In the alternative, they are denied.

91. Denied.  It is affirmatively alleged that Mr. Goldman suffered no damages as a result of any possible action or omission of Mr. Arias, Mr. Irizarry and/or McConnell Valdés.

92. Denied.  It is affirmatively alleged that the defendants gathered all pertinent information, performed competent legal research, and considered the applicable law, always making reasonable choices during their representation of Mr. Goldman to serve his best interests, in accordance with his instructions and their best professional judgment.

93. Denied.  It is affirmatively alleged that the defendants gathered all pertinent information, performed competent legal research, and considered the applicable law, always making reasonable choices during their representation of Mr. Goldman to serve his best interests, in accordance with his instructions and their best professional judgment.  It is further affirmatively alleged that Mr. Goldman suffered no damages as a result of any alleged action or omission of Mr. Arias, Mr. Irizarry and/or McConnell Valdés.

94. Denied.  It is affirmatively alleged that Mr. Goldman obtained relief for his alleged "mistakes", both because McConnel defended him competently in the lawsuit filed against him, and because he ultimately sold the property subject of the suit to the plaintiff for $3,800,000, that is, for $650,000 more than the previously agreed upon purchase price.   It is further affirmatively alleged that

all legal fees and expenses paid by Mr. Goldman to McConnell Valdés were reasonable, proper and necessary in order to competently defend his interests.

95. Denied. It is affirmatively alleged that Mr. Arias gathered all pertinent information, performed competent legal research, and considered the applicable law, always making reasonable choices during his representation of Mr. Goldman to serve the client's best interests, in accordance with his instructions and Mr. Arias' best professional judgment. It is further affirmatively alleged that Mr. Goldman suffered no damages as a result of any alleged action or omission of Mr. Arias.

96. The allegations of paragraph 96 are not addressed to the appearing defendants, and therefore require no responsive pleading. Alternatively, they are denied.

97. The allegations of paragraph 97 are legal conclusions which require no responsive pleading. Alternatively, they are denied. It is affirmatively alleged that the defendants gathered all pertinent information, performed competent legal research, and considered the applicable law, always making reasonable choices during their representation of Mr. Goldman to serve his best interests, in accordance with his instructions and their best professional judgment. It is further affirmatively alleged that Mr. Goldman suffered no damages as a result of any alleged action or omission of Mr. Arias, Mr. Irizarry and/or McConnell Valdés.

98. The allegations of paragraph 98 are legal conclusions which require no responsive pleading. Alternatively, they are denied.

99. Denied.  It is affirmatively alleged that the defendants gathered all pertinent information, performed competent legal research, and considered the applicable law, always making reasonable choices during their representation of Mr. Goldman to serve his best interests, in accordance with his instructions and their best professional judgment.

100.    As to the allegations of paragraph 100, it is denied that "the ensuing unnecessary litigation was the direct cause for" Mr. Goldman paying McConnell Valdés or any other law firm for legal services in connection with such litigation.  It is affirmatively alleged that the underlying litigation was caused exclusively by Mr. Goldman's own actions and omissions and/or the actions of third parties.  The remaining allegations of paragraph 100 are denied for lack of sufficient information at this time to form a belief as to their truth or falseness.

101.    As to the allegations of paragraph 101, it is admitted that "it is not necessary that a lawyer makes the determination of recommending any particular advice with mathematical certainty."  The remaining allegations of paragraph 101 are denied.

102.    Denied as drafted.  It is affirmatively alleged that a lawyer has a duty of care towards his or her client that is determined by the particular circumstances of the representation and the applicable ethical rules, and that he or she must act in accordance therewith.

103.    To the extent the allegations of paragraph 103 are legal conclusions, they require no responsive pleading.  In the alternative, they are denied as drafted.

104.   To the extent the allegations of paragraph 104 are legal conclusions, they require no responsive pleading.  In the alternative, they are denied as drafted.

105.   To the extent the allegations of paragraph 105 are legal conclusions, they require no responsive pleading.  In the alternative, they are denied.  It is affirmatively alleged that Mr. Goldman suffered no damages as a result of any alleged action or omission of Mr. Arias, Mr. Irizarry and/or McConnell Valdés.

106.   To the extent the allegations of paragraph 106 are legal conclusions, they require no responsive pleading.  In the alternative, they are denied as drafted.

107.   Denied.   It is affirmatively alleged that lawyers are subject to such professional standards as are determined by the particular circumstances of the representation and the applicable rules of ethics.

108.   The allegations of paragraph 108 are legal conclusions which require no responsive pleading.  In the alternative, they are denied.

109.   The allegations of paragraph 109 are denied for lack of sufficient information at this time to form a belief as to their truth or falseness.

