IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| ALAN GOLDMAN | * | CIVIL NO.: 24CV01136 |
| | * | |
| Plaintiff | * | |
| | * | |
| V | * | |
| | * | |
| MCCONNELL VALDES, LLC; | * | |
| ANTONIO A. ARIAS-LARCADA, ET AL | * | |
| | * | |
| Defendants | * | |
| | * | |

## JOINT INITIAL SCHEDULING CONFERENCE MEMORANDUM

TO THE HONORABLE COURT:

COME NOW Plaintiff, Mr. Alan Goldman, and Defendants, Antonio Arias Larcada, his wife Mrs. Arias and the conjugal party between them, and McConnell & Valdes, LLC, through their respective undersigned counsel, and in compliance with the Court's Initial Settlement and Scheduling Conference Order, entered at Docket Number 18, respectfully submit their Joint Initial Scheduling Conference Memorandum as follows:

I.   Each Party's Theory of the Case:

A.  Plaintiff:

On October 23, 2020, an "Option to Purchase Agreement" was entered into by Plaintiff, Mr. Goldman, as "Seller" and Mr. John Michael Grzan and Mrs. Namrata Khimani, as "Purchaser", for the sale and purchase of a real estate property in Dorado, Puerto Rico. Under "Paragraph 15. Default by Seller. Remedies, Purchaser", the "Option to Purchase Agreement" reads as follows:

"In the event Seller, after exercise of the Option granted herein, fails to proceed with the closing of the sale of the real property pursuant to the terms and provisions

contained herein, Purchase[r] shall be entitled to receive back the Option Fee and pursue any equitable remedies under the law."

On October 23, 2020, Plaintiff, Mr. Goldman made two mistakes: First, Mr. Goldman agreed to sell the Property in Dorado for $3,150,000, although at that time the Property's market value was well over $6,500,000. Secondly, Mr. Goldman misunderstood the meaning of the term "equitable remedies" and ignored its legal consequences. In a contract context, the term "mistake" refers to an error associated with either the meaning of the words, laws, or facts within a contract. When a mistake occurs, it causes one or both parties to enter into or to the contract without fully understanding the outcomes or responsibilities implied by the contract. An "unilateral mistake" is the mistaken belief that is held by one of the parties and is not shared by the other party to the contract. Simply put, any unilateral mistake occurs when only one of the parties misinterprets the subject matter or meaning of the words. Since only one party holds a mistaken belief, this could give to other party an unfair advantage in the bargaining power that they could hold during the contract formation stage. If a contract is entered into, in or on, the basis of a mistaken belief, it could result in a lawsuit that may provide the mistaken party with various remedies, such as contract rescission or contract reformation. If any unilateral mistake is made during the contracting process, it would, or could be, unfair if only one party understands the true meaning implied by the contract while the other party does not. In any such case, a court may issue one of the following remedies to correct the unilateral mistake: (a) contract rescission that completely cancels the contract and the parties are restored to the same position they were

in before the contract was formed; or, alternatively, (b) contract reformation, when the written agreement is changed to reflect the parties' original understanding of the terms of the contract. Usually, this remedy may be granted for unilateral mistakes only in cases where the non-mistaken party was unaware that the other party was mistaken. During contract negotiations, the parties should review the contract thoroughly, and clarify each other's interpretations of each clause that is included in the contract. Working with lawyers during the contract formation stage can help the parties to avoid making mistakes and would help to avoid any future contract disputes. That did not happen in this case.

This Option to Purchase Agreement gave rise to three main controversies: (1) what was the fair market value of the real estate property that was optioned by the parties; and (2) if there was an unilateral mistake, what should have been the legal consequences under Clause 15 of the contract; and (3) if the Seller had made a colossal mistake, whether that mistake resulted in Buyer's unjust enrichment.

Litigation initiated by Buyer ensued, since Plaintiff, Mr. Goldman did not execute the deed of sale. On December 24, 2020, Mr. Grzan's and Mrs. Khinami's designated assignee, Teal Peak Capital, LLC, filed the case of <u>Teal Peak Capital, LLC, Plaintiff, vs. Alan Bram Goldman, Defendant</u>, Civil No. 3:20-cv-1747, in the U.S. District Court for the District of Puerto Rico. On January 13, 2021, Mr. Goldman retained the services of McConnell Valdés to represent Mr. Goldman in said case. McConnell Valdés' law firm's capital member, Mr. Arias, became Mr. Goldman's lead counsel. McConnell Valdés, through its agent and capital partner, Mr. Arias,

convinced Mr. Goldman that Mr. Goldman had nothing to worry about said case. Mr. Goldman was told that he had not incurred in any mistake by using the term "equitable remedies" that was inserted by Mr. Goldman in the final draft of the Option to Purchase Agreement, and Mr. Goldman was told that the trial court would never enter an Order, ordering specific performance against Mr. Goldman. Defendant McConnell Valdés, through its agent, Defendant Mr. Arias, reiterated in writing their legal opinion, that their understanding of the applicable law was that the term "specific performance" is not an "equitable remedy" under Puerto Rico's laws. Documents were electronically transmitted by Mr. Arias, confirming that McConnell Valdés and Mr. Arias were instructing their client, Mr. Goldman, to aggressively litigate that case, under their only legal theory, which proved to be, not only inadequate, but completely wrong as a matter of law. Plaintiff, Mr. Goldman made his payments to Defendant, McConnell Valdés for Mr. Arias' and its other lawyers' legal fees in the total sum of $195,893.90. McConnell Valdés is still attempting to collect the additional sum of $53,607.30 for the legal fees that were incurred by Mr. Goldman, under Defendants' erroneous legal advice that the Buyer, Teal Peak Capital, LLC, would not be able to prevail in that lawsuit, since the trial court would certainly rule that "specific performance" was not an "equitable remedy".

Defendants, McConnell Valdés and Mr. Arias failed to raise as grounds for Mr. Goldman's defense, and Defendants, McConnell Valdés and Mr. Arias failed to make any reference anytime in their pleadings during said litigation, to the existence of Article 287 of the Puerto Rico Civil Code of 2020, that defines the requirements for an error to vitiate the party's willingness. Also, no

defense nor mention was made in reference to Article 290 of the Puerto Rico Civil Code of 2020, that defines what should happen if the one contracting party makes any computation errors regarding the actual selling price that the Seller may have agreed to while acting under wrong or incorrect assumptions.

On June 8, 2021, Mr. Arias sent an email transmission to Mr. Goldman, that in its pertinent part, reads as follows:

"Team: Patricia and I just briefed Mr. Goldman on the **defense strategy moving forward mainly supported by careful review of both the option agreement and the draft escrow agreement attempting to contain the Kleis lawsuit from precluding the closing.**

As per the pleadings and the oral presentation given to the court at last week's status conference the plaintiff Teal Peak sued because it allegedly validly exercised its right to purchase under the option agreement, the case was ready to close but the seller refused to close and therefore **it seeks specific performance**. As per the amended complaint Teal Peak **in addition to specific performance seeks damages based on its speculation** that had it purchased the property in December 2020 it would have been ready to be exploited as a rental property by April 2021 for at least $35,000 a month or sold for over $8,000,000.

On Thursday June 3rd we offered counsel for Teal Peak the return of the $800,000 deposit plus reimbursement of all true out of pocket expenses to make Teal Peak whole and part ways. On Monday June 7th, 2021, opposing counsel informed that his client rejected the offer but made no counteroffer. He did point out without any further discussion that his client wants the property.

Moving forward our litigation defense and counterclaim will be based on the following talking points:

First, the case was not ready for closing in December 2020.

Second, Mr. Goldman was not at fault for the case not being ready for closing in December.

Third, Mr. Goldman could not deliver clean title because real estate broker Kleis filed a bogus lawsuit for an unearned commission and registered a Lis Pendens lien on the property.

