| | |
|---|---|
| **From:** | Alan Goldman |
| **To:** | edgardo.cartagena@mbcdlaw.com; Alan Goldman |
| **Subject:** | Fw: Status conference held February 14, 2022 Teal Peak v. Goldman |
| **Date:** | Saturday, April 1, 2023 9:53:25 AM |
| **Attachments:** | image978292.png |
| | image226209.png |

**From:** Antonio A. Arias <Aaa@mcvpr.com>
**Sent:** Monday, February 21, 2022 2:10 PM
**To:** Alan Goldman <goldiefun@msn.com>
**Cc:** Patricia George-Iguina <pgi@mcvpr.com>; José Irizarry Castro <jic@mcvpr.com>
**Subject:** Status conference held February 14, 2022 Teal Peak v. Goldman

Greetings: As per our conference call last Tuesday, February 15, 2022 what follows is a report on the status conference held before Judge Pedro Delgado on your case. Counsel for Teal Peak and for the couple were also in attendance. The judge opened by indicating that he had reviewed all the legal briefs and had also done additional research on the issues. First he asked counsel for Teal Peak what was the criteria to consider on whether to granting or denying the pending motion to prohibit alienation of the property by the owner pending trial. The response was that the main criteria was the likelihood of success on the merits. Teal Peak conceded there was no public interest involved in this case as it is a private dispute over an option agreement. Teal Peak stressed that if the motion is denied and the property were to be sold that would moot the action. The judged then turned to me and I took my time to argue why there was no likelihood for the plaintiffs to prevail on the merits of the case due to the three pillars of our case. First, the contract clearly and with specificity reads in the default clause that the buyer shall the entitled to the return of the security deposit and any other equitable remedies. If the security deposit is returned the vague and not specific additional remedies can only involve some additional monetary compensation for lost interest or inconvenience but not specific performance. Given that the defendant had already returned the security deposit which is held by the court in escrow the case is mostly moot. I stressed to the court that the seller did no draft the option agreement and was not represented by counsel and would have never agreed to specific performance upon his default. The second pillar involves that even if the seller wanted to proceed with the closing he was unable to close due to the Kleis lawsuit. I took the judge through the lawsuit, how Kleis even placed a lien on the property based on an alleged broker's commission due to him before the closing which is totally unheard of. I tied that to the escrow agreement prepared by Grzan without the input of the seller attempting to have K;eis withdraw his lawsuit and lift the lien in exchange for payment of his entire claim. I informed the court the catch was that the seller would be financing the payoff. This is proven by the closing settlement statement prepared by the notary public doing the closing which showed that the payoff to Kleis was coming from the proceeds of the sale. I further impressed on the court that there was no broker agreement, that my client never agreed to a $31,500 commission to Kleis and that had he been made aware of this arrangement he would have never agreed to accept the same. In fact, I informed the court that the actual lawsuit fled by Kleis had been dismissed for his failure to serve process on the seller and all his appeals had been denied. As of this date, the dismissal of Kleis' lawsuit is final and unappealable. Also, Kleis' motion to intervene was denied and he is due to appeal said denial before the First Circuit Court of Appeals. Nevertheless, the lien has not been lifted

and due to it the seller could not convey clean title to the buyers. The third pillar is the dolus on the part of the buyers. I took the court through the scheme, the conflict of interest by Ferraiuoli, the seller's medical condition, his mental state, the mysterious withdrawal of the Mr. Lee purchase offer, COVID and lack of local eyes and ears. Finally, I impressed upon the court the remedy sought cannot be granted without the imposition of at least a $10,000,000 security bond as mandated by law.

Teal Peak's response was shrill and showed an irresponsible lack of preparedness. Attorney Sánchez opened by claiming the three pillar defense was new (wrong, he just needed to read the motions on file with the court). He claimed that he had read all the emails between the parties and what happened was that the seller executed the option agreement but then decided not to sell. He continued to argue that despite the contractual language his clients are entitled to specific performance. As to the lack of clean title he had the audacity to claim that the sales price was adjusted upwards by $31,500 and the charge to the seller which appears in the closing settlement statement was a wash. In the same breath he admitted not having seen the closing statement and then added that closing statements are revised at closing all the time. As to the dolus, he again dismissed it as a pretext by the seller. I was given an opportunity to reply and reinforced our position following Teal Peak's shoddy performance. At the end opposing counsel even had the nerve to claim that the events took place in 2019 before COVID, a misrepresentation he retracted from later in the hearing. The problem is he made those statements to the judge which such a conviction that at the end of the day he just tarnished his credibility before the same trier of fact who will resolve the case.

The judge then indicated that he understood the main issues of the case and that he would not rule on the motion pending the conclusion of discovery. Close of discovery was pulled back two months to May 31st, 2022. Teal Peak and the couple must submit their answers to interrogatories and produce documents by February 28, 2022. The court sided with me that the plaintiffs have had more than reasonable time to have complied with their discovery obligations which were inexcusably overdue.

The judge previewed that there are possible scenarios in the case. If he reads the penalty clause as directed by the seller, the best case scenario is the security deposit and some additional monies. The worst case scenario for the seller is specific performance minus the $800,000 deposit or a decision somewhere in between. He noticed that the parties are free to engage in settlement discussions at any time. However, the judge made clear he will not rule without listening to both the buyer and seller in person. Therefore, since the plaintiff did not demand a jury trial, he will convene a bench trial sometime this summer and expedite the resolution of this case. I asked the court if the seller could appear by videoconference and that was confirmed. Counsel will need to appear in court in person. Furthermore, depositions may also be taken by videoconference.

Finally, the judge stated that he would not rule on the motion to prohibit alienation of the property. However, he looked at me and decreed he would not like to find out that he property was being sold. If he got word of a sale he would immediately schedule a hearing and make a ruling. He then asked me what was my reaction. I calmly replied that the buyers were obtaining the remedy without having post a bond. As we have discussed internally, the mere fact of this pending litigation, let alone the pending motion has cast a shadow over the property. No potential buyer would commit to a sale during the pendency of this case. Therefore, it is to our benefit that we move quickly to a bench trial and get this

resolved.

The court scheduled a status hearing for May 6th, 2022 at 4:00 p.m.



**Antonio A. Arias** ■ **Capital Member** ■
Aaa@mcvpr.com

T (787) 250-5604   ■   M (787) 405-8672
270 Muñoz Rivera Ave. San Juan, Puerto Rico 00918

This e-mail and its attachment(s) may be privileged, confidential, and protected from disclosure. If you received this communication in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon this communication is strictly prohibited. Unintended recipient(s) must immediately delete the e-mail and attachment(s), and notify the sender. The information contained in this communication and its attachments, including discussion of U.S. federal income, Puerto Rico income or other tax related matter, is limited to the statements specifically set forth herein, and such statements are intended for the sole use and benefit of our client and are not intended to be relied upon by any other person. The discussion of tax related matters was not intended or written to be used, and it cannot be used, for purposes of avoiding U.S. federal, Puerto Rico or local tax penalties.