# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| ALAN GOLDMAN,<br><br>    Plaintiff<br><br>        v.<br><br>MCCONNELL VALDES, LLC;<br>ANTONIO A. ARIAS-LARCADA, his wife MRS. ARIAS, and the Conjugal Partnership composed by them;<br>JOSE IRIZARRY-CASTRO;<br>JOHN DOE; MARY DOE<br>UNKNOWN INSURANCE COMPANY;<br><br>    Defendants | CIVIL NO.: 24cv01136(SCC) |

### DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO CHANGE VENUE

**TO THE HONORABLE COURT:**

**NOW APPEAR** co-defendants Antonio Arias Larcada, his wife Maria Beale, and the Conjugal Partnership constituted between them, and McConnell Valdés, LLC., through their undersigned counsel, and very respectfully state and pray as follows:

**I.     Introduction:**

As anticipated, in an increasingly desperate attempt to avoid the mental and physical examination ordered by the Court in this case, plaintiff Alan Goldman has now filed a Motion for Change of Venue, seeking the transfer of this case to the U.S. District Court in Vermont. Once again claiming an inability to travel to Puerto Rico to prosecute the action he chose to commence in this district, Mr. Goldman audaciously seeks a change

of venue that would force the appearing parties to defend this suit in Vermont. But under 28 U.S.C. Sec. 1404(a), a case can only be transferred to another district if it could have been brought there in the first place. Clearly, Mr. Goldman's suit could not have been brought in Vermont, as it involves litigation against a Puerto Rico law firm for legal services rendered in Puerto Rico with respect to a parcel of real property located in Puerto Rico, and the defendants have had no contacts with Vermont that would allow a court in that state to exercise *in personam* jurisdiction over them. The requested change of venue is thus unavailable to Mr. Goldman, and his motion must be denied.

**II.    Background:**

Plaintiff Alan Goldman is suing the appearing defendants, a Puerto Rico lawyer, his wife and law firm, for allegedly failing to competently defend him in a Puerto Rico lawsuit filed against him by the buyer of a property Mr. Goldman owned in Puerto Rico, which he refused to sell despite signing a purchase agreement. Because Mr. Goldman's Amended Complaint claims that his former lawyers failed to raise his alleged "cognitive impairment" as a defense to the suit, both his physical and mental state are at issue in this case. Accordingly, on August 27, 2024, the appearing defendants filed a Motion (Dkt. No. 34) pursuant to Fed.R.Civ.P. 35 requesting that he be ordered to submit to a mental and physical examination by Dr. José A. Franceschini, a local psychiatrist. Mr. Goldman did not oppose the defendants' Motion, and on September 18, 2024, the Court granted it, ordering the plaintiff to "submit to a mental and physical examination" at Dr. Franceschini's office on October 21 and 23, 2024. Dkt. No. 45.

Two weeks after the Court granted defendants' Motion, on October 1, 2024, plaintiff's counsel emailed the undersigned, advising that his client "will not be able to

travel to San Juan for the examination" ordered by the Court.  Ten days later, on October 10, 2024, the plaintiff filed a "Motion Requesting Relief" (Dkt. No. 47), wherein he asked the Court to set aside or modify its prior Order, alleging that he was unable to travel to Puerto Rico for the examination due to unspecified medical conditions.  On October 16, 2024, the appearing defendants filed their Opposition (Dkt. No. 49), which was subsequently joined by the co-defendants (Dkts. No. 50, 51).  Despite the existence of the Court's Order at Dkt. No. 45, the plaintiff did not appear for the mental and physical examination on October 20, 2024.  See, "Informative Motion", Dkt. No 55.