COUNT IV – CAUSE OF ACTION AGAINST MCCONNELL VALDES, VICARIOUS LIABILITY UNDER ARTICLE 1540 OF THE PUERTO RICO CIVIL CODE

110.    The responses to the allegations of paragraphs 1 through 109 are realleged as if fully set forth herein.

111.   The allegations of paragraph 111 are legal conclusions which require no responsive pleading.

112.    The allegations of paragraph 112 are legal conclusions which require no responsive pleading.  In the alternative, they are denied.

113.    The allegations of paragraph 113 are legal conclusions which require no responsive pleading.  In the alternative, they are denied.

114.    Denied.  It is affirmatively alleged that Mr. Goldman suffered no damages as a result of any alleged action or omission of Mr. Arias, Mr. Irizarry and/or McConnell Valdés.

115.    Denied.  It is affirmatively alleged that Mr. Goldman suffered no damages as a result of any alleged action or omission of Mr. Arias, Mr. Irizarry and/or McConnell Valdés, and that McConnell Valdés is not liable to plaintiff under a *respondeat superior* theory of vicarious liability.

116.    Denied.  It is affirmatively alleged that Mr. Goldman suffered no damages as a result of any alleged action or omission of Mr. Arias and/or McConnell Valdés.

117.    The allegations of paragraph 117 are legal conclusions which require no responsive pleading.  In the alternative, they are denied.

118.    The allegations of paragraph 118 are denied for lack of sufficient information at this time to form a belief as to their truth or falseness.

COUNT V – FAILURE TO REPORT MALPRACTICE

119.    The responses to the allegations of paragraphs 1 through 118 are realleged as if fully set forth herein.

120.    Admitted, insofar as it is a general statement about lawyers and not meant to allege any mistake on the part of the appearing defendants.

121.    Denied.  It is affirmatively alleged that no cause of action is recognized under Puerto Rico law for a lawyer's failure to self-report an error.

122.    The allegations of paragraph 122 are legal conclusions which require no responsive pleading.  In the alternative, they are denied.

123.    Denied.  It is affirmatively alleged that the appearing defendants complied at all times with their professional duties towards Mr. Goldman, providing competent representation and regularly communicating with him regarding the same, always making reasonable choices during their representation of Mr. Goldman to serve his best interests, in accordance with his instructions and their best professional judgment.

124.    The allegations of paragraph 124 are legal conclusions which require no responsive pleading.  In the alternative, they are denied. It is affirmatively alleged that no cause of action is recognized under Puerto Rico law for a lawyer's failure to self-report an error.

125.    The allegations of paragraph 125 are legal conclusions which require no responsive pleading.  In the alternative, they are denied. It is affirmatively alleged that plaintiff lacks a cause of action for fee forfeiture or any other equitable or legal remedy against the appearing defendants.

126.    The allegations of paragraph 126 are legal conclusions which require no responsive pleading.  In the alternative, they are denied. It is affirmatively alleged that no cause of action is recognized under Puerto Rico law for a lawyer's failure to self-report an error.

127.    Denied.  It is affirmatively alleged that the appearing defendants complied at all times with their professional duties towards Mr. Goldman, providing competent representation and regularly communicating with him regarding the same, always making reasonable choices during their representation of Mr. Goldman to serve his best interests, in accordance with his instructions and their best professional judgment. It is further affirmatively alleged that no cause of action is recognized under Puerto Rico law for a lawyer's failure to self-report an error.

128.    The allegations of paragraph 128 are legal conclusions which require no responsive pleading.

129.    Denied.  It is affirmatively alleged that the appearing defendants complied at all times with their professional duties towards Mr. Goldman, providing competent representation and regularly communicating with him regarding the same, always making reasonable choices during their representation of Mr. Goldman to serve his best interests, in accordance with his instructions and their best professional judgment. It is further affirmatively alleged that no cause of action is recognized under Puerto Rico law for a lawyer's failure to self-report an error.

130.    Denied.  It is affirmatively alleged that no conflict exists or has ever existed between the appearing defendants, and/or that any of the appearing defendants acted at any time in a manner which was adverse to the interests of Mr. Goldman.

131.    The allegations of paragraph 131 are legal conclusions which require no responsive pleading. In the alternative, they are denied.

132.    The allegations of paragraph 132 are legal conclusions which require no responsive pleading. In the alternative, they are denied.

133.    The allegations of paragraph 133 are legal conclusions which require no responsive pleading. In the alternative, they are denied.