Fourth, even if Mr. Goldman could deliver clean title by the closing, he had been deceived by the buyer through dolus vitiating the option agreement.

<u>Fifth, even if the buyer where to show by a preponderance of the evidence that the case was ready to close and it was the seller's fault, the only remedy it is entitled under the option agreement is the return of the deposit AND (not "or") any other equitable remedies under the law. That is not specific performance. Specific performance is not a remedy available to the buyer. End of discussion.</u>

<u>Furthermore, even if there was seller liability, which we dispute, all damages claims are not only illegal, they are all pure speculation.</u>

The talking points are supported by the evidence in the case:

<u>First, page 3 of the option agreement negotiated by the parties does not afford the buyer the contractual right to seek specific performance if the seller refuses to sell</u>. <u>The lawsuit has been filed under the illegal premise that the buyer can compel the seller to close on the sale.  Buyer is wrong, seller can walk away and he need only return the cash deposit and pay real expenses</u>. Patricia has ordered <u>a legal research on how the courts have considered "other equitable remedies"</u> to confirm reimbursement of expenses in addition to the returned deposit satisfies the legal threshold.

…

Thus, in view of the above the case should develop as follows:

1.  Mr. Goldman will answer the amended complaint making aggressive use of the talking points by June 11th.

2.  Send the process server to Dorado Beach immediately.

3.  Mr. Goldman will consign in court the $800,000 deposit in compliance with the letter of the option agreement.

4.  <u>We can petition the court for immediate mediation to settle the remainder of what the buyer is entitled to which is "equitable remedies" in our view, reimbursement of their out-of-pocket expenses and attorney's fees</u>.

5.  Should mediation fail, at the earliest available opportunity Mr. Goldman shall file a motion for summary judgment since the only remaining issue to be decided by the court is a legal issue which need not go to a jury." Please see, <u>Exhibit 1</u>.

On February 21, 2022, Mr. Arias sent another email transmission to Mr. Goldman, that in its pertinent part reads as follows:

"The judge opened by indicating that he had reviewed all the legal briefs and had also done additional research on the issues… The judge then turned to me and <u>I took my time to argue why there was no likelihood for the plaintiffs to prevail on the merits of the case due to the three pillars of our case</u>. <u>First, the contract clearly and with specificity reads in the default clause that the buyer shall the entitled to the return of the security deposit and any other equitable remedies. If the security deposit is returned the vague and not specific additional remedies can only involve some additional monetary compensation for lost interest or inconvenience but not specific performance</u>. Given that the defendant had already returned the security deposit which is held by the court in escrow the case is mostly moot. <u>I stressed to the court that the seller did no [sic] draft the option agreement and was not represented by counsel and would have never agreed to specific performance upon his default</u>…" See, <u>Exhibit 2</u>.

Relying on Mr. Arias' wrong advice and incorrect assurances, that Mr. Goldman would not be ordered by the trial court to sign the deed of purchase and sale of the property, Mr. Goldman retained the services of third parties to make significant repairs and improvements in the property, although the real property was optioned to Buyer "As Is".

These additional repair and maintenance expenses were incurred by Mr. Goldman, relying on Mr. Arias' representations and promises. The Amended complaint alleges that unnecessary expenses were incurred in the sum of $242,900. Plaintiff, Mr. Goldman may have included some homeowners' association fees. If so, these homeowners' fees payments must be deducted from said claim. On <u>March 24th, 2022</u>, the Honorable Judge Delgado-Hernández, USDC-PR entered his "Memorandum and Order" in <u>Teal Peak Capital, LLC, Plaintiff v. Alan Bram Goldman, Defendant</u>, Case No.: 20-1747 (PAD) that in its pertinent part, reads as follows:

"This is a breach-of-contract action… deceit or *dolus*… <u>defendant's motion must be denied. As discussed below, plaintiff is entitled to the remedies identified in Clause 15 of the contract. This includes recovery of the Option Fee and specific performance</u>…And here, there is an agreement that explicitly identifies what plaintiff

shall be entitled to in case of the seller's default. This type of clause is known as a penal clause. Their two most important functions are to guarantee the performance of the obligation and to evaluate in advance the damages…As to damages, the penal clause "substitute[s] indemnity for damages and the payment of interest… "eliminates all controversy"… the amount to be paid in damages…And that is what plaintiff bargained for, limiting the amount it could recover…**The concept of specific performance shares consanguinity with the permanent injunction, itself a creature of equity**. See, Axia Netmedia Corporation v. Massachusetts Technology Park, 889 F.3d 1, 8 (1st Cir. 2018)(**equating permanent injunction with order granting request for specific performance**); McDonald's Corp. v. Lebow Realty Tr., 888 F.2d 912, 913 (1st Cir. 1989)(**request for permanent injunction ordering specific performance of option agreement**); Bolin Farms v. American Cotton Ass'n, 370 F.Supp. 1353, 1369 (W.D. La. 1974)(**noting that no bond can be required where specific performance has been ordered in the form of a permanent injunction**).

That is why, as the Puerto Rico Supreme Court observed, "[**a]n injunction to restrain a breach of a contract often operates to all intents and purposes as a decree for its specific performance.**" San Juan Racing & Sporting Club v. Foote, 31 P.R.R. 154, 158 (1922)…. **And as such, it may be enforced by way of a permanent injunction mandating specific performance**. See, In Re: Medical Educational and Health Services, Inc., 2015 WL 903346, **1, 4-5 (Bkcy. D.P.R. Feb, 27, 2015) (**application for permanent injunction evaluated as one for specific performance and damages under Article 1077 of the Puerto Rico Civil Code**)…The debtor bears the burden of demonstrating lack of proportion between the breach and the penalty to justify the court's intervention…Still, defendant has challenged the principal obligation as being null and void. And that matter will be decided at trial." Please see, **Exhibit 3**.

Defendants, McConnell Valdés and Mr. Arias never provided to Mr. Goldman any copy of Judge Delgado-Hernández' adverse ruling contained in the "Memorandum and Order" dated March 24, 2022. After said ruling, Defendants made no efforts to correct or modify their legal advise. On October 31, 2022, the Joint Proposed Pre-Trial Order was filed in Civil Case No. 3:20-civ-1747. Although Mr. Goldman's counsel acknowledged that "Mr. Goldman is not a lawyer and understood that the language and intent behind Clause 15 was for Mr. Goldman to have the right to retain the Property and opt out of the Option Agreement, for whatever reason, before or after the option was exercised by the purchaser by returning the Option Fee and paying any additional

costs…", no efforts were made by Defendants, McConnell & Valdes and Mr. Arias to try to amend Mr. Goldman's previous pleadings and to protect Mr. Goldman's legal rights under Articles 287 and 290 of the Puerto Rico Civil Code of 2020.    In the Joint Pre-Trial Proposed Order, Defendants, McConnell & Valdes and Mr. Arias, while acting as Mr. Goldman's counsel, alleged that another neighbor, "Mr. Long then purchased the property next door for $2,500,000. Within a year, Mr. Long flipped the property and sold it to another purchaser for $10,500,000 for a multi-million dollars profit." Therefore, it should be undisputed that Defendants, McConnell & Valdes and Mr. Arias, while they were acting as Mr. Goldman's counsels, they were aware, or should have been aware, that the real estate prices had increased dramatically in that same neighborhood, Dorado Beach, Puerto Rico, Defendants, McConnell & Valdes and Arias failed to seek any available legal remedies under Articles 287, 290 of the Civil Code of Puerto Rico of 2020. Defendants, McConnell & Valdes and Mr. Arias were also aware about Mr. Goldman's various medical conditions that were alluded to in several email transmissions, but no references were made by Defendants, McConnell & Valdes and Mr. Arias to Mr. Goldman's declining mental abilities or of his mental state of confusion. No treating physicians were listed in the Joint Pretrial order's experts witness' list, and no medical records were marked for identification purposes.  As of March 26, 2023, Mr. Goldman was completely unaware about the legal errors and omissions that were made by his attorneys of record.