On November 4, 2024, the plaintiff filed a "Second Motion Requesting Relief from Court Order Regarding Physical and Mental Examination".  In it, the plaintiff reiterated his prior request to be relieved from the Court's Order at Dkt. No. 45.  His request was based on a signed letter dated October 10, 2024, by Amy E. Renner, NP (not a physician but rather a "Nurse Practitioner") who purported to give her "medical opinion" (which, as Nurse Practitioner, she is arguably not qualified to give) to the effect that Mr. Goldman "should not travel out of the country due to multiple medical concerns."  Subsequently, on November 12, 2024, and without requesting leave of Court, the plaintiff filed two additional motions:  (1) a "Response to Defendants' Opposition to Plaintiff's Motion Requesting Relief (Dkt. No. 62); and (2) a "Motion under Seal in Support of Plaintiff's Response to Defendants' Opposition to Plaintiff's Motion Requesting Relief (Dkt. No. 63).  Additional motions on the subject were filed at docket numbers 65, 66, 67 and 68.

On November 15, 2024, the Court held a hearing to address the plaintiff's claims.  After extensive argument from the parties, the Court "determined that the medical examination will not be performed in Vermont" as requested by the plaintiff.  See, Dkt.

No. 69. The Court stayed the case for sixty (60) days to allow Mr. Goldman to deal with certain pressing business matters involving the State of Vermont which he alleged prevented him from traveling. Upon expiration of this term, the matter would be referred to a Magistrate Judge for a Scheduling Conference, "including the deadline for Dr. Franceschini to conduct the medical examination." Id. The Court reiterated this ruling at Docket Number 81.

The stay expired, and on February 12, 2025, the undersigned wrote to plaintiff's counsel advising that "Dr. Franceschini is available to conduct the evaluation of Mr. Goldman on either March 27 and 31, 2025, or April 3 and 4, 2025." In response, rather than agree to any of the proposed dates, the plaintiff's counsel emailed the undersigned attaching his client's psychiatric records and a letter from Dr. James Stone. Dr. Stone's letter discusses Mr. Goldman's medical history and states that Mr. Goldman "experiences intense Agoraphobia and frequent panic attacks especially in crowded settings making it nearly impossible for him to leave his home without significant emotional and physical distress." According to Dr. Stone, Mr. Goldman reports "avoiding public transportation, airplanes, buses, churches, temples, restaurants, and all public gathering places since the onset of the pandemic." On this basis, Dr. Stone "recommend[s] that all legal proceedings occur in Vermont."

On March 7, 2025, the appearing defendants filed a Motion to Compel the Plaintiff's physical and mental examination, anticipating the Plaintiff's continued resistance to the Court's Order. Dkt. No. 92. As expected, the plaintiff filed a response reiterating his previously denied request that the examination be conducted in Vermont (Dkt. No. 96), and subsequently a Motion to Change Venue requesting the transfer of this

case to the District of Vermont (Dkt. No. 102). In support, he attached additional medical records and a letter from his physician, Dr. Benjamin Flynn.

### III.     Applicable Law:

#### A.  Venue:

The only basis for federal subject matter jurisdiction in this case is diversity of citizenship, so the applicable venue statute is 28 U.S.C. § 1391(a), which provides:

"A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought."

As to a change of venue, Section 1404(a) of Title 28 provides that "for the convenience of the parties and witnesses, in the interest of justice, a district may transfer any civil action to any other district where it might have been brought." 28 U.S.C. Sec. 1404(a). "When considering a motion to transfer venue pursuant to § 1404(a), courts must consider several factors, such as the convenience of the parties and witnesses, the availability of documents and other sources of proof, the possibility of consolidation, and the order in which the district court obtained jurisdiction, as well as the interest of justice and judicial economy". Doral v. Citibank N.A., 32 F.Supp.3d 196, 108 (D.P.R. 2014). The Court's transfer power, however, **"is expressly limited by the final clause of § 1404(a), which restricts transfer to the federal districts in which the action might have been brought"**. Id. (emphasis added). Because a venue transfer "must be to a jurisdiction where the action could have been brought in the first place", the court must, "as a threshold matter, inquire as to whether jurisdiction and venue are proper in the transferee court".