134.    Denied. It is affirmatively alleged that the appearing defendants did not engage in any negligent or faulty conduct, and that Mr. Goldman suffered no damages as a result of any alleged action or omission of Mr. Arias, Mr. Irizarry and/or McConnell Valdés.

135.    The allegations of paragraph 135 are legal conclusions which require no responsive pleading. In the alternative, they are denied.

136.    The allegations of paragraph 136 are denied for lack of sufficient information at this time to form a belief as to their truth or falseness.

COUNT VI – UNDER THE PUERTO RICO INSURANCE CODE

137.    The responses to the allegations of paragraphs 1 through 136 are realleged as if fully set forth herein.

138.    Denied. It is affirmatively alleged that, under the facts of this case and the applicable law, no casualty or liability insurance carrier can be held liable for any alleged action or omission of Mr. Arias, Mr. Irizarry and/or McConnell Valdés.

139.    Denied. It is affirmatively alleged that the appearing defendants did not engage in negligent or faulty conduct, and/or breach any legal duty they may

have owed Mr. Goldman, and that Mr. Goldman suffered no damages as a result of any alleged action or omission of Mr. Arias, Mr. Irizarry and/or McConnell Valdés.

140.    The allegations of paragraph 140 are legal conclusions which require no responsive pleading.  In the alternative, they are denied.

141.    The allegations of paragraph 141 are denied for lack of sufficient information at this time to form a belief as to their truth or falseness.

COUNT VII – AS TO ALL COUNTS, THE ACTUAL DAMAGES

142.    The responses to the allegations of paragraphs 1 through 141 are realleged as if fully set forth herein.

143.    Denied.  It is affirmatively alleged that the appearing defendants did not engage in negligent or faulty conduct, and/or breach any legal duty they may have owed Mr. Goldman, and that Mr. Goldman suffered no damages as a result of any alleged action or omission of Mr. Arias, Mr. Irizarry and/or McConnell Valdés.

144.    Denied.  It is affirmatively alleged that Mr. Goldman suffered no damages as a result of any alleged action or omission of Mr. Arias, Mr. Irizarry and/or McConnell Valdés.

145.    Denied.  It is affirmatively alleged that Mr. Goldman freely and voluntarily retained McConnell Valdés and Mr. Arias to assist him in defending himself against a claim of breach of a contract which Mr. Goldman himself insisted he had no duty to honor, and that he was not "induced" to defend himself from this claim by the defendants or anybody else.  It is further affirmatively alleged that

the appearing defendants complied at all times with their professional duties towards Mr. Goldman, providing competent representation and regularly communicating with him regarding the same, always making reasonable choices during their representation of Mr. Goldman to serve his best interests, in accordance with his instructions and their best professional judgment.

146. As to the allegations of paragraph 146, it is denied that Mr. Arias, Mr. Irizarry and/or McConnell Valdés gave Mr. Goldman "incorrect, wrong, or wrongful and inadequate legal advice" and that their legal advice caused any damage to Mr. Goldman. The remaining allegations of paragraph 146 are denied for lack of sufficient information at this time to form a belief as to their truth or falseness.

147. The allegations of paragraph 147 are denied for lack of sufficient information at this time to form a belief as to their truth or falseness.

148. Denied. It is affirmatively alleged that Mr. Goldman suffered no damages as a result of any alleged action or omission of Mr. Arias, Mr. Irizarry and/or McConnell Valdés.

149. As to the allegations of paragraph 149, it is admitted that the quoted portions of Exhibit 1 are accurate, albeit incomplete, with the caveat that no letters in the quoted language appear in bold type in the original document. It is denied that these statements were meant to describe the state of the applicable law in Puerto Rico.

150. As to the allegations of paragraph 150, it is denied that Mr. Arias, Mr. Irizarry and/or McConnell Valdés gave Mr. Goldman incorrect, wrong, or

wrongful and inadequate legal advice and/or that any advice they provided constituted professional malpractice. It is further denied that Mr. Goldman at any time lacked informed consent as to whether to continue to litigate his case or not. It is affirmatively alleged that Mr. Goldman suffered no damages as a result of any alleged action or omission of Mr. Arias, Mr. Irizarry and/or McConnell Valdés.

151.    Denied. It is affirmatively alleged that Mr. Goldman suffered no damages as a result of any alleged action or omission of Mr. Arias, Mr. Irizarry and/or McConnell Valdés.

152.    The allegation of paragraph 152 is a jury trial demand which as such requires no responsive pleading. In the alternative, it is denied.