Until March 26, 2023, Mr. Goldman fully relied on Defendants, McConnell Valdés' and Mr. Arias' incorrect legal advice and in their incorrect verbal and written representations. This reliance

was based on trust, but this trust ended on <u>March 26, 2023</u>, when Mr. Goldman requested

Defendants, McConnell Valdés and Mr. Arias to withdraw from that case. On <u>March 27, 2023,</u>

Defendants, McConnell Valdés and Mr. Arias filed their motion to withdraw as Mr. Goldman's

counsel.

On April 5th, 2023, attorney Edgardo Cartagena sent an email transmission to Mr. Goldman,

that reads as follows:

"Hi Alan. Did Arias send you a copy of this Opinion and Order, issued by the prior judge on March 22, 2022?  We just found it during our search.  Edgardo Cartagena"

Attorney Edgardo Cartagena attached with this email the Memorandum and Order entered by Honorable Pedro Delgado Hernández, United States District Judge.  Please see, **Exhibit 4**.

On April 5th, 2023, Mr. Goldman was made aware about Judge Delgado-Hernández'

Memorandum and Order of March 24, 2022.

On October 5th, 2023, Defendant, Mr. Arias sent another email transmission to Mr. Goldman,

that reads as follows:

"Greetings Mark and Alan:  We have not been able to locate an email attaching the March 24th, 2022, order denying the motion to dismiss.  However, as I stated during our call, this was discussed with Alan during my frequent and extended telephone conferences with him. Kindly let me know when you are available to continue our call and conclude our discussion.  Antonio A. Arias, Capital Member".  Please see **Exhibit 5**.

COUNT I – UNJUST ENRICHMENT
(AS TO MCCONNELL VALDÉS AND MR. ARIAS)

Defendants, McConnell & Valdés and Mr. Arias owed Plaintiff, Mr. Goldman the contractual

duty of care and they were expected to provide sound, competent legal representation at a

reasonable cost. Attorneys are prevented from assuming positions that may violate their professional duties or cause unjust enrichment, by causing or provoking unnecessary litigation expenses. Defendants, McConnell & Valdés and Mr. Arias breached this duty, by providing incorrect, wrong legal advice that led to unnecessary legal fees, costs and expenses. Any claim for unjust enrichment consists of five elements: (1) existence of enrichment; (2) a correlative loss; (3) nexus between loss and enrichment; (4) lack of cause for enrichment; and (5) absence of a legal precept excluding application of enrichment without cause. See, *Dantzler, Inc. v. Puerto Rico Ports Auth.*, *335 F. Supp. 3d 226, 254 (D.P.R. 2018)*; *Montalvo v. LT's Benjamin Records, Inc.*, *56 F. Supp 3d 121, 136 (D.P.R. 2014)*. McConnell & Valdés and Mr. Arias unjustly enriched themselves by providing erroneous legal advice to Plaintiff, Mr. Goldman, at the expense of Mr. Goldman, and Defendants were the proximate cause of Mr. Goldman's monetary losses. In good conscience and equity, McConnell & Valdés and Mr. Arias must partially or fully reimburse these sums of monies to Mr. Goldman. During the relevant time, Plaintiff, Mr. Goldman mentioned to McConnell & Valdés lawyers, including Mr. Arias, that Mr. Goldman was suffering due to his diminished mental capacity. Mr. Goldman's medical history included suffering repeated transient ischemic attacks ("TIA"), seizures and other health conditions that may have caused Mr. Goldman to be confused, disoriented and with limited cognizant capability at the time that Mr. Goldman had entered into the Purchase & Sale Agreement that was the object of said litigation, as well as during the course of said litigation. Although McConnell & Valdes' lawyers, including Mr. Arias were informed that Mr. Goldman's abilities to make intelligent decisions may have been compromised, McConnell & Valdés' lawyers, including Mr. Arias, did not make any efforts to

obtain and review Mr. Goldman's medical and hospitalization records, including Mr. Goldman's psychiatric evaluations. **Defendants,** McConnell & Valdés and Mr. Arias limited their allegations that "… Mr. Goldman's status as a senior citizen, recovering cancer survivor with underlying medical conditions…" As Mr. Goldman's attorneys, McConnell & Valdés and Mr. Arias made false allegations, such as "… Mr. Goldman vehemently defends his position that he acted professionally and was willing to close within the exercise period…" Said allegations contradicted Mr. Goldman's own concerns about his deteriorating mental state during the time that Mr. Goldman agreed to sell his real property for the ridiculous, extremely low price of $3,150,000. Although everyone knew or should have known that said purchase price was less than one half (50%) of the then current market value of Mr. Goldman's real property. McConnell & Valdes and Mr. Arias did acknowledge that "By manipulating the competing offers TPC pressured Mr. Goldman to sell below the market price in Dorado Beach." "Based on current real estate market in Dorado Beach and the specific location of Mr. Goldman's Property, which is above eighty-five (85) foot contour of the exclusive and original Dorado Beach Estate, Mr. Goldman estimates that had he closed caving under the pressure of TPC he would have failed to realize in excess of $3,000,000 in the sale". Please, see: "Defendant's Answer to Complaint and Counterclaim" that was filed on April 7, 2021, in Case No. 3:20-civ-01747, Document 18 at page 13, par. 30, 32.

Defendants, McConnell & Valdés and Mr. Arias completely disregarded relevant and important evidence, not only about Mr. Goldman's diminished mental capacity, but of the real property's fair market value. Defendants' indifference, unconcerned conduct constituted legal malpractice, particularly in view of Mr. Goldman's inability to amend his "Answer to the Amended Complaint"

or the "Joint Pre-Trial Conference Order" after Mr. Goldman was able to retain new legal counsel.

## COUNT II – BREACH OF CONTRACT-LEGAL MALPRACTICE
## (AS TO MCCONNELL & VALDÉS, LLC AND MR. ARIAS)

Defendants, McConnell & Valdés and Mr. Arias had the duty to practice law in a reasonable, professional manner and provide competent legal advice and breached their contractual obligation to display competence and act with the proficiency that was expected from them. The inadequate gathering of essential information, the failure to perform reasonable legal research, and the failure to take into consideration the applicable statutes and case law, led Defendants to incur legal malpractice. Any competent lawyer would have advised Mr. Goldman to assert his defenses on the basis of his mistake of fact as to what should have been the real property's current market value. Defendants told Mr. Goldman that "equitable remedies would never entail specific performance". McConnell & Valdés' and Mr. Arias' incorrect, wrong or wrongful advice, constituted breach of contractual obligations. Mr. Goldman's attorneys failed to seek relief for Mr. Goldman's unilateral mistake regarding the actual fair market value of his real property, and Mr. Goldman's lawyers failed to procure any relief for having stipulated that "equitable remedies" would be available under the purchase agreement. At the time that Mr. Goldman agreed to sell his real property for the sum of $3,150,000, this real property was worth over $6,500,000. McConnell & Valdes and Mr. Arias failed to advise Mr. Goldman about the remedies available under Articles 1258, 1259 and 1260 of the Civil Code of Puerto Rico of 2020, such as rescission of the sales contract, or revision of the sales price agreed upon, by requesting the trial court to

provide an upward adjustment of the purchase and sales price. It was obvious or should have been obvious that the Buyer was obtaining a huge, disproportionate financial advantage by forcing the Seller to transfer an asset worth three times as much as the sales price agreed upon in the "Option to Purchase Agreement". In the Joint Proposed Pretrial Order, Document 136 in Civil Case Number 3:20-civ-1747, McConnell & Valdés and Mr. Arias referred to Mr. Goldman's deteriorating mental condition, his seizures, PTSD. Yet, no treating physician or medical expert were announced as Mr. Goldman's witnesses. No reference was made to Mr. Goldman's advanced age or to Puerto Rico's statutes that protect our senior citizens. No expert witnesses were listed to prove the real property's then-current market value at the time that the Option to Purchase Agreement was signed.  These acts or omissions constitute legal malpractice. Mr. Goldman's new lawyers failed to plead for legal remedies available under the law. Mr. Goldman realized he made a mistake when he agreed to sell his real property for $3,150,000, although his property was worth over $6,500,000. Yet, McConnell & Valdés and Mr. Arias never advised Mr. Goldman about Articles 1258, 1259 and 1260 of the Civil Code of Puerto Rico of 2020, that were applicable in his case.