Marel Corp. v. Encad, Inc., 178 F.Supp.2d 56, 58 (D.P.R. 2001). Thus, a transfer must be denied where some defendants would not be subject to jurisdiction or where the venue would be improper in the transferee forum as to any defendant. See, Hoffman v. Blaski, 363 U.S. 335, 344 (1960); In re: Fine Paper Antitrust Litigation, 685 F.2d 810, 819 (3d Cir. 1982), cert. denied, 459 U.S. 1156 (1983); Security State Bank v. Baty, 439 F.2d 910, 912 (10th Cir. 1971).

### B. General Principles of *In Personam* Jurisdiction:

A federal court's authority to exercise personal jurisdiction is conferred by state law. Fed.R.Civ.P. 4(e). Vermont's long-arm statute, 12 V.S.A. Sec. 855, allows Vermont's courts to exercise jurisdiction over a non-resident defendant only "in suits growing out of acts which have created essential contacts with the forum state." Anderson v. Abex Corp., 418 F.Supp. 5, 7-8 (D. Vermont 1975) (citing Deveny v. Rheem Mfg. Co., 319 F.2d 124, 127 (2d Cir. 1963) and V.R.C.P. 4(e). In Davis v. Saab-Scania of America, Inc., 133 Vt. 317, 339 A.2d 456 (1975), the Supreme Court of Vermont made clear that "the suit must arise or grow out of the contact or activity asserted as the basis for jurisdiction." 133 Vt. 320-21. See also, O'Brien v. Comstock Foods, 123 Vt. 461, 465, 194 A.2d 568 (1963); Smyth v. Twin State Improvement Corp., 116 Vt. 569, 573, 80 A.2d 664 (1951).

The extent to which a court can exercise personal jurisdiction is governed by the Due Process Clause of the Fourteenth Amendment to the Federal Constitution. Kulko v. Superior Court of California, 436 U.S. 84, 91 (1978). "Constitutional limitations on the exercise of personal jurisdiction over out-of-state defendants are rooted in principles of fundamental fairness". Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 32 (1st Cir. 2010).

The due process clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties or relations." Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985) and International Shoe Co. v. Washington, 326 U.S. 310, 319 (1945). Accordingly, a court is precluded from asserting jurisdiction unless "the defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there." Worldwide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

The plaintiff ultimately bears the burden of persuading the court that jurisdiction exists. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Mass. Sch. of Law at Andover, Inc. v. Amer. Bar Ass'n, 142 F.3d 26, 34 (1st Cir.1998). "[I]t is plaintiff's burden to demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution." United States v. Swiss American Bank, 274 F.3d 610, 618 (1st Cir. 2001).

Personal jurisdiction may be either general or specific. Harlow v. Children's Hospital, 432 F.3d 50, 57 (1st Cir. 2005). Specific jurisdiction "may only be relied upon where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." Cossaboon, supra at 31; Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994). General jurisdiction, by contrast, "may be asserted in connection with suits not directly founded on [the defendant's] forum-based conduct." Pritzker, 42 F.3d at 59. General jurisdiction broadly subjects the defendant to suit in the forum state's courts "in respect to all matters, even those that are unrelated to the defendant's contacts with the forum." Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999).

### C. Specific Jurisdiction:

Specific jurisdiction may exist under certain circumstances where a plaintiff's claim is directly related to the defendant's forum-based contacts. The First Circuit "divides [the] minimum contacts analysis [for specific jurisdiction] into three inquires: relatedness, purposeful availment, and reasonableness." N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir.2005); see also, N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 16 (1st Cir.2009) (stating that "personal jurisdiction under International Shoe, allowing jurisdiction to be asserted as to a specific claim, can be established where the defendants availed themselves of the opportunity to do business in the state, the claim in question is related to that access, and the so-called gestalt factors are consistent with requiring an out of-state defendant to defend within the state"); accord, Phillips v. Prairie Eye Ctr., 530 F.3d 22, 27 (1st Cir.2008). "Questions of specific jurisdiction are always tied to the particular claims asserted." Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 289 (1st Cir.1999). In tort cases such as the present one, a court "charged with determining the existence *vel non* of personal jurisdiction must probe the causal nexus between the defendant's contacts and the plaintiff's cause of action." Id.