## AFFIRMATIVE DEFENSES

1.  The Verified Amended Complaint fails to state a claim upon which relief may be granted.

2.  The doctrine of unjust enrichment does not apply to this case.

3.  Puerto Rico law does not recognize a cause of action for breach of contract in an alleged legal malpractice case.

4.  Puerto Rico law does not recognize a cause of action for failure to self-report legal malpractice.

5.  The appearing defendants complied at all times with their professional duties towards Mr. Goldman, providing competent representation and regularly communicating with him regarding the same, always making reasonable

choices during their representation of Mr. Goldman to serve his best interests, in accordance with his instructions and their best professional judgment.

6.  Reasonable choices made by lawyers regarding a particular strategy to be pursued in litigation do not constitute legal malpractice as a matter of law.

7.  The plaintiff was reasonably apprised of all relevant matters concerning the litigation and gave intelligent, informed consent for all of the defendants' legal strategies, actions and pleadings.

8.  The plaintiff cannot show that the result of the underlying case would have been any different but for the alleged negligence of the defendants (the "case within a case" doctrine).

9.  The fees and expenses charged to plaintiff Alan Goldman by McConnell Valdés for representing him in the case of <u>Teal Peak Capital, LLC v. Alan Bram Goldman</u>, Civil No. 3:20-cv-1747 (PAD), were reasonable, necessary, and agreed to by Mr. Goldman.

10. Goldman breached his own contractual obligations towards McConnell Valdés by failing to timely pay numerous invoices for legal services rendered and expenses incurred and is currently in default of such obligations.

11. There is no causal connection between the damages alleged in the Verified Amended Complaint and any alleged act or omission of the defendants.

12. The damages claimed in the Verified Amended Complaint are exaggerated, excessive and/or non-existent.

13. The damages claimed in the Verified Amended Complaint were the result of the plaintiff's own fault, negligence, actions and/or omissions.

14. The damages claimed in the Verified Amended Complaint were caused by third parties for whom the appearing defendants are not responsible or liable.

15. The Verified Amended Complaint is neither well-grounded in fact nor warranted by existing law, and was brought for an improper purpose, such that it constitutes an abuse of the legal process.

## COUNTERCLAIM

NOW APPEAR, defendants and counterclaimants Antonio Arias Larcada ("Mr. Arias"), his wife Mrs. Arias, the Conjugal Partnership constituted between them, and McConnell Valdés, LLC., through their undersigned counsel, and very respectfully state and pray as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over the present counterclaim as it is between wholly diverse parties and involves an amount in controversy which exceeds $75,000, exclusive of costs and interest.

2. Venue is proper in that the matters subject of the counterclaims occurred wholly or substantially within the jurisdiction of Puerto Rico.

### FACTS

3. On January 13, 2021, plaintiff Alan Goldman ("Goldman"), a resident of Montpelier, Vermont, retained the Puerto Rico law firm of McConnell Valdés, LLC ("McConnell Valdés") to represent his interests in a lawsuit filed against him in the U.S. District Court for the District of Puerto Rico, captioned <u>Teal Peak Capital, LLC v. Alan Bram Goldman</u>, Civil No. 3:20-cv-1747 (PAD) (the "Teal Peak lawsuit").  As part of such retainer, Mr. Goldman agreed to timely

pay legal fees and reimburse McConnell Valdés for expenses incurred in connection with the Teal Peak lawsuit.

4. The Teal Peak lawsuit alleged that Mr. Goldman had breached an "Option to Purchase Agreement" that he had signed on October 23, 2020, with Mr. John Michael Grzan and Dr. Namrata Khimani, as purchaser, for the sale and purchase of a residential real estate property in Dorado, Puerto Rico (the "Property") for the amount of $3,150,000.

5. During the negotiation of the "Option to Purchase Agreement", Mr. Goldman, who is not a lawyer, was not represented by counsel.

6. At the time he signed the "Option to Purchase Agreement", Mr. Goldman was involved in another, separate business venture in Vermont and needed cash in order to avoid a default on said business venture.

7. During the negotiation of the "Option to Purchase Agreement", Mr. Goldman sent an email to the buyer wherein he lowered the purchase price on the Property, stating: "I was greedy".

8. Despite having signed the "Option to Purchase Agreement" on October 23, 2020, wherein he agreed to sell the Property for $3,150,000, Mr. Goldman subsequently refused to sell the Property to Teal Peak for this amount.

9. At the time the Teal Peak lawsuit was filed, the Property, owned by Mr. Goldman, had not been inhabited for at least five (5) years.

10. At the time the Teal Peak lawsuit was filed, the Property included a house which was surrounded by overgrown vegetation and infested by rodents and other

pests.  It also included two motor vehicles which had been left abandoned in the garage.

11. At the time the Teal Peak lawsuit was filed, Mr. Goldman was the registered owner of the Property and, as such, had an obligation to pay Homeowners' Association fees.