COUNT III – TORTS RESULTING FROM EXTRACONTRACTUAL
FAULT/NEGLIGENCE

Defendants, McConnell & Valdés and Mr. Arias are liable due to their joint fault or negligence as in any ordinary torts case. All that it is required is that Mr. Goldman establishes: (1) the existence of the damage; (2) that the service provider did not act pursuant to the minimum standard of care that is required, in this case, from the legal profession, and (3) that causal relationship exists between the damage being suffered and the act or omission of the lawyers.

*Santiago Otero v. Méndez*, 94 JTS 38. See also, *Rodríguez Crespo v. Hernández*, 121 D.P.R. 639(1988);

*Medina Santiago v. Vélez*, 120 D.P.R. 380, 385(1988). That failure to observe due care was the cause

for Mr. Arias' and McConnell & Valdés' incorrect, wrong or wrongful legal advice. Mr. Goldman

did not request in the court proceedings for any relief from his unilateral mistake as to the sales

price. Mr. Goldman ended up spending almost two hundred thousand dollars in unnecessary legal

fees and ended losing his real property too. Lawyers and law firms owe to their clients the duty

of care required of any reasonable and prudent person. *Márquez Vega v. Martínez Rosado*, 116

D.P.R. 397, 404-406 (1985). McConnell & Valdés and Mr. Arias breach of their professional duties

was the proximate cause of Mr. Goldman's economic losses, pain and suffering. In *Cabrera v. Asoc.*

*De Señoras Damas*, 96 D.P.R. 775 (1968), the Supreme Court of Puerto Rico held that the hospital

was liable in a tort action, when its employees made worse a condition in a patient's eye. This

same doctrine is applicable to any professional service provider. "Do not cause any damage to

your client" is also applicable to the legal profession. After McConnell & Valdes and Mr. Arias

The ensuing unnecessary litigation, even after McConnell & Valdes' and Mr. Arias' withdrawal

from said case, left Mr. Goldman in the position of having to retain the services of another law

firm that came in to his rescue, and the law firm of Morell, Cartagena, Dapena were paid the sum

of $153,000 by Mr. Goldman, so that said law firm could extract Mr. Goldman from the mess that

Mr. Goldman was found to be in said litigation. It is not necessary that a lawyer makes the

determination of recommending any advice with mathematical certainty. All that you need is not

to provide unfounded "legal" advice, that will cause more damage to any of your clients. Lawyers

have the duty of care and must take the foreseeable measures that a prudent and reasonable man would display under the circumstances that surround the legal situation that his/her client confronts. To determine the amount of attention and care that is being required, the legal professional needs to be aware of the general practice of the legal profession that is recognized by the legal profession. Similar duties have been imposed to the medical profession, For example, please see: _Crespo v. H.R. Psychiatric Hosp., Inc._, 114 D.P.R. 796, 800 (1983); _Hernández v. La Capital_, 81 D.P.R. 1031, 1037-1038.; _Soc. De Gananciales, Etc. v. Presbyterian Hospital_, 88 D.P.R. 391, 399 (1963); _López v. Hosp. Presbiteriano, Inc._, 107 D.P.R. 197, 213(1978) y _Oliveros v. Abreu_, 101 D.P.R. 209 (1973). In _Núñez vs. Cintrón_, 115 D.P.R. 598,611 (1984), the Supreme Court of Puerto Rico held that the duty of the hospitals and doctors is to offer to their patients the attention that satisfies the generally recognized requirements by the medical profession at the light of the modern of communication and teachings. _Cruz v. Centeno Médico de P.R._, 113 D.P.R. 719 (1983); _Negrón v. Municipality de San Juan_, 107 D.P.R. 375 (1978); _López v. Hosp. Presbiteriano, Inc._, 107 D.P.R. 197 (1978). The breach of that duty by the personnel of the hospital brings liability to the hospitals. _Márquez Alfonso v. F.S.E._, 105 D.P.R. 322, 328 (1976). In _Sandra Rolón-Alvarado, Plaintiff-Appellant v. Municipality of San Juan_, 1 F.3d 74, the Court held that: "The substantive law of Puerto Rico controls in this diversity suit. To establish a prima facie case of medical malpractice under that law, a plaintiff must adduce evidence showing at least three separate things: (1) the duty owed, expressed as the minimum standard of professional knowledge and skill required under the circumstances then obtaining; (2) a breach of that duty attributable to the defendant; and (3) a

sufficient causal nexus between the breach and the plaintiff's claimed injury. See, _Sierra Pérez v._ _United States_, 779 F. Supp. 637, 643 (D.P.R.1991); _Crespo v. Hernández_, 121 P.R. Dec. 639, 650 (1988); _Medina Santiago v. Vélez_, 120 P.R. Dec. 380, 385 (1988)." "In 1973, Puerto Rico jettisoned the so-called "locality" or "community standard" rule in favor of a more universal, less parochial approach to establishing the standard of acceptable care for purposes a medical malpractice suit. See _Valendon Martínez v. Hospital Presbiteriano_, _806 F.2d 1128_, 1135-36 (1st Cir.1986) (discussing effect of _Oliveros v. Abreu_, 101 P.R. Dec. 209 (1973)). Today, a physician is expected to possess, and use, that level of knowledge and skill prevalent in his or her specialty generally, not simply the knowledge and skill commonly displayed in the community or immediate geographic region where the treatment is administered. See _Oliveros, 101 P.R. Dec. at 223, 226-27, translated in 1 P.R. Sup. Ct. Off'l Translations 293, at 303, 313_. In other words, a health-care provider has a duty to use the same degree of expertise as could reasonably be expected of a typically competent practitioner in the identical specialty under the same or similar circumstances, regardless of regional variations in professional acumen or level of care." "We have no doubt that Puerto Rico would follow this rule; indeed, in what amounts to a variation on the same theme, the Puerto Rico Supreme Court has held that even an acknowledged error in medical judgment cannot support a malpractice claim so long as the mistake is reasonable. See _Oliveros, 1 P.R. Sup. Ct. Off'l Translations at 314; see also_ _Suárez Matos v. Ashford Presbyterian Community Hosp._, _4 F.3d 47_, 50 (1st Cir.1993) (suggesting that, in Puerto Rico, a mistake in diagnosis will not necessarily constitute malpractice); _Del Valle Rivera_, _630 F. Supp. at 756_ (stating that, under Puerto Rico's jurisprudence, a plaintiff who charges a physician with malpractice must establish that the defendant's fault "is more than a mere hindsight possibility"). In sum, tort law neither holds a doctor to a standard of perfection nor makes him an

insurer of his patient's well-being. Professional standards require normative judgments, not merely proof that a better way to treat a particular patient could have been devised."

Plaintiff, Goldman alleges that lawyers are subjected to the same professional standards.