The first inquiry, relatedness, asks whether " 'the claim underlying the litigation directly arise[s] out of, or relate[s] to, the defendant's forum-state activities.' " N. Laminate Sales, 403 F.3d at 25 (quoting United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir.1992)). The relatedness test is a " 'flexible, relaxed standard.' " Id. (quoting Pritzker v. Yari, 42 F.3d 53, 61 (1st Cir.1994)). Consistent with Calder v. Jones, 465 U.S. 783, 789, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), a defendant "need not be

physically present in the forum state to cause injury (and thus 'activity' for jurisdictional purposes) in the forum state." N. Laminate Sales, 403 F.3d at 25.

To satisfy the second requirement, "the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." N. Laminate Sales, 403 F.3d at 25 (quoting United Elec. Workers, 960 F.2d at 1089). The focus is on "voluntariness and foreseeability." Id. (quoting Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir.1995)).

Thus, there are two ways in which minimum contacts may be established for the purpose of specific jurisdiction: (1) purposeful availment by the defendant of the benefits and protections of the forum state's laws, Asahi Metal Indus. Co., Ltd. v. Superior Court of California, 480 U.S. 102, 109 (1987), or (2) harm to an individual within the state caused by the defendant when the harm is both intentional and aimed at the forum state, Calder, 465 U.S. at 788-90.

To evaluate the third requirement, i.e. the "reasonableness" of exercising *in personam* jurisdiction over a particular defendant, the Supreme Court has provided a set of "Gestalt factors" to consider. N. Laminate Sales, 403 F.3d at 26; United Elec. Workers, 960 F.2d at 1089. These factors include: the defendant's burden of appearing, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of the controversy, and the shared interest of the several States in furthering fundamental substantive social policies. Burger King Corp. v. Rudzewicz, 471 U.S. 462, at 477; N. Laminate Sales, 403 F.3d at 26.

### D. General Jurisdiction:

Where the plaintiff's claim does not arise out of the defendant's forum-based activities, the Court may nevertheless have general jurisdiction. Based on Supreme Court precedent, the First Circuit has imposed three requirements on the exercise of general jurisdiction over out-of-state defendants. Harlow, 432 F.3d at 57. To justify the exercise of general jurisdiction, (1) the defendant must have sufficient contacts within the forum state, (2) those contacts must be purposeful, and (3) the exercise of jurisdiction must be reasonable under the circumstances. Id.

In order to satisfy the first requirement, the defendant must have sufficient contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S. at 316. Although a showing of "minimum contacts" is sufficient to establish specific jurisdiction, the standard for establishing general jurisdiction is "considerably more stringent." Glatter v. Eli Lilly & Co., 744 F.2d 213, 216 (1st Cir. 1984). To permit the exercise of general jurisdiction, the defendant must "engage in the 'continuous and systematic' pursuit of general business activities in the forum state." Cossaboon, 600 F.3d at 32 (quoting Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 448 (1952); Glatter, 744 F.2d at 216; see 4A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* Sec. 1067.5 (3d ed. 2002) ("[T]he defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; activities that are less extensive than that will not qualify for general in personam jurisdiction").