12. Attorney Antonio Arias Larcada, a capital partner in the McConnell Valdés law firm, was assigned to represent Goldman in the Teal Peak lawsuit, and, as such, filed an appearance on his behalf in the Teal Peak lawsuit.

13. During the pendency of the Teal Peak lawsuit, Mr. Goldman consulted with Mr. Arias by phone on a regular, nearly daily basis.  These consultations included not only discussions about his defense in the Teal Peak lawsuit, but also other matters related to the Property, such as a lawsuit filed by a realtor against Mr. Goldman for unearned commissions, a break-in of the house which occurred on June 25, 2021, a subsequent inspection of the Property conducted by Mr. Arias, the filing of a police report for the break-in, the registration of the abandoned motor vehicles located in the garage, and recommendations as to property managers to provide maintenance and upkeep of the Property.

14. These regular phone conversations between Mr. Arias and Mr. Goldman also included discussion of other unrelated, personal matters, such as Mr. Goldman's health, his business, his future plans and his relationship with his daughter as well as other family members.

15. Mr. Goldman repeatedly indicated to his counsel, Mr. Arias, that he was of sound mind at the time he agreed to sell his property in Puerto Rico, and that he

freely agreed to the purchase price of $3,150,000 because he needed to liquidate his only available and unencumbered property quickly (and use the $800,000 deposit paid directly to him by Teal peak) to avoid a default on a separate business venture in Vermont that he was involved in.

16. Nevertheless, Mr. Goldman asked Mr. Arias to vigorously defend him in the Teal Peak lawsuit, based on various factual and legal theories.

17. On or about June 3, 2021, following instructions from Mr. Goldman, Mr. Arias formally offered Teal Peak to settle the case via the return of the $800,000 deposit plus reimbursement of all true out of pocket expenses to make Teal Peak whole. On June 7, 2021, Teal Peak's counsel advised that his client had rejected this settlement offer, which was informed to Mr. Goldman.

18. On June 8, 2021, Mr. Arias briefed Mr. Goldman in writing on the strategy to be pursued going forward, which included a litigation defense and counterclaim based on five "talking points" which collectively would form the basis for his defense: (1) that the case was not ready for closing in December of 2020; (2) that Mr. Goldman was not at fault for the case not being ready for closing in December of 2020; (3) that Mr. Goldman could not deliver clean title because real estate broker Kleis filed a bogus lawsuit for an unearned commission and registered a *Lis Pendens* on the property; (4) that even if Mr. Goldman could deliver clear title by the closing, he had been deceived by the buyer through *dolus* vitiating the option agreement; and (5) that even if the buyer could show that the case was ready to close and that the failure to close was the seller's fault, the only remedy the buyer would be entitled to would be return of the

deposit and other equitable remedies which did not include specific performance. Further, another "talking point" was that the damages alleged by the buyer were illegal and purely speculative.

19. Mr. Arias also advised Mr. Goldman in writing on June 8, 2021, that he should consign the $800,000 deposit in court and petition the court for immediate mediation, which he agreed to.

20. On June 17, 2021, Mr. Arias advised Mr. Goldman in writing that he was working on a Motion to Dismiss the Amended Complaint based on the default language in the Option Agreement. Said Motion was filed the following day.

21. Subsequently, Mr. Arias advised Mr. Goldman in writing regarding Teal Peak's Opposition to the Motion to Dismiss, as well as his filing of a Reply to the Opposition and a separate Motion seeking mediation and a stay of discovery pending resolution of the Motion to Dismiss.

22. On December 1, 2021, Mr. Arias advised Mr. Goldman in writing that Teal Peak was not interested in mediation.

23. On February 21, 2022, Mr. Arias advised Mr. Goldman in writing regarding a Status Conference held before the Court on February 14, 2022. In an email, Mr. Arias advised Mr. Goldman regarding the arguments he had presented to the Judge during the Status Conference.

24. On March 24, 2022, Judge Pedro Delgado Hernandez denied Mr. Goldman's Motion to Dismiss. The denial of the Motion to Dismiss was verbally communicated to Goldman.

25. On May 5, 2022, Mr. Arias advised Mr. Goldman in writing regarding another Status Conference held on that same date.

26. Subsequently, the parties conducted discovery, including the deposition of Mr. Goldman, for which he and Mr. Arias extensively prepared, and which took place on September 6, 2022.

27. The Joint Proposed Pretrial Order was prepared, with the advice and consent of Mr. Goldman, and filed on October 31, 2022.

28. Mr. Arias made Mr. Goldman aware that the case had been scheduled for bench trial in May of 2023 and that Mr. Goldman would have to testify in order to attempt to persuade the Judge of the validity of his position.