## COUNT IV - CAUSE OF ACTION AGAINST MCCONNELL & VALDÉS, VICARIOUS LIABILITY, ARTICLE 1540 OF THE PUERTO RICO CIVIL CODE

Article 1540 of the Puerto Rico Civil Code of 2020 defines vicarious liability. The courts in Puerto Rico extend vicarious liability for any professional malpractice, in situations where a client seeks professional services directly from any law firm, either as an employer or as partnership, such as McConnell & Valdés, and the legal entity provides the services of one of its own lawyers, whether said lawyer is an employee or is a partner in the law firm. Regardless of the lawyer's employment relationship with the law firm. This vicarious liability has been amply discussed in several medical malpractice cases, such as in the case of _Ramírez vs. Corporación del Centro Vascular de Puerto Rico, 32 F. Supp. 3d 83, 90(2014)_. The breach of their legal duty to provide competent legal services is the real cause of Mr. Goldman's substantial economic losses, in addition to Mr. Goldman's emotional, mental damages. McConnell & Valdés is liable for the negligent acts and/or the negligent omissions incurred by any of its employees and/or its agents, relating to their client, Mr. Goldman. This liability derives from the "respondeat superior" doctrine established under Article 1803 of the Puerto Rico Civil Code (1930) and Article 1540 of the Civil Code of Puerto Rico (2020).

## COUNT V – FAILURE TO REPORT MALPRACTICE

Lawyers, like all professionals, make mistakes. In Mr. Goldman's case, his previous lawyers, Defendants herein, failed to conduct factual investigations, drafted inadequate documents and failed to disclose the applicable law to their client, Mr. Goldman, who should be able to assert an independent breach of fiduciary duty claim seeking equitable remedies, including fee forfeiture, based on his lawyers' failure to self-report their errors. This action asserts two principal claims—one for breach of contract for incurring in professional negligence, and a second for breach of fiduciary duty. The lawyers, Defendants, McConnell & Valdes and Mr. Arias breached their duty of care to their client, and breached their fiduciary duties when their lawyers violated their fiduciary duties of loyalty and communication to their client. **Plaintiff, Mr. Goldman** is asserting their breach of fiduciary duty claim and is seeking fee forfeiture, since Mr. Goldman's previous lawyers, McConnell & Valdes and Mr. Arias incurred in their failure to self-report their own malpractice and such act constitutes a breach of their contractual obligations. Plaintiff, Goldman should be able to recover certain equitable remedies—principally fee forfeiture—even in the absence of proof that the fiduciary breach gave rise to damages. When a lawyer fails to report his own malpractice, clients should be able to assert an independent breach of fiduciary duty claim seeking equitable remedies, including fee forfeiture, based on that failure. McConnell & Valdes and Mr. Arias failed to keep their client reasonably informed about the status of his case and failed to explain a matter, that being Judge Delgado's ruling, to the extent reasonably necessary to permit their client to make informed decisions regarding their representation. This duty to inform includes a requirement that a lawyer inform his client when the client may have a substantial malpractice claim against the lawyer, since this information is necessary to permit the client to make informed decisions regarding his legal representation. These decisions include (1) whether

the client has a viable malpractice claim arising out of the representation and, if so, whether to pursue it now or later; and (2) whether to have the lawyer continue to represent the client in the current matter. In this situation, where the interests of the attorney and client may differ substantially, a high degree of disclosure is necessary. MODEL RULES OF PROF'L CONDUCT r. 1.4 (AM. BAR ASS'N 2013); *see also* RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS § 20 (AM. LAW INST. 2000) ("(1) A lawyer must keep a client reasonably informed about the matter and must consult with a client to a reasonable extent concerning decisions to be made by the lawyer… (2) A lawyer must promptly comply with a client's reasonable requests for information. (3) A lawyer must notify a client of decisions to be made by the client . . . and must explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.") Since "the attorney is under a duty to disclose any material matters bearing upon the representation and must impart to the client any information which affects the client's interests").  This conflict is being imputed to Defendant, McConnell & Valdés, LLC's law firm. Once a lawyer's conduct has given rise to a substantial malpractice claim by his client, his personal interests are adverse to their client's and the lawyer's law firm also incurs liability under the facts being alleged in this complaint. In short, a lawyer who fails to disclose his malpractice to his client is subject to discipline for violating Rules 1.4 and 1.7 of the Model Rules of Professional Conduct. The lawyer's failure to disclose his own malpractice may also violate Rule 8.4(c)'s prohibition on conduct involving, among other things, "dishonesty" and "deceit." MODEL RULES OF PROF'L CONDUCT r. 8.4(c) that lawyers must "reveal all information that a reasonable client would attach importance to in determining the objectives of the representation…but if the mistake "has consequences that materially affect the client's matter,

the fact of the mistake becomes material, and must be disclosed to the client." Applying this understanding of materiality, the self-reporting duty should arise "when the error is one that a reasonable client would find significant in making decisions about (1) the lawyer-client relationship and (2) the continued representation by the lawyer or law firm." As applied to the self-reporting duty, materiality comes down to primarily two things: how bad was the mistake and how much harm did it caused. As a direct and proximate result of the joint fault and/or negligence of Mr. Arias and McConnell Valdés, Mr. Goldman suffered emotional damages, resulting in mental pain and suffering, Mr. Goldman has suffered significant financial losses, including his payment in the sum of $193,000 to Defendant, McConnell & Valdés, for their faulty or negligent services that Mr. Goldman received during the unnecessary, unsuccessful litigation that resulted from McConnell & Valdés' wrong legal advice regarding Mr. Goldman's sale of his real estate property in Dorado, Puerto Rico.

<h3 style="text-align:center">COUNT VI - UNDER THE PUERTO RICO INSURANCE CODE</h3>

Pursuant to the Puerto Rico Insurance Code, a casualty or liability insurance carrier is independently liable in a direct action from Plaintiff, Mr. Goldman, in an action against the insured, and when the complaint is filed against the insurer and the insured; for any negligence, fault or condition insured against, up to the merits of liability of the insurance contract. As a direct and proximate result of the joint fault and/or negligence of McConnell & Valdés and Mr. Arias, Mr. Goldman suffered emotional damages, mental pain and suffering and financial losses.

COUNT VII – AS TO ALL COUNTS, THE ACTUAL DAMAGES

As the direct and proximate result of McConnell & Valdés' and Mr. Arias' failure to comply with their legal and contractual obligations and for their fault and/or negligence, Mr. Goldman suffered economic losses, by being forced to sell his real property for a lesser value that resulted in a loss that is estimated to be $6,000,000, and for his payment of $193,000 for the deficient legal services that were provided by McConnell & Valdés and Mr. Arias, and for being led to spend approximately $242,900 in repairs and maintenance as the result of Mr. Arias' bad advice, and for having to spend $153,000 for additional legal fees payable to the law firm of Morell, Cartagena and Dapena, plus the legal fees that Mr. Goldman shall be paying to his attorney in this case. Mr. Goldman still gets up every single day feeling extremely anxious due to his constant regret of having listened to McConnell & Valdés' and Mr. Arias' incorrect, wrong or wrongful legal advice. As the result thereof, Mr. Goldman constantly worries about his present financial situation and about his own uncertain financial future. Since June 8, 2021, McConnell & Valdés and Mr. Arias insisted that the applicable law in Puerto Rico was as follows:

> "Team: Patricia and **I just briefed Mr. Goldman on the defense strategy moving forward mainly supported by careful review of both the option agreement and the draft escrow agreement…** the plaintiff Teal Peak sued because it allegedly validly exercised its right to purchase under the option agreement, the case was ready to close but the seller refused to close and therefore it seeks specific performance. … On Thursday June 3rd we offered counsel for Teal Peak the return of the $800,000 deposit plus reimbursement of all true out of pocket expenses to make Teal Peak whole and part ways… Moving forward our litigation defense and counterclaim will be based on the following talking points: … Fifth, even if the buyer where to show by a preponderance of the evidence that the case was ready to close and it was the seller's fault, **the only remedy it is entitled under the option agreement is the return of the deposit AND (not "or") any other equitable remedies under the law. That is not specific performance. Specific performance is not a remedy available to the buyer. End of discussion.**

Furthermore, even if there was seller liability, which we dispute, all damages claims are not only illegal, they are all pure speculation.… The lawsuit has been filed under the illegal premise that the buyer can compel the seller to close on the sale. Buyer is wrong, seller can walk away and he need only return the cash deposit and pay real expenses. … 4. We can petition the court for immediate mediation to settle the remainder of what the buyer is entitled to which is "equitable remedies" in our view, reimbursement of their out-of-pocket expenses and attorney's fees. 5. Should mediation fail, at the earliest available opportunity Mr. Goldman shall file a motion for summary judgment since the only remaining issue to be decided by the court is a legal issue which need not go to a jury."