Under the second requirement, the defendant's contacts with state must be "purposeful". Harlow, 432 F.3d at 57. That is, there must be "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Cossaboon, 600 F.3d at 32 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). The purposeful availment test "focuses on the defendant's intentionality," Swiss American Bank, 274 F.3d at 623, and "is only satisfied when the defendant purposely and voluntarily directs his activities towards the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." Id. at 624. This requirement ensures that a defendant will not be subjected to personal jurisdiction on the basis of "random, fortuitous, or attenuated contacts" or "the unilateral activity of another party or third person." Burger King, 471 U.S. at 475 (internal quotation marks and citations omitted).

The Court's analysis of whether the defendant's contacts with the forum state satisfy these first two requirements is "not simply mechanical or quantitative", but instead depends upon the "quality and nature" of the defendant's activity in the forum state. Cossaboon, supra at 33 (quoting Int'l Shoe, 326 U.S. at 319). The inquiry is "highly idiosyncratic, involving an individualized assessment and factual analysis of the precise mix of contacts that characterize each case." Pritzker, 42 F.3d at 60. Although the inquiry is fact specific, it is "guided by the types of contacts deemed sufficiently continuous and systematic in other cases." Noonan v. Winston Co., 135 F.3d 85, 93 (1st Cir. 1998).

Under the third and final requirement, the exercise of general jurisdiction must be "reasonable under the circumstances." Harlow, 432 F.3d at 57. As with specific

jurisdiction, the reasonableness inquiry focuses on the so-called "Gestalt factors", mentioned above. The reasonableness inquiry is "secondary rather than primary; unless the defendant has some cognizable contacts with the proposed forum, the court cannot assert general jurisdiction." Sandstrom v. ChemLawn Corp., 904 F.2d 83, 89 (1st Cir. 1990) (quotation marks and citation omitted).

IV.   **Argument:**

   **A. Transfer to Vermont is unavailable to Plaintiff under 28 U.S.C. Sec. 1404(a) because the U.S. District Court in Vermont lacks *in personam* jurisdiction over the appearing defendants:**

In the present case, venue is proper in this Court because the appearing defendants reside in this judicial district, a substantial part (if not all) of the events subject of the suit took place in Puerto Rico, and the property which is the main subject of the lawsuit is located in Puerto Rico. For the same reasons, venue would not be proper in Vermont under 28 U.S.C. § 1391(a).

A change of venue to the U.S. District Court in Vermont is unavailing under 28 U.S.C. Sec. 1404(a) because this suit could not have been brought there in the first place, since the Vermont court lacks *in personam* jurisdiction over the appearing defendants. As appears from the attached Statements under Penalty of Perjury of defendant Antonio Arias Larcada and McConnell Valdés Managing Director Arturo García Solá (Exhibits 1 and 2), the appearing defendants are all residents of Puerto Rico and lack any ties whatsoever to Vermont. Antonio Arias Larcada is not licensed to practice law in Vermont, and McConnell Valdés does not have an office there. None of the lawyers at the firm are admitted to practice in Vermont. Indeed, neither Mr. Arias nor his wife Maria Beale have ever been to Vermont.

Further, none of the events subject of the suit took place in Vermont. The alleged legal malpractice of the defendants during their representation of Mr. Goldman took place in a case filed in Puerto Rico, before a Puerto Rico court, concerning the sale of a property located in Puerto Rico and involving Puerto Rico law. At no time during the course of this litigation did any of the defendants travel to Vermont or perform any relevant activities there.

This ends the inquiry. Whether under the standards for specific or the more stringent general jurisdiction, the defendants simply lack adequate cognizable contacts with Vermont to justify being haled into court there. Because the reasonableness of the exercise of jurisdiction inquiry is secondary, Sandstrom, supra, 904 F.2d at 89, it is unnecessary for the Court to consider the "reasonableness" requirement.[1] Under all of the criteria established by the caselaw outlined above, given the lack of any significant contact between the appearing defendants and the state of Vermont, the exercise of *in personam* jurisdiction over them in this case by a Vermont court cannot be justified. Because the U.S. District Court for Vermont lacks both general and specific jurisdiction over the defendants, this case could not have been brought there in the first place and hence 28 U.S.C. Sec. 1404(a) does not allow for it to be transferred to that court.