29. After completion of discovery in the case, Mr. Arias advised Mr. Goldman to try to settle the matter, to which Mr. Goldman responded by stating: "I'm not settling".

30. Nevertheless, on or about December 11, 2022, Mr. Goldman's brother Mark became involved in discussions with Mr. Arias regarding the strategy to be pursued in the case, and he in turn involved certain lawyers he had retained from the law firm of Holland & Knight in Boston, Massachusetts. As a result of their collective involvement, and in consideration of his understanding of the costs and risks involved in the litigation, Mr. Goldman agreed to make a new settlement offer in the Teal Peak lawsuit, which essentially involved attempting to sell the Property to a third party and dividing the proceeds between Mr. Goldman and Teal Peak. This offer was communicated to Teal Peak's counsel and ultimately rejected.

31. After this settlement offer was rejected by Teal Peak, Mr. Goldman did not communicate with Mr. Arias until March 26, 2023, when he requested that Arias and McConnell Valdés withdraw from the case.

32. Mr. Arias and McConnell Valdés represented Goldman in the Teal Peak lawsuit until March 27, 2023, when Mr. Arias and McConnell Valdés requested leave to withdraw as counsel, which was subsequently granted.

33. Thereafter, Mr. Goldman was represented in the Teal Peak lawsuit by the law firm of Morell, Cartagena & Dapena until the lawsuit's conclusion via a "Confidential Joint Stipulation for the Entry of Judgment" (the "Settlement Agreement") entered into between Mr. Goldman and Teak Peak Capital, LLC.

34. As part of the Settlement Agreement, on June 29, 2023, Mr. Goldman signed a "Deed of Purchase and Sale" before Notary Public Miguel Carbonell Astor, wherein he sold the Property for the sum of $3,800,000.

35. During the course of the Teal Peak lawsuit, Mr. Goldman repeatedly failed to timely pay numerous invoices for legal services and expenses rendered by McConnell Valdés.

36. Since their withdrawal from the Teal Peak lawsuit, McConnell Valdés has repeatedly demanded payment from Goldman of several invoices for legal fees and expenses outstanding in the total amount of $53,607.30.

37. As of the date of this filing, Goldman has not paid McConnell Valdés for said invoices corresponding to legal fees and expenses outstanding in the total amount of $53,607.30.

38. The legal fees and expenses outstanding in the amount of $53,607.30 correspond to work performed by McConnell Valdés attorneys and expenses incurred for the benefit of Mr. Goldman, and were reasonable, necessary and contractually agreed to by Mr. Goldman.

39. On March 25, 2024, Mr. Goldman filed a Verified Amended Complaint against Mr. Arias, his wife Mrs. Arias, the conjugal partnership constituted between them, Mr. José Irizarry Castro and McConnell Valdés.

40. In the Verified Amended Complaint, Mr. Goldman claims that Mr. Arias, Mr. Irizarry and McConnell Valdés committed legal malpractice during their defense of his interests in the Teal Peak litigation.

41. In the Verified Amended Complaint, Mr. Goldman claims that Mr. Arias, Mr. Irizarry and McConnell Valdés breached their contractual obligations towards him during their defense of his interests in the Teal Peak litigation.

42. In the Verified Amended Complaint, Mr. Goldman claims that McConnell Valdés unjustly enriched itself during its defense of his interests in the Teal Peak lawsuit.

43. In the Verified Amended Complaint, Mr. Goldman claims, *inter alia*, damages in the amount of $242,900, which he alleges he was induced by Mr. Arias to spend on "totally unnecessary repairs and maintenance expenses" for the Property.

44. Some portion of the $242,900 allegedly disbursed by Mr. Goldman during the pendency of the Teal Peak lawsuit corresponded to Homeowners' Association fees he owed, as the registered owner of the Property.

45. Any amounts spent by Mr. Goldman for repairs and maintenance of the Property during the pendency of the Teal Peak lawsuit were independently undertaken by Mr. Goldman without consulting with Mr. Arias or any other lawyer at McConnell Valdés.

46. Any amounts spent by Mr. Goldman for repairs and maintenance of the Property during the pendency of the Teal Peak lawsuit were necessary and inured to his benefit, as the Property and motor vehicles on the premises had been abandoned, the house had been broken into, and was surrounded by overgrown vegetation and infested with rodents and other pests.

47. Mr. Goldman attached as Exhibit 5 to his Verified Amended Complaint an email sent to him by Mr. Arias on October 5, 2023, which reads as follows:

Greetings Mark and Alan:  We have not been able to locate an email attaching the March 24th, 2022, order denying the motion to dismiss.  However, as I stated during our call, this was discussed with Alan during my frequent and extended telephone conferences with him.  Kindly let me know when you are available to continue our call and conclude our discussion.