Plaintiff, Mr. Goldman followed this incorrect, wrong, or wrongful advice. From that moment on, Mr. Goldman's lacked informed consent to continue to litigate. Mr. Goldman should be compensated by McConnell & Valdés and Mr. Arias in an amount of not less than One Million Dollars ($1,000,000) plus costs and attorney's fees.

## B. Defendants:

On October 23, 2020, plaintiff Alan Goldman ("Mr. Goldman"), a resident of Montpelier, Vermont, signed an "Option to Purchase Agreement" with Mr. John Michael Grzan and Dr. Namrata Khimani, as purchasers, whereby Goldman agreed to sell a residential real estate property in Dorado, Puerto Rico (the "Property") for the amount of $3,150,000. During the negotiation of the "Option to Purchase Agreement", Mr. Goldman, who is not a lawyer, was not represented by counsel, much less did he receive any advice of counsel from the defendants.

At the time he negotiated and signed the "Option to Purchase Agreement", Mr. Goldman was involved in another, separate business venture in Vermont and desperately needed cash in order to avoid a default on said business venture. For this reason, he agreed to sell the Property for what he considered it was worth at the time, for a price that was fair and acceptable to him. In fact, at one point During the negotiation of the "Option to Purchase Agreement", Mr. Goldman

sent an email to the purchaser wherein he lowered the purchase price on the Property, stating: "I was greedy".

Despite having freely and voluntarily negotiated and signed the "Option to Purchase Agreement", wherein he agreed to sell the Property for $3,150,000, Mr. Goldman subsequently refused to sell the Property to the purchaser for this amount.   As a result, he was sued by the designated purchaser, Teal Peak Capital, LLC, ("Teal Peak") in the U.S. District Court for the District of Puerto Rico, in a case captioned Teal Peak Capital, LLC v. Alan Bram Goldman, Civil No. 3:20-cv-1747 (PAD) (the "Teal Peak lawsuit").

On January 13, 2021, Mr. Goldman retained the Puerto Rico law firm of McConnell Valdés, LLC ("McConnell Valdés") to represent his interests in the Teal Peak lawsuit.   As part of such retainer, Mr. Goldman agreed to timely pay legal fees and reimburse McConnell Valdés for expenses incurred in connection with the Teal Peak lawsuit and any other related matters.

At the time the Teal Peak lawsuit was filed, the Property, owned by Mr. Goldman, had not been inhabited for at least five (5) years.  The Property included a house which was surrounded by overgrown vegetation and infested by rodents and other pests.  It also included two motor vehicles which had been left abandoned in the garage.   At the time the Teal Peak lawsuit was filed, Mr. Goldman was the registered owner of the Property and, as such, had an obligation to pay Homeowners' Association fees.

Attorney Antonio Arias Larcada, a capital partner in the McConnell Valdés law firm, was assigned to represent Mr. Goldman, and, as such, filed an appearance on his behalf in the Teal Peak lawsuit.  He also assisted Mr. Goldman with various other matters related to the Property, including representing him in several legal proceedings filed by real estate broker Gerald Kleis

Passarell, who claimed that Mr. Goldman owed him a commission. Mr. Kleis sued Mr. Goldman in the Puerto Rico courts, and Mr. Arias obtained the dismissal of the case, which Mr. Kleis unsuccessfully appealed. Mr. Kleis then sued a second time and obtained a default judgment against Mr. Goldman, which was subsequently set aside. Mr. Kleis also sought to intervene in the Teal Peak lawsuit, and subsequently appealed the District Court's denial of his request to intervene to the U.S. Court of Appeals for the First Circuit.

Mr. Goldman consulted with Mr. Arias regarding all of these and numerous other matters, by phone, on a regular, nearly daily basis. These consultations included not only discussions about his defense in the Teal Peak lawsuit, but also discussions of the proceedings filed by Mr. Kleis against Mr. Goldman seeking payment of unearned commissions, a break-in of the house which occurred on June 25, 2021, a subsequent inspection of the Property conducted by Mr. Arias, the filing of a police report for the break-in, the registration of the abandoned motor vehicles located in the garage, and recommendations as to property managers to provide maintenance and upkeep of the Property. These regular phone conversations between Mr. Arias and Mr. Goldman also included discussion of other unrelated, personal matters, such as Mr. Goldman's health, his business, his future plans and his relationship with his daughter as well as other family members.

Mr. Goldman repeatedly indicated to his counsel, Mr. Arias, that he was of sound mind at the time he agreed to sell his property in Puerto Rico, and that he freely agreed to the purchase price of $3,150,000 because he needed to liquidate his only available and unencumbered property quickly (and use the $800,000 deposit paid directly to him by Teal Peak) to avoid a default on a separate business venture in Vermont that he was involved in. Nevertheless, Mr. Goldman asked

Mr. Arias to vigorously defend him in the Teal Peak lawsuit, based on various factual and legal theories which they developed together in consultation with each other.

On or about June 3, 2021, following instructions from Mr. Goldman, Mr. Arias formally offered Teal Peak to settle the case via the return of the $800,000 deposit plus reimbursement of all true out of pocket expenses to make Teal Peak whole. On June 7, 2021, Teal Peak's counsel advised that his client had rejected this settlement offer, which was informed to Mr. Goldman.

On June 8, 2021, Mr. Arias briefed Mr. Goldman in writing on the strategy to be pursued going forward, which included a litigation defense and counterclaim based on five "talking points" which collectively would form the basis for his defense: (1) that the case was not ready for closing in December of 2020; (2) that Mr. Goldman was not at fault for the case not being ready for closing in December of 2020; (3) that Mr. Goldman could not deliver clean title because real estate broker Kleis filed a bogus lawsuit for an unearned commission and registered a *Lis Pendens* on the property; (4) that even if Mr. Goldman could deliver clear title by the closing, he had been deceived by the buyer through *dolus* vitiating the option agreement; and (5) that even if the buyer could show that the case was ready to close and that the failure to close was the seller's fault, the only remedy the purchaser would be entitled to would be return of the deposit and other equitable remedies which did not include specific performance. Further, another "talking point" was that the damages alleged by the purchaser were illegal and purely speculative. Mr. Arias also advised Mr. Goldman in writing on June 8, 2021, that he should consign the $800,000 deposit in court and petition the court for immediate mediation, which he agreed to.

Mr. Arias regularly communicated with Mr. Goldman, both verbally and in writing, regarding all relevant developments in the various matters he was handling on his behalf. Mr.