---

[1] Even if one were to evaluate the "reasonableness" requirement in this case, the "Gestalt factors" identified by the Supreme Court all weigh against the exercise of personal jurisdiction by the Vermont District Court. The appearing defendants, Puerto Rico citizens, are greatly burdened by appearing before a court in Vermont, not only by their lack of connections with Vermont and the physical distance they (and their witnesses) must travel, but also because they will be held to answer a complaint in a Court unfamiliar with the Puerto Rico law that it must interpret and apply. Moreover, given the lack of contacts between the appearing defendants and Vermont, the forum state can have little interest, if any, in adjudicating the controversy between them and the Plaintiff.

### B. The Plaintiff's arguments for transfer to Vermont are spurious:

Even if the Plaintiff could clear the insurmountable hurdle of *in personam* jurisdiction, however, his justifications for the requested transfer are inadequate. First, his numerous alleged physical and mental impairments were known to him at the time he filed this case on March 20, 2024, yet he has waited almost a year to seek a change of venue, and only after he was ordered repeatedly by the Court to come to Puerto Rico for a mental and physical examination. While 28 U.S.C. Sec. 1404(a) contains no time limit for the filing of a motion for change of venue, the motion may be denied if the passage of time or any delay causes undue prejudice or is considered dilatory. See, American Standard, Inc. v. Bendix Corp., 487 F.Supp. 254, 261 (W.D. Mo. 1980) and authorities cited therein. Here, the plaintiff's dilatory purpose should be readily apparent to the Court. And although he claims that since the filing of this case his "health has deteriorated substantially", his Motion only mentions that during the pendency of this suit he has undergone "colonoscopy", "various scans", "spinal tap", "procedures addressing an enlarged prostate and urinary difficulties" and a "possible surgical intervention".

Second, Mr. Goldman's claims that his mental and physical ailments prevent him from traveling to Puerto Rico are questionable, at best. At various times during the course of this case Mr. Goldman has gone from proclaiming himself unable to travel for unspecified medical reasons, to submitting letters from a Nurse Practitioner, a Psychiatrist and a Physician, each time articulating somewhat different reasons for him to eschew coming to Puerto Rico to prosecute his case. He has also claimed separately that he could not come to Puerto Rico because he was extremely busy during the month of December of 2024, dealing with his business and government interests in Montpelier, Vermont.

Whatever Mr. Goldman's actual reasons may be, it bears noting that his physicians have no qualms about him traveling from Montpelier, Vermont, to Boston, Massachusetts, for medical treatment, which he apparently does regularly. This is a distance of approximately 180 miles which takes nearly three hours to drive. If in fact Mr. Goldman's immune system is compromised and he "experiences intense Agoraphobia and frequent panic attacks especially in crowded settings making it nearly impossible for him to leave his home without significant emotional and physical distress", how is it that he is able to regularly travel for nearly three hours to a presumably crowded and pathogen-ridden hospital in Boston for medical treatment?

Third, the caselaw cited in the Plaintiff's Motion does not support the requested transfer. None of the cited cases involved a transfer to a federal court which lacked *in personam* jurisdiction over the defendants.[2] Neither these cases, nor the Americans with Disabilities Act, nor the Rehabilitation Act of 1973, nor any of the other authorities cited by Plaintiff in his Motion, alter the fundamental axiom that under 28 U.S.C. Sec. 1404(a) a transfer must be denied where any of the defendants would not be subject to *in personam* jurisdiction or where the venue would be improper in the transferee forum as to any defendant. See, Hoffman v. Blaski, supra, 363 U.S. at 344; In re: Fine Paper Antitrust Litigation, supra, 685 F.2d at 819; Security State Bank v. Baty, supra, 439 F.2d at 912.