48. Mr. Goldman commented on Mr. Arias' aforementioned statement in an email to his attorney stating: "he is lying".  This statement was meant to state that Mr. Arias was lying about having discussed the denial of the Motion to Dismiss with Mr. Goldman during their frequent and extensive telephone conversations.

49. Mr. Arias was not "lying" about having discussed the denial of the Motion to Dismiss with Mr. Goldman during their frequent and extensive telephone conversations.

50. Mr. Goldman's written statement that Mr. Arias "is lying" about having discussed the denial of the Motion to Dismiss with Mr. Goldman was submitted

as an Exhibit to the Verified Amended Complaint, which was publicly filed in the U.S. District Court with no restrictions on who could access it.

51. Mr. Goldman made and disseminated this false statement negligently.

52. Mr. Goldman made and disseminated this false statement with knowledge of its falsity and/or reckless disregard for the truth.

53. Mr. Arias is not a public figure.

54. As a result of Mr. Goldman's false and defamatory statement, characterizing him as having lied to a client, Mr. Arias has suffered and continues to suffer emotional distress, as well as damage to his good name and reputation as a lawyer in the Puerto Rico legal and social community.  Mrs. Arias has also suffered emotional distress as a result of Mr. Goldman's false statement defaming her husband.

55. The Verified Amended Complaint also purposefully omits any mention of the fact that on June 29, 2023, Mr. Goldman sold the Property for $3,800,000, that is, for $650,000 more than was agreed upon in the "Option to Purchase Agreement" signed on October 23, 2020.

56. The Verified Amended Complaint contains a number of factual falsehoods, including but not limited to the defamatory claim that Mr. Arias lied to Mr. Goldman about having verbally discussed the denial of the Motion to Dismiss with him, the false claim that Mr. Goldman was induced by Mr. Arias to spend $242,900 on totally unnecessary repairs and maintenance of the Property, and the fabricated claim that the fees and expenses charged by McConnell Valdés were unnecessary in order to defend Mr. Goldman in the Teal Peak lawsuit.

57. Contrary to the allegations of the Verified Amended Complaint, Mr. Goldman suffered no damages as a result of Mr. Arias and McConnell Valdés' defense of his interests in the Teal Peak lawsuit. In fact, he obtained a windfall of $650,000, as on June 29, 2023, he sold the Property for $3,800,000, as part of the Settlement Agreement which ended the lawsuit.

58. Mr. Goldman filed the Verified Amended Complaint based on a number of false and defamatory allegations, without a legitimate legal and/or factual basis, and for an improper purpose, that is, to harass, intimidate, and oppress the defendants and/or to avoid payment of fees owed to McConnell Valdés. As such, the filing of the Verified Amended Complaint manifestly exceeded the normal limits of the exercise of legal rights and constituted an abuse of the legal process.

59. As a result of Mr. Goldman's unjustified abuse of the legal process, Mr. Arias and Mrs. Arias have suffered and continue to suffer emotional distress, and all defendants have suffered damage to their good name and reputation.

**FIRST CAUSE OF ACTION – COLLECTION OF FEES**

60. The allegations of paragraphs 1 through 59 of the Counterclaim are incorporated herein by reference as if set forth in their entirety.

61. On or about January 13, 2021, Mr. Goldman retained the Puerto Rico law firm of McConnell Valdés to represent his interests in a lawsuit filed against him in the U.S. District Court for the District of Puerto Rico, captioned <u>Teal Peak Capital, LLC v. Alan Bram Goldman</u>, Civil No. 3:20-cv-1747 (PAD) (the "Teal Peak lawsuit").

62. As part of such retainer, Mr. Goldman contractually obligated himself to timely pay legal fees and reimburse expenses to McConnell Valdés in the defense of his interest in the Teal Peak lawsuit, and Mr. Goldman did in fact pay such fees and reimburse such expenses, albeit in an untimely fashion, until March 27, 2023, when Mr. Arias and McConnell Valdés withdrew as his counsel in the Teal Peak litigation.

63. Since their withdrawal from the Teal Peak lawsuit, McConnell Valdés has repeatedly demanded payment from Mr. Goldman of several invoices for legal fees outstanding in the amount of $53,607.30.

64. As of the date of this filing, Mr. Goldman has not paid McConnell Valdés for said invoice corresponding to legal fees and expenses outstanding in the amount of $53,607.30.