Arias advised Mr. Goldman in writing that he was working on a Motion to Dismiss the Amended Complaint in the Teal Peak lawsuit based on the default language in the Option Agreement. Said Motion was filed on June 18, 2021. Subsequently, Mr. Arias informed Mr. Goldman in writing that Teal Peak had filed a Motion in Opposition to the Motion to Dismiss, and that Mr. Arias had filed a Reply to the Opposition filed by Teal Peak and a separate Motion seeking mediation and a stay of discovery pending resolution of the Motion to Dismiss filed by Mr. Arias. On December 1, 2021, Mr. Arias advised Mr. Goldman in writing that Teal Peak was not interested in mediation. On February 21, 2022, Mr. Arias advised Mr. Goldman in writing regarding a Status Conference held before the Court on February 14, 2022. In an email, Mr. Arias advised Mr. Goldman regarding the arguments he had presented to the Judge during the Status Conference. On March 24, 2022, Judge Pedro Delgado Hernandez denied Mr. Goldman's Motion to Dismiss. The denial of the Motion to Dismiss was verbally communicated to Mr. Goldman. On May 5, 2022, Mr. Arias advised Mr. Goldman in writing regarding another Status Conference held on that same date. Subsequently, the parties conducted discovery, which included the deposition of Mr. Goldman, for which Mr. Goldman and Mr. Arias extensively prepared, and which took place on September 6, 2022. The Joint Proposed Pretrial Order was prepared, with the advice and consent of Mr. Goldman, and filed on October 31, 2022. Mr. Arias made Mr. Goldman aware that the case had been scheduled for a bench trial in May of 2023 and that Mr. Goldman would have to testify in order to attempt to persuade the Judge of the validity of his position.

After completion of discovery in the case, Mr. Arias again advised Mr. Goldman to try to settle the matter, to which Mr. Goldman adamantly responded by stating: "I'm not settling". Nevertheless, on or about December 11, 2022, Mr. Goldman's brother Mark became involved in

discussions with Mr. Arias regarding the strategy to be pursued in the case, and he in turn involved certain lawyers he had retained from the law firm of Holland & Knight in Boston, Massachusetts. As a result of their collective involvement, and in consideration of his understanding of the costs and risks involved in the litigation, Mr. Goldman agreed to make a new settlement offer in the Teal Peak lawsuit, which essentially involved attempting to sell the Property to a third party and dividing the proceeds between Mr. Goldman and Teal Peak. This offer was communicated to Teal Peak's counsel and ultimately rejected because his clients "did not trust" Mr. Goldman. After this settlement offer was rejected by Teal Peak, Mr. Goldman did not communicate with Mr. Arias until March 26, 2023, when he requested that Arias and McConnell Valdés withdraw from the case.

Mr. Arias and McConnell Valdés represented Mr. Goldman in the Teal Peak lawsuit until March 27, 2023, when Mr. Arias and McConnell Valdés requested leave to withdraw as counsel, which was subsequently granted. Thereafter, Mr. Goldman was represented in the Teal Peak lawsuit by the law firm of Morell, Cartagena & Dapena until the suit's conclusion via a "Confidential Joint Stipulation for the Entry of Judgment" (the "Settlement Agreement") entered into between Mr. Goldman and Teak Peak. As part of the Settlement Agreement, on June 29, 2023, Mr. Goldman signed a "Deed of Purchase and Sale" before Notary Public Miguel Carbonell Astor, wherein he sold the Property to Teal Peak for the sum of $3,800,000, that is, for $650,000 more than he had previously agreed to in the "Option to Purchase Agreement".

During the course of the representation in these matters, Mr. Goldman repeatedly failed to timely pay numerous invoices for legal services rendered and expenses incurred by McConnell Valdés. Since their withdrawal from the Teal Peak lawsuit, McConnell Valdés has repeatedly

demanded payment from Mr. Goldman of several invoices for legal fees and expenses outstanding in the total amount of $53,607.30. Nevertheless, Mr. Goldman has not paid McConnell Valdés for said invoices. The legal fees and expenses outstanding in the amount of $53,607.30 correspond to work performed by McConnell Valdés attorneys and expenses incurred for the benefit of Mr. Goldman, and were reasonable, necessary and contractually agreed to by Mr. Goldman.

On March 25, 2024, Mr. Goldman filed the present Verified Amended Complaint against Mr. Arias, his wife Mrs. Arias, the conjugal partnership constituted between them, Mr. José Irizarry Castro and McConnell Valdés. In the Verified Amended Complaint, Mr. Goldman frivolously claims that Mr. Arias, Mr. Irizarry and McConnell Valdés committed legal malpractice, breached their contractual obligations towards him, and unjustly enriched themselves during their defense of his interests in the Teal Peak litigation.

Mr. Goldman's claims of breach of contract and unjust enrichment are frivolous. The defendants at all times complied with their contractual obligations towards him and the fees and expenses charged were reasonable, necessary and agreed to by Mr. Goldman. Moreover, Mr. Goldman's allegations of legal malpractice simply make no sense. In his Verified Amended Complaint, Mr. Goldman seems to be suggesting that the defendants gave him "wrong legal advice" about the lack of merit to his defense to Teal Peak's request for specific performance of the "Option to Purchase Agreement", and that the defendants should have instead advised him to settle the case, rather than litigate it vigorously. Mr. Goldman claims that because of this "wrong legal advice" he suffered economic damage which "offsets" the amounts he owes McConnell Valdés for legal fees and expenses. But the reality, borne out by the record, is that

Mr. Arias vigorously defended Mr. Goldman's interests in court, in accordance with his instructions, while advising him at several junctures to try to settle the Teal Peak case. Indeed, largely because of Mr. Arias' robust defense of Mr. Goldman, he was ultimately able to resolve the case by selling the property to the purchaser for $650,000 more than he had originally agreed to.

The alleged damages claimed by Mr. Goldman are non-existent. Thus, for example, Mr. Goldman claims, *inter alia*, damages in the amount of $242,900, which he alleges he was induced by Mr. Arias to spend on "totally unnecessary repairs and maintenance expenses" for the Property. But any amounts spent by Mr. Goldman for repairs and maintenance of the Property during the pendency of the Teal Peak lawsuit were independently undertaken by Mr. Goldman without consulting with Mr. Arias or any other lawyer at McConnell Valdés, and were likely necessary and inured to his benefit, as the Property and motor vehicles on the premises had been abandoned, the house had been broken into, and was surrounded by overgrown vegetation and infested with rodents and other pests. Further, some portion of the $242,900 allegedly disbursed by Mr. Goldman during the pendency of the Teal Peak lawsuit corresponded to Homeowners' Association fees he owed, as the registered owner of the Property, and therefore necessarily had to be incurred. In addition, the Verified Amended Complaint tellingly omits any mention of the fact that on June 29, 2023, Mr. Goldman sold the Property for $3,800,000, that is, for $650,000 more than was agreed upon in the "Option to Purchase Agreement". Thus, it is clear that Mr. Goldman suffered no damages as a result of any action or omission of the defendants.

The reality is that Mr. Arias and McConnell Valdés represented Mr. Goldman in the Teal Peak lawsuit vigorously and competently, in compliance with their ethical responsibilities and in

accordance with their best professional judgment, communicating with him constantly and keeping him apprised of all relevant developments in the case. They consulted with him on a near daily basis and put forth various legal theories in his defense, making reasonable choices to serve Mr. Goldman's best interests, in accordance with his instructions. They conducted discovery, prepared Mr. Goldman for his deposition, and unsuccessfully attempted to have the case dismissed and to settle the matter. Largely as a result of their efforts, Mr. Goldman was ultimately able to settle the case by selling the property for $650,000 more than he had originally agreed to.

By filing the present lawsuit, Mr. Goldman has not only misled the Court; he has also made false and defamatory allegations against Mr. Arias. For example, he attached as Exhibit 5 to his Verified Amended Complaint an email sent to him by Mr. Arias on October 5, 2023, which reads as follows:

A) Greetings Mark and Alan: We have not been able to locate an email attaching the March 24th, 2022, order denying the motion to dismiss. However, as I stated during our call, this was discussed with Alan during my frequent and extended telephone conferences with him. Kindly let me know when you are available to continue our call and conclude our discussion.