Finally, the Plaintiff's hyperinflated list of "necessary witnesses domiciled in Vermont" underscores the chicanery that permeates his lawsuit and the extraordinary

---

[2] Ferens v. John Deere Co., 494 U.S. 516 (1990) held that a transferee forum should apply the law of the transferor court, regardless of who initiated the transfer. Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22 (1988), held that 28 U.S.C. 1404(a) governed the decision whether to give effect to the parties' forum selection clause and to transfer the case. Atlantic Marine Construction Co. v. U.S. District Court, 571 U.S. 49 (2013), held that a forum selection clause may be enforced by a motion to transfer under 28 U.S.C. Sec. 1404(a).

lengths to which he is willing to go in his misguided attempt to avoid litigating this case in his chosen forum. Most, if not all, of these individuals have little or nothing to do with the matters at issue here. He lists numerous state officials, including the Governor of Vermont, the Montpelier City Manager, the Town and Zoning Administrator, a State Tax Collector, an Assistant Attorney General, several State Inspectors, and an Assistant State Fire Marshall, among others. The vast majority of these "necessary witnesses" know nothing at all about the subject matter of the present lawsuit, and even if they did, their testimony would not be admissible at trial. Tellingly, the Plaintiff's list does not mention the numerous witnesses domiciled in Puerto Rico that he announced in his similarly overinflated Answers to Interrogatories (Exhibit 3), including Benito Martínez Ocasio (a/k/a "Bad Bunny"), René Pérez (a/k/a "Residente Calle 13"), Hector "Tato" Orizondo, Uva Rodriguez, Rey Rios Castro, Aida Colón, Joshua Levey, Peter Schiff, Hiram Albino, Isabel Albors, Juan Albors, Police Lieutenant Diego Colón, Francisco Ramos, Esq., Frankie Castro, Felix Castro, María González, Juan Botello, the law firm of Goldman, Antonetti & Córdova, José "Pachi" García-Cosculluela, Martinal Real Estate, Dennise Morales Soler, Dr. Carmen J. Cividanes-Lago, David M. Seerman, Gerald Kleis, Ana C. Dumar Orlowska, Jackie Sierra, Lillian Mateo Santos, Jenyfer García Soto, Yanmarie Rotger De la Portilla, Patricia George Iguina, José Castro, Edgardo (Eggie) Cartagena, Esq. and Ivan Lladó, Esq. <u>See</u>, Answer to Interrogatory No. 1. The Plaintiff has also announced Puerto Rico law professors José Efraín Hernández and Ramón Antonio Guzmán Rivera as his witnesses. <u>See</u>, Answer to Interrogatory No. 20.

In addition to all of these witnesses, the defendants have announced expert appraisers, domiciled in Puerto Rico, who are familiar with the real estate market on the

island, as well as Dr. José Franceschini, a local psychiatrist (not admitted to practice medicine in Vermont) who will evaluate the Plaintiff's mental and physical condition. The logistics of bringing all of these witnesses to Vermont for trial are monumental and would impose an undue burden upon the defendants, not to mention upon the witnesses themselves. If the Court is to consider the convenience of the witnesses, there is no question that this district is the more appropriate forum.

**V.     Conclusion:**

In sum, by any reasonable measure, the Plaintiff's Motion for Change of Venue is legally unsupportable, dilatory and factually dubious. It should be summarily denied.

**WHEREFORE**, for all of the above stated reasons, it is respectfully requested that the Honorable Court deny the Plaintiff's Motion for Change of Venue.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico this 17th day of March, 2025.

**I HEREBY CERTIFY** that on this 17th day of March, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all the counsel of record.

S/MANUEL SAN JUAN
MANUEL SAN JUAN
USDC-PR No.: 204706
Attorney for Defendants
P.O. Box 9023587
San Juan, Puerto Rico 00902-3587
Tel.:(787)723-6637 / (787) 723-6669
E-mail: sanjuanm@microjuris.com