65. The legal fees and expenses outstanding in the amount of $53,607.30 correspond to work performed and expenses incurred by McConnell Valdés attorneys for the benefit of Mr. Goldman, and are reasonable, necessary and contractually agreed to by Mr. Goldman.

66. To the extent Mr. Goldman denies liability for the legal fees and expenses outstanding claimed herein, he acts with obstinacy and temerity and is therefore liable for costs, attorneys' fees, and prejudgment interest.

67. Counterclaimants demand trial by jury of all issues triable thereto.

**SECOND CAUSE OF ACTION - DEFAMATION**

68. The allegations of paragraphs 1 through 67 of the Counterclaim are incorporated herein by reference as if set forth in their entirety.

69. Mr. Goldman's written statement that Mr. Arias "is lying" about having discussed the denial of the Motion to Dismiss with him, was submitted as Exhibit 5 to the Verified Amended Complaint, a publicly filed document on the docket of the U.S. District Court.  As such, Mr. Goldman's statement was knowingly disseminated to the public.

70. Mr. Goldman made and disseminated this false statement negligently, and/or with knowledge of its falsity and/or with reckless disregard for the truth.

71. On information and belief, Mr. Goldman has made other false and defamatory statements about Mr. Arias which were publicly disseminated.

72. Mr. Arias is not a public figure.

73. As a result of Mr. Goldman's false and defamatory statements, characterizing Mr. Arias as having lied to a client, Mr. Arias has suffered and continues to suffer emotional distress, as well as damage to his good name and reputation as a lawyer in the Puerto Rico legal and social community.  Mrs. Arias has also suffered emotional distress as a result of Mr. Goldman's false public statement defaming her husband.

74. Under Article 1536 of the Civil Code of Puerto Rico (31 LPRA Sec. 10801), Mr. Goldman is liable to Mr. Arias, Mrs. Arias and the conjugal partnership constituted between them, for all damages caused by his false and defamatory statements.

75. To the extent Mr. Goldman maintains the present lawsuit and/or denies liability for the damages claimed for defamation, he acts with obstinacy and temerity and is therefore liable for costs, attorneys' fees, and prejudgment interest.

76. Counterclaimants demand trial by jury of all issues triable thereto.

### THIRD CAUSE OF ACTION – ABUSE OF PROCESS

77. The allegations of paragraphs 1 through 76 of the Counterclaim are incorporated herein by reference as if set forth in their entirety.

78. Mr. Goldman filed the Verified Amended Complaint based in whole or in part on false and defamatory allegations, without a legitimate legal and/or factual basis, and for an improper purpose, that is, to harass, intimidate, and oppress the defendants and/or to avoid payment of fees and expenses owed to McConnell Valdés.  As such, the filing of the Verified Amended Complaint manifestly exceeded the normal limits of the exercise of legal rights and constituted an abuse of the legal process.

79. As a result of Mr. Goldman's unjustified abuse of the legal process, Mr. Arias and Mrs. Arias have suffered and continue to suffer emotional distress, and all defendants have suffered damage to their good name and reputation.

80. Under Article 18 of the Civil Code of Puerto Rico (31 L.P.R.A. Sec. 5337), Mr. Goldman is liable to the defendants for all damages resulting from his abuse of the legal process.

81. To the extent Mr. Goldman maintains the present lawsuit and/or denies liability for the damages sought in this Counterclaim, he acts with obstinacy and temerity and is therefore liable for costs, attorneys' fees, and prejudgment interest.

82. Counterclaimants demand trial by jury of all issues triable thereto.

**WHEREFORE,** for the above stated reasons, the appearing defendants very respectfully request that the Honorable Court take note of the above, and consequently:

I.   Dismiss the Verified Amended Complaint, with prejudice.

II.  Grant the Counterclaim, awarding damages as follows:

   a.  $53,607.30 to McConnell Valdés for legal fees owed to it by Mr. Goldman;

   b.  $250,000 to Antonio Arias Larcada for emotional distress suffered as a result of Goldman's defamation and abuse of process;

   c.   $100,000 to Mrs. Arias for emotional distress suffered as a result of Goldman's defamation of her husband and abuse of process;

   d.  $100,000 to McConnell Valdés for reputational damage suffered as a result of Goldman's abuse of process;

   e.  Costs, attorneys' fees and prejudgment interest.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico this 13th day of June, 2024.

**I HEREBY CERTIFY** that on this 13th day of June, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all the counsel of record.

S/MANUEL SAN JUAN
MANUEL SAN JUAN
USDC-PR No.: 204706
P.O. Box 9023587
San Juan, Puerto Rico 00902-3587
Tel.:(787)723-6637 / (787) 723-6669
E-mail:  sanjuanm@microjuris.com