Mr. Goldman commented on Mr. Arias' statement in an email to his attorney, stating: "he is lying". Mr. Goldman's comment was meant to claim that Mr. Arias was lying about having discussed the denial of the Motion to Dismiss with Mr. Goldman during their frequent and extensive telephone conversations. But Mr. Arias was not "lying". Mr. Goldman's false written statement that Mr. Arias "is lying" about having discussed the denial of the Motion to Dismiss with Mr. Goldman was submitted as an Exhibit to the Verified Amended Complaint, which was publicly filed in the U.S. District Court with no restrictions on who could access it.

As a result of Mr. Goldman's false and defamatory statement, characterizing him as having lied to a client, Mr. Arias has suffered and continues to suffer emotional distress, as well as damage to his good name and reputation as a lawyer in the Puerto Rico legal and social community. Mrs. Arias has also suffered emotional distress as a result of Mr. Goldman's false statement defaming her husband.

In fact, the Verified Amended Complaint contains a number of factual falsehoods, including but not limited to the defamatory claim that Mr. Arias lied to Mr. Goldman about having verbally discussed the denial of the Motion to Dismiss with him, the false claim that Mr. Goldman was induced by Mr. Arias to spend $242,900 on totally unnecessary repairs and maintenance of the Property, and the fabricated claim that the fees and expenses charged by McConnell Valdés were unnecessary in order to defend Mr. Goldman in the Teal Peak lawsuit.

Mr. Goldman filed the Verified Amended Complaint based on false and defamatory allegations, without a legitimate legal and/or factual basis, and for an improper purpose, that is, to harass, intimidate, and oppress the defendants and/or to avoid payment of fees owed to McConnell Valdés. As such, the filing of the Verified Amended Complaint manifestly exceeded the normal limits of the exercise of legal rights and constituted an abuse of the legal process. As a result of Mr. Goldman's unjustified abuse of the legal process, Mr. Arias and Mrs. Arias have suffered and continue to suffer emotional distress, and all defendants have suffered damage to their good name and reputation.

II. Jurisdiccional Issues:

A. Plaintiff:

Plaintiff understands there is no controversy as to the jurisdiction of this court. This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. § 1332, since there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $500,000, exclusive of interest and costs, and has supplemental jurisdiction over the subject matter, pursuant to 28 U.S.C. § 1367, regarding Plaintiff, Goldman's state law claims under Articles 287, 290, 1163, 1258, 1259, 1260, 1536, 1540, and 1803 of the Puerto Rico Civil Code of 2020, and under Law 121 – 2019 "Ley de la Carta de Derechos y la Política Pública del Gobierno a favor de los Adultos Mayores". Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) (1) and (2), since the events giving rise to these claims arose in this District. Plaintiff, Mr. Goldman, of legal age, single, developer, with residence at 1014 Terrace Street, Montpelier, Vermont 05602.

Defendant McConnell Valdés, LLC is a limited liability company ("LLC") organized under the laws of the Commonwealth of Puerto Rico. Defendant, Antonio A. Arias-Larcada is of legal age, an attorney at law and capital member or partner of McConnell Valdés, LLC. Mr. Arias' wife is identified as Mrs. Arias and are married to each other under the conjugal partnership laws of Puerto Rico.

B. **Defendant:**

None for the moment. However, defendants reserve the right to raise any jurisdictional issues that may become apparent as discovery progresses.

III. Inform whether each party consents to proceed before a Magistrate Judge pursuant to 28

   USC. § 636:

   A. Plaintiff:

Plaintiff consents to proceed before a Magistrate Judge pursuant to 28 USCA § 636.

   B. Defendants:

Defendants do not object to pretrial matters being handled by a U.S. Magistrate Judge, but do

not consent for the trial to be held before a Magistrate Judge.

IV. Certify that each party has complied with the initial disclosure requirements of FED. R.

   CIV. P. 26 (a)(1):

The parties are in the process of preparing Initial Disclosures and will exchange same prior to

the Initial Scheduling/Settlement Conference scheduled for July 30, 2024, before U.S. Magistrate

Judge Marcos López.

V. Certify that the parties have addressed any electronic discovery issues, see FED. R. CIV.

   P. 26 (a)(1)(B); 26 (f)(3) & (4), and submit any proposed agreement(s) under these rules:

The parties have discussed electronic discovery issues and will agree to stipulate how this

discovery is to be conducted.

VI. A Joint proposed discovery timetable:

The parties propose the following discovery timetable:

(a) Interrogatories and requests for production of documents will be submitted by each party

   by no later than August 31, 2024. To be answered by no later than September 30, 2024.

(b) The parties will take the following depositions:

   (1) Plaintiff will take the depositions of the defendants.

(2) Defendants will take the deposition of Plaintiff and any other witnesses announced by Plaintiff.

(3) All depositions will be scheduled during the months of October, November and December of 2024.

(c) The parties may submit a request for admissions by no later than: December 31, 2024.

(d) If any is to use an expert, the expert must be announced by no later than: October 31, 2024, by submitting the Curriculum Vitae of the expert and the list of cases he has served as an expert in the last four years. The experts are to submit their Expert Report by no later than: November 15, 2024. Experts' depositions are to be taken by no later than December 15, 2024.

(e) The discovery is to be completed by no later than: December 31, 2024.

(f) Dispositive Motions must be filed no later than January 31, 2025.

**VII.** **Inform of all related cases filed in federal and/or Commonwealth Court by plaintiff(s), even if involving different parties. This shall include the caption and number of case(s). This requirement must be complied with even if counsel in the related cases is different:**

(1) <u>Teal Peak Capital, LLC, Plaintiff, vs. Alan Bram Goldman, Defendant</u>, Civil No. 3:20-cv-1747, in the U.S. District Court for the District of Puerto Rico.

(2) <u>Bram Goldman v. Kleis Pasarell</u>, No. 21-1960, in the United States Court of Appeals for the First Circuit.

(3) <u>Gerald Kleis Pasarell v. Alan Bram Goldman</u>, No. BY2020CV03482, before the Puerto Rico Superior Court of Toa Alta.

(4) <u>Gerald Kleis Pasarell v. Alan Bram Goldman</u>, No. CC-2021-0687, before the Supreme Court of Puerto Rico.

(5) <u>Gerald Kleis Pasarell v. Alan Bram Goldman</u>, No. BY2021CV05162, before the Puerto Rico Superior Court of Toa Alta.

VIII.   **Any other matters deemed important to the case:**

A. Plaintiff:

Defendants, McConnell & Valdes and Mr. Arias may have insurance policies providing casualty or liability and such insurance carrier may be independently liable in a direct action by Plaintiff, Mr. Goldman, or when the complaint is filed against the insurer and the insured, for any negligence, fault or condition insured against, up to the merits of liability of the insurance contract. Once said insurance carrier is identified, Plaintiff, Goldman shall move for permission from this court to file Plaintiff's second amended complaint, properly naming said additional defendant party. This new party may file additional discovery in this case.

B. Defendants

None for the moment.

RESPECTFULLY SUBMITTED.

In Miami, Florida, and San Juan, Puerto Rico, this 22nd day of July 2024.

# CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that we electronically filed the foregoing with the Clerk of the Court

using the CM/ECF system which will notify a copy of the same to all attorneys of record.

*s/Francisco M. López-Romo*
FRANCISCO M. LOPEZ-ROMO
USDC-PR NO.  118314

PO Box 331823
Coconut Grove, Florida  33233
Telephone: 305-772-5577
Email: lopezromo@gmail.com

S/MANUEL SAN JUAN
MANUEL SAN JUAN
USDC-PR No.: 204706
P.O. Box 9023587
San Juan, Puerto Rico 00902-3587
Tel.:(787)723-6637 / (787) 723-6669
E-mail:  sanjuanm@microjuris.com