IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| ALAN GOLDMAN | * | CIVIL NO.: 24CV01136 |
| | * | |
| Plaintiff | * | |
| | * | |
| V | * | |
| | * | |
| McCONNELL VALDES, LLC; | * | |
| ANTONIO A. ARIAS-LARCADA, ET AL | * | |
| | * | |
| Defendants | * | |

_____/

EXHIBIT 1

VERIFIED THIRD AMENDED COMPLAINT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| ALAN GOLDMAN, | * | CIVIL NO.:  24cv01136 |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | |
| | * | |
| McCONNELL VALDÉS, LLC; | * | |
| ANTONIO A. ARIAS-LARCADA, his wife | * | |
| MARIA BEALE, and the Conjugal | * | |
| JOHN DOE; MARY DOE | * | |
| SOMPO INTERNATIONAL INSURANCE | * | |
| COMPANY;  ENDURANCE AMERICAN | * | |
| SPECIALTY INSURANCE COMPANY; | * | |
| AIG INTERNATIONAL COMPANY- | * | |
| PUERTO RICO | * | |
| | * | |
| Defendants | * | |

_____/

VERIFIED THIRD AMENDED COMPLAINT

TO THE HONORABLE COURT:

COMES NOW, Plaintiff, Alan Goldman, by and through his undersigned

attorney, Francisco M. López Romo, and respectfully States, Alleges and Prays:

JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter of this action, pursuant

to 28 U.S.C. § 1332, since there is complete diversity of citizenship between the

parties and the amount in controversy exceeds the sum of $1,000,000, exclusive

of interest and costs. This Court has supplemental jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. § 1367, regarding Plaintiff Alan Goldman's state law claims under Articles 287, 290, 1163, 1258, 1259, 1260, 1536, 1540, and 1803 of the Puerto Rico Civil Code of 2020, and under Law 121 – 2019 "Ley de la Carta de Derechos y la Política Pública del Gobierno a favor de los Adultos Mayores".

Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) (1) and (2), since the events giving rise to these claims arose in this District.

## THE PARTIES

1. Plaintiff, Alan Goldman (hereinafter "Mr. Goldman") is of legal age, single, developer, and resident of Montpelier, Vermont. Mr. Goldman's residential address is: 1014 Terrace St., Montpelier, VT 05602.

2. Defendant McConnell Valdés, LLC (hereinafter "McConnell Valdés") is a limited liability company ("LLC") with a formation and effective date of September 13, 2007, organized and existing under the laws of the Commonwealth of Puerto Rico. McConnell Valdés' registered office is: 270 Muñoz Rivera Avenue, San Juan, Puerto Rico 00918, and mailing address: PO Box 364225, San Juan, Puerto Rico 00936-4225,

Alan Goldman v. McConnell Valdés, LLC, et al / 24cv01136 / Verified Third Amended Complaint

telephone number: 787-759-9292, the authorized person is Mr. Arturo J. García Solá.

3.  Defendant, Antonio A. Arias-Larcada (hereinafter "Mr. Arias") is of legal age and is an attorney at law and capital member or partner of McConnell Valdés, LLC.

4.  Defendant, María Beale (hereinafter "Mrs. Beale") is of legal age and is Mr. Arias' wife. Upon information and belief, Mr. Arias and Mrs. Beale are married to each other under the conjugal partnership laws of Puerto Rico. If so, any income derived by Mr. Arias from his legal profession is a conjugal asset and their conjugal partnership is liable if Mr. Arias incurs any legal liability, resulting from the facts alleged in this case. Mr. Arias and Mrs. Beale reside and are domiciled in Puerto Rico.

5.  Defendants, John Doe, and Mary Doe are residents of any state other than Vermont, who are designated with fictitious names since their true identities are unknown. These Defendants may also be liable due to their failure to comply with their contractual duties and obligations, and/or for their fault and/or negligence, that resulted in the damages suffered by Mr. Goldman. Their spouses, if any, and their conjugal

partnerships, if any, will be joined as party Defendants once they can be identified.

6.  Defendants, Sompo International and/or Endurance American Specialty Insurance Company, are insurance companies organized under the laws of the State of New York, with its principal place of business at 1221 Avenue of the Americas, New York, NY 10020. During the relevant time, Sompo International and/or Endurance American Specialty Insurance Company issued Policy Number LXY30020811501 (Lawyers Professional Liability Insurance) to cover the damages that were suffered by Mr. Goldman as the result of McConnell Valdés' and Mr. Arias' breach of their respective contractual obligations and duties of care, and/or as the result of McConnell Valdés' and Mr. Arias' joint fault and/or vicarious negligence alleged herein.

7.  Defendant, AIG Insurance Company-Puerto Rico, is an insurance company organized under the laws of the Commonwealth of Puerto Rico, with its principal place of business at 250 Muñoz Rivera Avenue, Hato Rey, Puerto Rico 00918. During the relevant time, AIG Insurance Company-Puerto Rico issued Policy Number 015-001003116-03-000000 (Lawyer's Professional Liability) to cover the damages that were

suffered by Mr. Goldman as the result of McConnell Valdés' and Mr. Arias' breach of their respective contractual obligations and duties of care, and/or as the result of McConnell Valdés' and Mr. Arias' joint fault and/or vicarious negligence alleged herein.

## RELEVANT FACTS

8. On October 23, 2020, an "Option to Purchase Agreement" was entered into by Mr. Goldman, as "Seller", and Mr. John Michael Grzan and Mrs. Namrata Khimani, as "Purchaser", for the sale and purchase of a real estate property in Dorado, Puerto Rico.

9. Under "Paragraph 15. Default by Seller. Remedies, Purchaser", the "Option to Purchase Agreement" reads as follows:

"In the event Seller, after exercise of the Option granted herein, fails to proceed with the closing of the sale of the real property pursuant to the terms and provisions contained herein, Purchase[r] shall be entitled to receive back the Option Fee and pursue any equitable remedies under the law."

10. On October 23, 2020, Mr. Goldman made two mistakes: First, Mr. Goldman agreed to sell the Property in Dorado, for $3,150,000, although at that time, the Property's market value was well over $6,500,000; and second, Mr. Goldman misunderstood the meaning of

Alan Goldman v. McConnell Valdés, LLC, et al / 24cv01136 / Verified Third Amended Complaint

the term "equitable remedies" and mistook the legal consequences of said equitable remedies.

11. In a contract context, the term "mistake" refers to an error associated with either the meaning of the words, laws, or facts within a contract. When a mistake occurs, it causes one or both parties to enter in or to the contract without fully understanding the outcomes or responsibilities implied by the contract. More specifically, a "unilateral mistake" is the mistaken belief that is held by one of the parties and is not shared by the other party to the contract. Simply put, a unilateral mistake occurs when only one of the parties misinterprets the subject matter or meaning of the words.

12. Since only one party holds a mistaken belief, this could give to other party an unfair advantage in the bargaining power that they could hold during the contract formation stage. If a contract is entered into, in or on, the basis of a mistaken belief, it could result in a lawsuit that may provide the mistaken party with various remedies, such as contract rescission or contract reformation.

13. If a unilateral mistake is made during the contracting process, it would, or could be, unfair if only one party understands the true meaning

implied by the contract while the other party does not. A court may issue one of the following remedies in order to correct the unilateral mistake: contract rescission that completely cancels the contract and the parties are restored to the same position they were in before the contract was formed; or, alternatively, contract reformation, when the written agreement is changed in order to reflect the parties' original understanding of the terms of the contract. Usually, this remedy may be granted for unilateral mistakes only in cases where the non-mistaken party was unaware that the other party was mistaken.

14. During contract negotiations, the parties should review the contract thoroughly and clarify each other's interpretations of each clause that is included in the contract. Working with lawyers during the contract formation stage can help the parties to avoid making mistakes and would help to avoid any future contract disputes. That did not happen in this case.

15. Article 287 of the Puerto Rico Civil Code of 2020 defines the requirements for an error to vitiate the party's willingness. Article 290 of the Puerto Rico Civil Code of 2020 defines what should happen if the one contracting party makes any computation errors.

16. In the case of the Option to Purchase Agreement referred to herein-above, the main controversies were: (1) what was the fair market value of the real estate property that was optioned by the parties; and (2) if there was a unilateral mistake, what were the legal consequences under Clause 15 of the contract; and (3) if one party, the Seller, had made a colossal mistake, and whether that error or mistake resulted in Buyer's unjust enrichment.

17. Litigation initiated by Buyer ensued, since Mr. Goldman did not execute the deed of sale. On December 24, 2020, Mr. Grzan's and Mrs. Khinami's designated assignee, Teal Peak Capital, LLC, filed <u>Teal Peak Capital, LLC, Plaintiff, vs. Alan Bram Goldman, Defendant</u>, Civil No. 3:20-cv-1747, in the U.S. District Court for the District of Puerto Rico.

18. On January 13, 2021, Mr. Goldman retained the services of McConnell Valdés, to represent Mr. Goldman in said civil case. McConnell Valdés' law firm's Capital Member, Mr. Arias, became Mr. Goldman's lead counsel.

19. Since the beginning of their relationship, McConnell Valdés, through its agent and capital partner, Mr. Arias, convinced Mr. Goldman that Mr. Goldman had nothing to worry about said case. Mr. Goldman was

told that he had not incurred in any mistake by using the term "equitable remedies" that was inserted by him in the final draft of the Option to Purchase Agreement; and that the trial court would never enter any Order, ordering any specific performance against Mr. Goldman.

20. McConnell Valdés, through its agent and capital partner, Mr. Arias, reiterated in writing that same legal opinion, that their understanding of the applicable law was that the term "specific performance" is not an "equitable remedy" under Puerto Rico's laws. In fact, the documents quoted herein-below, were electronically transmitted by Mr. Arias, specifically, to confirm that McConnell Valdés and Mr. Arias were instructing their client, Mr. Goldman, to aggressively litigate that case, under such legal theory, which proved to be not only inadequate, but completely wrong as a matter of law.

21. As the result of said litigation, Mr. Goldman made several payments for McConnell Valdés' and Mr. Arias' legal fees in total sum of $195,893.90. McConnell Valdés is still attempting to collect an additional sum of $53,000. These legal fees were incurred by Mr. Goldman, while acting under the erroneous legal advice that Buyer, Teal Peak Capital, LLC,

would not be able to prevail in that lawsuit, since the trial court would certainly rule that "specific performance" was not an "equitable remedy".

22. On June 8, 2021, Mr. Arias sent an email transmission to Mr. Goldman, that in its pertinent part, reads as follows:

"Team: Patricia and I just briefed Mr. Goldman on the **defense strategy moving forward mainly supported by careful review of both the option agreement and the draft escrow agreement attempting to contain the Kleis lawsuit from precluding the closing.**

As per the pleadings and the oral presentation given to the court at last week's status conference the plaintiff Teal Peak sued because it allegedly validly exercised its right to purchase under the option agreement, the case was ready to close but the seller refused to close and therefore **it seeks specific performance**. As per the amended complaint Teal Peak **in addition to specific performance seeks damages based on its speculation** that had it purchased the property in December 2020 it would have been ready to be exploited as a rental property by April 2021 for at least $35,000 a month or sold for over $8,000,000.

On Thursday June 3rd we offered counsel for Teal Peak the return of the $800,000 deposit plus reimbursement of all true out of pocket expenses to make Teal Peak whole and part ways. On Monday June 7th, 2021, opposing counsel informed that his client rejected the offer but made no counteroffer. He did point out without any further discussion that his client wants the property.

Moving forward our litigation defense and counterclaim will be based on the following talking points:

First, the case was not ready for closing in December 2020.

Second, Mr. Goldman was not at fault for the case not being ready for closing in December.

Third, Mr. Goldman could not deliver clean title because real estate broker Kleis filed a bogus lawsuit for an unearned commission and registered a Lis Pendens lien on the property.

Fourth, even if Mr. Goldman could deliver clean title by the closing, he had been deceived by the buyer through dolus vitiating the option agreement.

**Fifth, even if the buyer where to show by a preponderance of the evidence that the case was ready to close and it was the seller's fault, the only remedy it is entitled under the option agreement is the return of the deposit AND (not "or") any other equitable remedies under the law. That is not specific performance. Specific performance is not a remedy available to the buyer. End of discussion.**

**Furthermore, even if there was seller liability, which we dispute, all damages claims are not only illegal, they are all pure speculation.**

The talking points are supported by the evidence in the case:

**First, page 3 of the option agreement negotiated by the parties does not afford the buyer the contractual right to seek specific performance if the seller refuses to sell**. **The lawsuit has been filed under the illegal premise that the buyer can compel the seller to close on the sale. Buyer is wrong, seller can walk away and he need only return the cash deposit and pay real expenses**. Patricia has ordered **a legal research on how the courts have considered "other equitable remedies"** to confirm reimbursement of expenses in addition to the returned deposit satisfies the legal threshold.

...

Thus, in view of the above the case should develop as follows:

1. Mr. Goldman will answer the amended complaint making aggressive use of the talking points by June 11th.

2.  Send the process server to Dorado Beach immediately.

3.  Mr. Goldman will consign in court the $800,000 deposit in compliance with the letter of the option agreement.

4.  **We can petition the court for immediate mediation to settle the remainder of what the buyer is entitled to which is "equitable remedies" in our view, reimbursement of their out-of-pocket expenses and attorney's fees**.

5.  Should mediation fail, at the earliest available opportunity Mr. Goldman shall file a motion for summary judgment since the only remaining issue to be decided by the court is a legal issue which need not go to a jury." Please see, **Exhibit 1**.

23. On February 21, 2022, Mr. Arias sent another email transmission to Mr. Goldman, that in its pertinent part reads as follows:

"The judge opened by indicating that he had reviewed all the legal briefs and had also done additional research on the issues... The judge then turned to me and **I took my time to argue why there was no likelihood for the plaintiffs to prevail on the merits of the case due to the three pillars of our case**. **First, the contract clearly and with specificity reads in the default clause that the buyer shall the entitled to the return of the security deposit and any other equitable remedies. If the security deposit is returned the vague and not specific additional remedies can only involve some additional monetary compensation for lost interest or inconvenience but not specific performance**. Given that the defendant had already returned the security deposit which is held by the court in escrow the case is mostly moot. **I stressed to the court that the seller did no [sic] draft the option agreement and was not represented by counsel and would have never agreed to specific performance upon his default**..."  See, **Exhibit 2**.

24. Relying on Mr. Arias' wrong advice and incorrect assurances, that Mr. Goldman could not be ordered by the trial court to sign any deed of

purchase and sale of the property, Mr. Goldman retained the services of third parties to make significant repairs and improvements in the property, disregarding the fact the property was optioned to Buyer in "As Is".

25. These additional repair and maintenance expenses were incurred by Mr. Goldman, while fully relying on Mr. Arias' representations and promises. The expenses incurred were in the sum of $212,900.

26. On <u>March 24th, 2022</u>, the Honorable Judge Delgado-Hernández, USDC-PR entered the "Memorandum and Order" in the case of <u>Teal Peak Capital, LLC, Plaintiff v. Alan Bram Goldman, Defendant</u>, Case No.: 20-1747 (PAD) that in its pertinent part reads as follows:

> "This is a breach-of-contract action... deceit or *dolus*... **defendant's motion must be denied. As discussed below, plaintiff is entitled to the remedies identified in Clause 15 of the contract. This includes recovery of the Option Fee and specific performance**...And here, there is an agreement that explicitly identifies what plaintiff shall be entitled to in case of the seller's default. This type of clause is known as a penal clause. Their two most important functions are to guarantee the performance of the obligation and to evaluate in advance the damages...As to damages, the penal clause "substitute[s] indemnity for damages and the payment of interest... "eliminates all controversy"... the amount to be paid in damages...And that is what plaintiff bargained for, limiting the amount it could recover...**The concept of specific performance shares consanguinity with the permanent injunction, itself a creature of equity**. See, Axia Netmedia Corporation v. Massachusetts Technology Park, 889 F.3d 1, 8 (1st Cir. 2018)(**equating permanent injunction with order granting request for specific performance**); McDonald's Corp. v. Lebow Realty Tr., 888 F.2d 912, 913 (1st Cir. 1989)(**request for permanent injunction ordering specific performance of option agreement**); Bolin Farms v. American Cotton Ass'n, 370

Alan Goldman v. McConnell Valdés, LLC, et al / 24cv01136 / Verified Third Amended Complaint

F.Supp. 1353, 1369 (W.D. La. 1974)(**noting that no bond can be required where specific performance has been ordered in the form of a permanent injunction**).

That is why, as the Puerto Rico Supreme Court observed, "[**a]n injunction to restrain a breach of a contract often operates to all intents and purposes as a decree for its specific performance.**" San Juan Racing & Sporting Club v. Foote, 31 P.R.R. 154, 158 (1922).... **And as such, it may be enforced by way of a permanent injunction mandating specific performance**. See, In Re: Medical Educational and Health Services, Inc., 2015 WL 903346, **1, 4-5 (Bkcy. D.P.R. Feb, 27, 2015) (**application for permanent injunction evaluated as one for specific performance and damages under Article 1077 of the Puerto Rico Civil Code**)...The debtor bears the burden of demonstrating lack of proportion between the breach and the penalty to justify the court's intervention...Still, defendant has challenged the principal obligation as being null and void. And that matter will be decided at trial."  Please see **Exhibit 3**.

27. McConnell Valdés and Mr. Arias, never provided to Mr. Goldman any copy of Judge Delgado-Hernández' adverse ruling in the "Memorandum and Order" dated March 24, 2022.

28. On October 31, 2022, the Joint Proposed Pre-Trial Order was filed in Civil Case No. 3:20-civ-1747. Although Mr. Goldman's counsel acknowledged that "Mr. Goldman is not a lawyer and understood that the language and intent behind Clause 15 was for Mr. Goldman to have the right to retain the Property and opt out of the Option Agreement, -for whatever reason- before or after the option was exercised by the purchaser- by returning the Option Fee and paying any additional costs...", no efforts were made by

Mr. Goldman's counsel to amend Mr. Goldman's previous pleadings as to try to protect his legal rights under the relevant Articles of the Puerto Rico Civil Code of 1930 and 2020.

29. On October 31, 2022, while the Buyer alleged damages that were being estimated to be in the sum of $8,160,000, for loss of rental income of $35,000 per month, Mr. Goldman's counsel alleged in the Joint Pre-Trial Proposed Order, that another neighbor, "Mr. Long then purchased the property next door for $2,500,000. Within a year, Mr. Long flipped the property and sold it to another purchaser for $10,500,000 for a multi-million dollars profit." Although Mr. Goldman's counsels were aware of such real estate prices in the same neighborhood in Dorado, Puerto Rico, Defendants failed to seek any legal remedies that were available under Articles 287, 290 of the Civil Code of Puerto Rico of 2020, or if applicable, under the previous Civil Code of Puerto Rico of 1930.

30. In addition, Mr. Goldman's various medical conditions were alluded to, but no reference was made to Mr. Goldman's possible declined mental abilities, or to his possible mental state of confusion. No treating physicians were included in the witnesses' list, no medical experts were announced, and no medical records were marked as exhibits or as identifications.

31. As of March 26, 2023, Mr. Goldman was completely unaware about these errors and omissions.

32. Up until March 26, 2023, Mr. Goldman had fully relied on McConnell Valdés and Mr. Arias' legal advice and verbal and written representations. Said reliance, that was based on trust, ended on <u>March 26, 2023.</u> On said date, Mr. Goldman requested his counsels' withdrawal from said case.

33. The next day, <u>March 27, 2023.</u> McConnell Valdés and Mr. Arias filed their motion to withdraw as Mr. Goldman's counsel of record.

34. On April 5th, 2023, attorney Edgardo Cartagena sent an email transmission to Mr. Goldman, that reads as follows:

> "Hi Alan. Did Arias send you copy of this Opinion and Order, issued by the prior judge on March 22, 2022?  We just found it during our search.  Edgardo Cartagena"

> Attorney Edgardo Cartagena attached with this email the Memorandum and Order entered by Honorable Pedro Delgado Hernández, United States District Judge.  Please see **<u>Exhibit 4</u>**.

35. On April 5th, 2023, Mr. Goldman was made aware about Judge Delgado-Hernández' Memorandum and Order, entered on March 24th, 2022.

36. On October 5th, 2023, Mr. Arias sent an email to Mr. Goldman that reads as follows:

> "Greetings Mark and Alan:  We have not been able to locate an email attaching the March 24th, 2022, order denying the motion

Alan Goldman v. McConnell Valdés, LLC, et al / 24cv01136 / Verified Third Amended Complaint

to dismiss.   However, as I stated during our call, this was discussed with Alan during my frequent and extended telephone conferences with him. Kindly let me know when you are available to continue our call and conclude our discussion.   Antonio A. Arias, Capital Member".   Please see **Exhibit 5**.

## COUNT I – UNJUST ENRICHMENT
## (AS TO MCCONNELL VALDÉS AND MR. ARIAS)

37.  Mr. Goldman re-alleges the allegations in paragraphs 1 through 36, and any subsequent allegations, as if fully stated herein.

38.  Mr. Goldman employed McConnell Valdés as his legal counsel.

39.  McConnell Valdés LLC has several lawyers that are duly admitted to practice law in Puerto Rico.

40.  Mr. Arias is a well-known, practicing lawyer, admitted to practice law in Puerto Rico, and he acted on behalf of McConnell Valdés.

41.  McConnell Valdés and Mr. Arias owed to Mr. Goldman their contractual duty of due care and were expected to provide competent legal representation to their clients, at a reasonable cost.

42.  Attorneys are prevented from assuming positions that may violate their professional duties or cause any unjust enrichment, to or for the benefit of the attorneys or their employers, such as causing or provoking any unnecessary legal or litigation expenses.

43. McConnell Valdés and Mr. Arias breached their duty, by providing incorrect, wrong, or wrongful legal advice, that led to unnecessary legal fees, costs, and expenses.

44. McConnell Valdés and Mr. Arias. wrongfully led their client, Mr. Goldman, to unnecessarily pay their law firm the sum of One Hundred Ninety-Five Thousand Eight Hundred Ninety-Three Dollars with Ninety Cents ($195,893.90) for unnecessary legal fees and expenses. McConnell Valdés is demanding an additional payment of $53,000.

45. A Puerto Rico claim for unjust enrichment consists of five elements: (1) existence of enrichment; (2) a correlative loss; (3) nexus between loss and enrichment; (4) lack of cause for enrichment; and (5) absence of a legal precept excluding application of enrichment without cause. See, _Dantzler, Inc. v. Puerto Rico Ports Auth., 335 F. Supp. 3d 226, 254 (D.P.R. 2018); Montalvo v. LT's Benjamin Records, Inc., 56 F. Supp 3d 121, 136 (D.P.R. 2014)._

46. In this case, McConnell Valdés and Mr. Arias unjustly enriched themselves by misappropriating the sum of $195,893.90 from Mr. Goldman. There is no basis in law or fact to exclude application of the unjust enrichment doctrine in this case.

47. McConnell Valdés' and Mr. Arias' unjust enrichment was at the expense of Mr. Goldman.

48. McConnell Valdés' and Mr. Arias' actions or omissions were the proximate cause of Mr. Goldman's monetary losses.

49. In good conscience and equity, McConnell Valdés and Mr. Arias must fully, or in the alternative, must partially restitute these sums of monies that are being claimed herein to Mr. Goldman.

50. During the relevant time, Mr. Goldman mentioned to his lawyers from McConnell Valdés, including Mr. Arias, that Mr. Goldman may be suffering some diminished mental capacity, due to Mr. Goldman's repeated transient ischemic attacks ("TIA"), seizures and health conditions, that may have caused Mr. Goldman to be confused, disoriented and with limited cognizant capability.

51. Although McConnell Valdes' lawyers, including Mr. Arias, were informed that Mr. Goldman's ability to make some intelligent decisions may actually be compromised, McConnell Valdés' lawyer, Mr. Arias did not make any efforts to obtain or to review Mr. Goldman's medical records, including any Mr. Goldman's psychiatric evaluations.

52. McConnell Valdés and Mr. Arias limited themselves to allege "… Mr. Goldman's status as a senior citizen, recovering cancer survivor with underlying medical conditions…"

53. On the other hand, Mr. Goldman's attorneys included averments, such as "… Mr. Goldman vehemently defends his position that he acted professionally and was willing to close within the exercise period…" Said allegation would contradict Mr. Goldman's concerns about his own mental state at the time that Mr. Goldman had agreed to sell his property for a ridiculous, extremely low price of $3,150,000, although everyone knew, or should have known, that purchase price was less than one half (50%) the then current market value of the Property.

54. By mistake, Mr. Goldman "agreed" to sell the property for $3,150,000.

55. McConnell, and Mr. Arias acknowledged that "By manipulating the competing offers TPC pressured Mr. Goldman to sell below the market price in Dorado Beach." "Based on current real estate market in Dorado Beach and the specific location of Mr. Goldman's Property, which is above eighty-five (85) foot contour of the exclusive and original Dorado Beach Estate, Mr. Goldman estimates that had he closed caving under the pressure of TPC he would have failed to realize in excess of $3,000,000 in the sale". Please, see in Case No. 3:20-civ-01747,

"Defendant's Answer to Complaint and Counterclaim", at page 13, par. 30, 32, Document 18, of April 7, 2021.

56. McConnell Valdés and Mr. Arias' willingness to completely disregard such relevant, important evidence, not only about their own client's potential diminished mental capacity, but of the Property's fair market value, should be appalling. Their indifference, their unconcerned conduct, constituted legal malpractice, particularly, in view of Mr. Goldman's eventual inability to amend his previous "Answer to the Amended Complaint" or the parties' "Joint Pre-Trial Conference Order", at the time that Mr. Goldman was finally able to retain new legal counsel.

57. All conditions precedent to the filing of this action have been complied with, waived, excused, or otherwise were met by Mr. Goldman.

58. Mr. Goldman has retained Francisco M. López-Romo, Esq. to bring this action and has agreed to pay his law firm reasonable attorneys' fees for services rendered.

WHEREFORE, Mr. Goldman demands judgment in his favor and against McConnell Valdés, Mr. Arias and Mrs. Beale and their conjugal partnership, ordering reimbursement of the total amounts of monies that Defendants unjustly received or constituted an unjust enrichment, or in the alternative,

such partial reimbursement as the jury verdict, or the trial court may award, as to cure or correct such unjust enrichment; and to indemnify Mr. Goldman for his economic and financial damages, with interest, costs, and such other relief this Court deems just and proper.

### COUNT II – BREACH OF CONTRACT-LEGAL MALPRACTICE
### (AS TO McCONNELL VALDÉS, LLC AND MR. ARIAS)

59.  Mr. Goldman re-alleges the allegations made in paragraphs 1 through 58, and any subsequent allegations, as if fully stated herein.

60.  Mr. Goldman employed McConnell Valdés as his legal counsel.

61.  McConnell Valdés is composed by several lawyers who are duly admitted to practice law in Puerto Rico.

62.  Mr. Arias is a well-known lawyer who is admitted to practice law in Puerto Rico.

63.  McConnell Valdés and Mr. Arias owed to Mr. Goldman their duty to practice law in a reasonable, professional manner, and to provide their competent legal advice.

64.  McConnell Valdés and Mr. Arias breached their contractual obligations to display the competence and proficiency that were expected from

them, and they breached the contractual duty they owed to Mr. Goldman as his legal counsel as described herein-above.

65. Their inadequate gathering of the essential information, their failure to perform reasonable legal research, their failure to take into consideration the applicable statutes and case law, led these Defendants to incur legal malpractice.

66. Any competent lawyer would have provided Mr. Goldman, very different legal advice in said case.

67. Any competent lawyer would have advised Mr. Goldman to assert his defenses based on his actual mistake of fact as to what should have been the Property's reasonable sales price.

68. Mr. Goldman had repeatedly verbalized to anyone who would have cared to listen, that Mr. Goldman believed that "equitable remedies" would never entail "specific performance".

69. If Mr. Goldman would have known that Mr. Goldman could be ordered to sell his real estate property due to the language that was included in Clause 15 of the "Option to Purchase Agreement", Mr. Goldman would have never signed said "Option to Purchase Agreement".

Alan Goldman v. McConnell Valdés, LLC, et al / 24cv01136 / Verified Third Amended Complaint

70.  McConnell Valdés' and Mr. Arias' incorrect, wrong, or wrongful advice, constituted breach of their contractual obligations, under their contract for professional services, and is now the reason why Defendants are jointly liable for the damages sought by Mr. Goldman.

71.  Mr. Goldman not only did not obtain any relief for or from Mr. Goldman's unilateral mistake about the fair market value of his property, but also, for Mr. Goldman's second mistake, that was incurred when Mr. Goldman contractually agreed to be liable for any "equitable remedies."

72.  Mr. Goldman ended up spending over $188,000, without obtaining any relief.

73.  Acting upon Mr. Arias' bad advice, Mr. Goldman also ended up spending $212,900 in totally unnecessary repairs and maintenance expenses.

74.  McConnell Valdés' and Mr. Arias' fault and/or negligence, were incurred while Defendants were attempting to comply with their contractual obligations. Defendants' failure to provide adequate, competent legal services resulted in Mr. Goldman suffering additional economic and emotional damages, which, but for their own lack of

Alan Goldman v. McConnell Valdés, LLC, et al / 24cv1136 / Verified Third Amended Complaint

proficiency and/or their combined negligence, Mr. Goldman would not have suffered.

75. At the time Mr. Goldman made his mistake by agreeing to sell his property for the reduced purchase price of $3,150,000, this property was worth well over $6,500,000.

76. McConnell and Mr. Arias did not advise Mr. Goldman about the legal remedies that were available to him under Articles 1258, 1259, 1260 of the Civil Code of Puerto Rico of 2020.

77. McConnell Valdés and Mr. Arias failed to seek adequate legal relief for their client, Mr. Goldman, such as rescission of the contract, or revision of the sales price that had been agreed upon in the contract, by requesting the trial court to provide an upward adjustment of the final purchase price.

78. It was obvious, or should have been obvious, that the Buyer was obtaining a huge, disproportionate financial advantage, by forcing Seller to transfer an asset that was worth more than twice as much, and probably three times as much, as the sales price that was agreed upon in the "Option to Purchase Agreement".

79. Mr. Goldman was not adequately advised by Mr. Arias. McConnell Valdés failed to alert Mr. Goldman about these legal remedies. McConnell Valdés and its lawyers failed to protect their client, Mr.

Alan Goldman v. McConnell Valdés, LLC, et al / 24cv01136 / Verified Third Amended Complaint

Goldman, by including these same allegations and by seeking these same legal remedies in the pleadings that they filed on behalf of Mr. Goldman.

80. Mr. Goldman's answer to the complaint, and Mr. Goldman's answer to the amended complaint were filed in Civil Case Number 3:20-civ-1747.

81. In their Joint Proposed Pretrial Order, Document 136, of Civil Case Number 3:20-civ-1747, McConnell Valdés and Mr. Arias made references to Mr. Goldman's various medical conditions, such as seizures, PTSD. Yet, no treating physicians or any expert in the medical field were announced as Mr. Goldman's witnesses. No reference was made to Mr. Goldman's advanced age or to Puerto Rico's statutes addressing the need to protect our senior citizens.

82. McConnell Valdés and Mr. Arias made allegations that Mr. Goldman's previous lawyers, Ferraiuoli, LLC, had "acquired inside information regarding the Property, such as its market value." Yet, no expert witnesses were called to prove the property's market value at the time that the Option to Purchase Agreement was signed.

83. These acts or omissions constitute legal malpractice. Mr. Arias and McConnell Valdés are liable for the adverse consequences that resulted from said errors or omissions.

84. Mr. Goldman's new lawyers were impeded from revisiting these defenses and legal explanations, as to obtain any legal remedy that would otherwise may have been available to Mr. Goldman under the law.

85. At the time that Mr. Goldman realized that Mr. Goldman had made a mistake by accepting to sell his property for the reduced purchase price of $3,150,000, his property was well over $6,500,000, and Articles 1258, 1259, 1260 the Civil Code of Puerto Rico of 2020 were already applicable to this case.

86. Mr. Arias and McConnell Valdés failed to seek any legal relief for their client, Mr. Goldman under Articles 1258, 1259, 1260 the Civil Code of Puerto Rico of 2020, such as rescission of the contract, or revision of the term, that is, for the sale price that had been agreed to in the contract, by requesting judicial relief, such as the upward adjustment of the purchase price.

87. In the Joint Proposed Pretrial Order, that was filed as docket entry 136 in Civil Case Number 3:20-civ-1747, Mr. Arias and McConnell Valdés referred to Mr. Goldman's various medical conditions, such as seizures, PTSD. Yet, no treating physicians or any expert in the medical field were announced as Mr. Goldman's witnesses.

88. Mr. Goldman has retained Francisco M. López-Romo, Esq. to bring this action and has agreed to pay his law firm reasonable attorneys' fees for services rendered.

WHEREFORE, Mr. Goldman demands judgment in his favor and against Mr. Arias, Mrs. Beale and their conjugal partnership, McConnell Valdés, and Sompo International and/or Endurance American Specialty Insurance Company and/or Defendant, AIG Insurance Company-Puerto Rico, to cover the damages that were suffered by Mr. Goldman as the result of McConnell Valdés' and Mr. Arias' breach of their respective contractual obligations and duties of care, and/or as the result of McConnell Valdés' and Mr. Arias' joint fault and/or vicarious negligence and for the financial damages suffered by Mr. Goldman, as well as for Mr. Goldman's emotional damages and distress, with interest, costs, and such other relief this Court deems just and proper.

## COUNT III – TORTS RESULTING FROM EXTRACONTRACTUAL FAULT/NEGLIGENCE

89. Mr. Goldman re-alleges the allegations made in paragraphs 1 through 88, and any subsequent allegations, as if fully stated herein.

Alan Goldman v. McConnell Valdés, LLC, et al / 24cv01136 / Verified Third Amended Complaint

90. Mr. Arias and McConnell Valdés are liable for their joint negligence, as would be the case in any ordinary torts case. All that it is required is that Mr. Goldman establishes:

(1) the existence of the damage; and

(2) that the professional service provider did not act pursuant to the minimum standard of care required, in this case, to the legal profession, and

(3) that causal relationship exists between the damage and the act or the omission of the lawyer. *Santiago Otero v. Méndez*, 94 JTS 38. See also, *Rodríguez Crespo v. Hernández*, 121 D.P.R. 639(1988); *Medina Santiago v. Vélez*, 120 D.P.R. 380, 385(1988).

91. The breach of this duty was the proximate cause for Mr. Goldman's damages. Mr. Arias' and McConnell Valdés' acts and/or omissions were the proximate cause for the damage suffered by Mr. Goldman.

92. The inadequate gathering of essential information, and their failure to study applicable law would have led them, as to any other competent lawyer, to provide adequate legal advice to their client, Mr. Goldman.

93. That failure generated Mr. Arias' and McConnell Valdés' incorrect, wrong, or wrongful legal advice, and was the cause why Mr. Arias and

McConnell Valdés incurred in their respective legal liability for the damages sought by Mr. Goldman.

94. Mr. Goldman not only did not obtain any relief for his unilateral mistakes as to the sales price and when he agreed to be liable for any "equitable remedies." Mr. Goldman ended up spending hundreds of thousands of dollars in unnecessary legal fees and ended up losing his property too.

95. Mr. Arias should not have relied on his own totally incorrect legal opinion about the applicable law in said previous action. This breach of legal duty of care by Mr. Arias was the direct cause of Mr. Goldman's additional resulting financial or economic, and mental damages.

96. Lawyers and law firms owe to their clients the duty of care required of any reasonable and prudent person. *Márquez Vega v. Martínez Rosado, 116 D.P.R. 397, 404-406 (1985).* The breach of this duty by Mr. Arias and McConnell Valdés was the adequate and/or proximate cause for Mr. Goldman's economic losses and mental pain and suffering.

97. In *Cabrera v. Asoc. De Señoras Damas, 96 D.P.R. 775 (1968),* the Supreme Court of Puerto Rico held that the hospital was liable in a tort action, when its employees made worse a condition in a patient's eye.

Alan Goldman v. McConnell Valdés, LLC, et al / 24cv01136 / Verified Third Amended Complaint

This same doctrine is applicable to any professional service provider. To wit, do not cause any damage to your client.

98. By having provided totally wrong, or wrongful legal advice, Mr. Arias and McConnell Valdés breached this legal duty.

99. The ensuing unnecessary litigation was the direct cause for Mr. Goldman's having to pay McConnell Valdés and, later, to another law firm that came to his rescue, hundreds of thousands of dollars in additional fees and expenses. The law firm of Morell, Cartagena, Dapena were paid $153,000 by Mr. Goldman, so that said law firm could extract Mr. Goldman from the mess Mr. Goldman was in said litigation.

100. It is not necessary that a lawyer makes the determination of recommending any particular advice with mathematical certainty. All that you need is not to provide unfounded "legal" advice, that will cause more damage to any of your clients.

101. Lawyers have the duty of care and must take the foreseeable measures that a prudent and reasonable man would display under the circumstances that surround the legal situation that his/her client confronts.

102. To determine the amount of attention and care that is being required, the legal professional needs to be aware of the general practice of the legal profession that is recognized by the legal profession. Similar duties have been imposed to the medical profession, For example, _Crespo v. H.R. Psychiatric Hosp., Inc.,_ 114 D.P.R. 796, 800 (1983); _Hernández v. La Capital_, 81 D.P.R. 1031, 1037-1038.; _Soc. De Gananciales, Etc. v. Presbyterian Hospital_, 88 D.P.R. 391, 399 (1963); _López v. Hosp. Presbiteriano, Inc.,_ 107 D.P.R. 197, 213(1978) y _Oliveros v. Abreu_, 101 D.P.R. 209 (1973).

103. In _Núñez vs. Cintrón, 115 D.P.R. 598,611 (1984)_, the Supreme Court of Puerto Rico held that the duty of the hospitals and doctors is to offer to their patients the attention that satisfies the generally recognized requirements by the medical profession at the light of the modern of communication and teachings. _Cruz v. Centeno Médico de P.R., 113 D.P.R. 719 (1983); Negrón v. Municipality de San Juan_, 107 D.P.R. 375 (1978); _López v. Hosp. Presbiteriano, Inc.,_ 107 D.P.R. 197 (1978).

104. The breach of that duty by the personnel of the hospital brings liability to the hospitals. _Márquez Alfonso v. F.S.E., 105 D.P.R. 322, 328 (1976)._ The breach of this legal duty is the cause of Plaintiff's damages.

105. In the case of _Sandra Rolón-Alvarado, Plaintiff-Appellant v. Municipality of San Juan, 1 F.3d 74_, the Court held that: "The substantive law of Puerto Rico controls in this diversity suit. To establish a prima facie case of medical malpractice under that law, a plaintiff must adduce evidence showing at least three separate things: (1) the duty owed, expressed as the minimum standard of professional knowledge and skill required under the circumstances then obtaining; (2) a breach of that duty attributable to the defendant; and (3) a sufficient causal nexus between the breach and the plaintiff's claimed injury. See, _Sierra Pérez v. United States_, 779 F. Supp. 637, 643 (D.P.R.1991); _Crespo v. Hernández_, 121 P.R. Dec. 639, 650 (1988); _Medina Santiago v. Vélez_, 120 P.R. Dec. 380, 385 (1988)." "In 1973, Puerto Rico jettisoned the so-called "locality" or "community standard" rule in favor of a more universal, less parochial approach to establishing the standard of acceptable care for purposes of a medical malpractice suit. See _Valendon Martínez v. Hospital Presbiteriano_, _806 F.2d 1128_, 1135-36 (1st Cir.1986) (discussing effect of _Oliveros v. Abreu_, 101 P.R. Dec. 209 (1973)). Today, a physician is expected to possess, and use, that level of knowledge and skill prevalent in his or her specialty generally, not simply the knowledge and skill commonly displayed in the community or immediate geographic region where the treatment is administered.

See *Oliveros, 101 P.R. Dec. at 223, 226-27, translated in 1 P.R. Sup. Ct. Off'l Translations 293, at 303, 313.* In other words, a health-care provider has a duty to use the same degree of expertise as could reasonably be expected of a typically competent practitioner in the identical specialty under the same or similar circumstances, regardless of regional variations in professional acumen or level of care." "We have no doubt that Puerto Rico would follow this rule; indeed, in what amounts to a variation on the same theme, the Puerto Rico Supreme Court has held that even an acknowledged error in medical judgment cannot support a malpractice claim so long as the mistake is reasonable. See *Oliveros, 1 P.R. Sup. Ct. Off'l Translations at 314; see also Suárez Matos v. Ashford Presbyterian Community Hosp., 4 F.3d 47, 50 (1st Cir.1993)* (suggesting that, in Puerto Rico, a mistake in diagnosis will not necessarily constitute malpractice); *Del Valle Rivera, 630 F. Supp. at 756* (stating that, under Puerto Rico's jurisprudence, a plaintiff who charges a physician with malpractice must establish that the defendant's fault "is more than a mere hindsight possibility"). In sum, tort law neither holds a doctor to a standard of perfection nor makes him an insurer of his patient's well-being. Professional standards require normative judgments, not merely proof that a better way to treat a particular patient could have been devised."

Alan Goldman v. McConnell Valdés, LLC, et al / 24cv01136 / Verified Third Amended Complaint

106. Plaintiff Goldman alleges that lawyers are subjected to the same professional standards.

107. All conditions precedent to the filing of this action have been complied with, waived, excused, or otherwise met by Mr. Goldman.

108. Mr. Goldman has retained Francisco M. López-Romo, Esq. to bring this action and has agreed to pay reasonable attorneys' fees for services rendered.

WHEREFORE, Mr. Goldman demands judgment in his favor and against Mr. Arias, Mrs. Beale and their conjugal partnership and McConnell Valdés and Sompo International and/or Endurance American Specialty Insurance Company and/or Defendant, AIG Insurance Company-Puerto Rico, to cover the damages that were suffered by Mr. Goldman as the result of McConnell Valdés' and Mr. Arias' breach of their respective contractual obligations and duties of care, and/or as the result of McConnell Valdés' and Mr. Arias' joint fault and/or vicarious negligence and for the financial damages suffered by Mr. Goldman, as well as for Mr. Goldman's emotional damages and distress, with interest, costs and such other relief this Court deems just and proper.

Alan Goldman v. McConnell Valdés, LLC, et al / 24cv01136 / Verified Third Amended Complaint

## COUNT IV - CAUSE OF ACTION AGAINST MCCONNELL VALDÉS, VICARIOUS LIABILITY UNDER ARTICLE 1540 OF THE PUERTO RICO CIVIL CODE

109. Plaintiff re-alleges the allegations made in paragraphs 1 through 108, and any subsequent allegations, as if fully stated herein.

110. Article 1540 of the Puerto Rico Civil Code of 2020 defines vicarious liability.

111. The courts in Puerto Rico extend vicarious liability for any professional malpractice, in situations where a client seeks professional services directly from any law firm, either as an employer or as partnership, such as McConnell Valdés, and the legal entity provides the services of one of its own lawyers, whether said lawyer is an employee or is a partner in the law firm.

112. Regardless of the lawyer's employment relationship with the law firm. This vicarious liability has been amply discussed in several medical malpractice cases, such as in the case of _Ramírez vs. Corporación del Centro Vascular de Puerto Rico_, 32 F. Supp. 3d 83, 90(2014).

113. The breach of their legal duty to provide competent legal services is the real cause of Mr. Goldman's substantial economic losses, in addition to

also having caused Mr. Goldman's significant, emotional, mental damages.

114. McConnell Valdés is liable for the negligent acts and/or the negligent omissions incurred by any of its employees and/or its agents relating to their client, Mr. Goldman. This liability derives from the "respondeat superior" doctrine previously established under Article 1803 of the Puerto Rico Civil Code (1930) and under Article 1540 of the Civil Code of Puerto Rico (2020).

115. Mr. Arias' and McConnell Valdés' acts and/or omissions are the proximate cause of the damage being suffered by Mr. Goldman.

116. All conditions precedent to the filing of this action have been complied with, waived, excused, or otherwise met by Mr. Goldman.

117. Mr. Goldman has retained Francisco M. López-Romo, Esq. to bring this action and has agreed to pay reasonable attorneys' fees for services rendered.

WHEREFORE, Mr. Goldman demands judgment in his favor and against Mr. Arias, Mrs. Beale and their conjugal partnership and McConnell Valdés and Sompo International and/or Endurance American Specialty Insurance Company and/or Defendant, AIG Insurance Company-Puerto Rico, to cover the damages

that were suffered by Mr. Goldman as the result of McConnell Valdés' and Mr. Arias' breach of their respective contractual obligations and duties of care, and/or as the result of McConnell Valdés' and Mr. Arias' joint fault and/or vicarious negligence and for the financial damages suffered by Mr. Goldman, as well as for Mr. Goldman's emotional damages and distress, with interest, costs, and such other relief this Court deems just and proper.

## COUNT V – FAILURE TO REPORT MALPRACTICE

118. Mr. Goldman re-alleges the allegations made in paragraphs 1 through 117 as if fully stated herein.

119. Lawyers, like all professionals, make mistakes. They fail to conduct appropriate factual investigations, draft inadequate documents but fail to disclose them to their clients.

120. Specifically, clients should be able to assert an independent breach of fiduciary duty claim seeking equitable remedies, including fee forfeiture, based on the lawyer's failure to self-report his error.

121. This action asserts two principal claims-one for breach of contract for incurring professional negligence, and a second for breach of fiduciary duty.

*Alan Goldman v. McConnell Valdés, LLC, et al / 24cv1136 / Verified Third Amended Complaint*

122. The lawyer, Defendant Arias, breached his duty of care to a client, and breached the fiduciary duty that arises when lawyers have violated their fiduciary duties of loyalty and communication to a client.

123. A client should be able to assert a breach of fiduciary duty claim seeking fee forfeiture when the client's lawyers incurred in failure to self-report malpractice, and such act constitutes a breach of their contractual obligations, regardless of how the cause is characterized, it is essentially a breach of contract.

124. Plaintiff Goldman should be able to recover certain equitable remedies-principally fee forfeiture-even in the absence of proof that the fiduciary breach gave rise to damages.

125. Thus, when a lawyer fails to report his own malpractice, clients should be able to assert an independent breach of fiduciary duty claim seeking equitable remedies, including fee forfeiture, based on that failure.

126. Defendant Arias' failure to keep his client reasonably informed about the status of the matter and explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.  This duty to inform it surely must include a requirement that a lawyer inform his client when the client may have a substantial malpractice claim against the lawyer, since this information is necessary to permit the client to make informed decisions regarding

the representation. Those decisions include (1) whether the client has a viable malpractice claim arising out of the representation and, if so, whether to pursue it now or later; and (2) whether to have the lawyer continue to represent the client in the current matter. In this situation, where the interests of the attorney and client may differ substantially, a high degree of disclosure is necessary.

127. MODEL RULES OF PROF'L CONDUCT r. 1.4 (AM. BAR ASS'N 2013); *see also* RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS § 20 (AM. LAW INST. 2000) ("(1) A lawyer must keep a client reasonably informed about the matter and must consult with a client to a reasonable extent concerning decisions to be made by the lawyer... (2) A lawyer must promptly comply with a client's reasonable requests for information. (3) A lawyer must notify a client of decisions to be made by the client . . . and must explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.") Since "the attorney is under a duty to disclose any material matters bearing upon the representation and must impart to the client any information which affects the client's interests").

128. This conflict is imputed to Defendant McConnell Valdés, LLC's entire law firm. Once a lawyer's conduct has given rise to a substantial malpractice claim by his client, his personal interests are adverse to

their client's and the lawyer's law firm also incurs liability under the facts that are alleged in this amended complaint.

129. Rather, the conflicted lawyer becomes fixated on vindicating his or his firm's own position instead of acting in the best interests of the client.

130. In short, a lawyer who fails to disclose his malpractice to his client is subject to discipline for violating Rules 1.4 and 1.7 of the Model Rules of Professional Conduct.

131. In addition, the lawyer's failure to disclose his own malpractice may also violate Rule 8.4(c)'s prohibition on conduct involving, among other things, "dishonesty" and "deceit." MODEL RULES OF PROF'L CONDUCT r. 8.4(c) that lawyers must "reveal all information that a reasonable client would attach importance to in determining the objectives of the representation…but if the mistake "has consequences that materially affect the client's matter, the fact of the mistake becomes material, and must be disclosed to the client."

132. Applying this understanding of materiality, the self-reporting duty should arise "when the error is one that a reasonable client would find significant in making decisions about (1) the lawyer-client relationship and (2) the continued representation by the lawyer or law firm." As applied to the self-reporting duty, materiality comes down to primarily

two things: how bad was the mistake and how much harm did it caused.

133. As a direct and proximate result of the joint fault and/or negligence of Mr. Arias and McConnell Valdés, Mr. Goldman suffered emotional damages, resulting in mental pain and suffering, Mr. Goldman has suffered significant financial losses, including his payment in the sum of $195,893.90 to the law firm of McConnell Valdés, for the faulty or negligent services that Mr. Goldman received from McConnell Valdés, during the unnecessary, unsuccessful litigation that resulted from McConnell Valdés' wrong legal advice regarding Mr. Goldman's sale of his real estate property located in Dorado, Puerto Rico.

134. All conditions precedent to the filing of this action have been complied with, waived, excused, or otherwise met by Mr. Goldman.

135. Mr. Goldman has retained Francisco M. López-Romo, Esq. to bring this action and has agreed to pay reasonable attorneys' fees for services rendered.

WHEREFORE, Mr. Goldman demands judgment in his favor and against Defendants McConnell Valdés and Mr. Arias for damages, interest, costs, and such other relief this Court deems just and proper.

Alan Goldman v. McConnell Valdés, LLC, et al / 24cv01136 / Verified Third Amended Complaint

## COUNT VI - UNDER THE PUERTO RICO INSURANCE CODE

136. Mr. Goldman re-alleges the allegations made in paragraphs 1 through 135, and any subsequent allegations as if fully stated herein.

137. Pursuant to the Puerto Rico Insurance Code a casualty or liability insurance carrier is independently liable in a direct action from the Mr. Goldman, in an action against the insured, and when joint complaint is filed against the insurer and the insured; for any negligence, fault or condition insured against, up to the merits of liability of the insurance contract.

138. As a direct and proximate result of the joint fault and/or negligence of Mr. Arias and McConnell Valdés, Mr. Goldman suffered emotional damages, resulting in mental pain and suffering, Mr. Goldman has suffered significant financial losses, including his payment in the sum of $195,893.90 to the law firm of McConnell Valdés, for the faulty or negligent services that Mr. Goldman received from McConnell Valdés, during the unnecessary, unsuccessful litigation that resulted from McConnell Valdés' wrong legal advice regarding Mr. Goldman's sale of his real estate property located in Dorado, Puerto Rico.

Alan Goldman v. McConnell Valdés, LLC, et al / 24cv01136 / Verified Third Amended Complaint

139. All conditions precedent to the filing of this action have been complied with, waived, excused, or otherwise met by Mr. Goldman.

140. Mr. Goldman has retained Francisco M. López-Romo, Esq. to bring this action and has agreed to pay reasonable attorneys' fees for services rendered.

WHEREFORE, Mr. Goldman demands judgment in his favor and against Defendants, Sompo International and/or Endurance American Specialty Insurance Company and/or AIG Insurance Company-Puerto Rico, to cover the damages that were suffered by Mr. Goldman as the result of McConnell Valdés' and Mr. Arias' breach of their respective contractual obligations and duties of care, and/or as the result of McConnell Valdés' and Mr. Arias' joint fault and/or vicarious negligence and for the financial damages suffered by Mr. Goldman, as well as for Mr. Goldman's emotional damages and distress, with interest, costs, and such other relief this Court deems just and proper.

COUNT VII – AS TO ALL COUNTS, THE ACTUAL DAMAGES

141. Mr. Goldman re-alleges the allegations made in paragraphs 1 through 140 as if fully stated herein.

142. As a direct and proximate result of Mr. Arias' and McConnell Valdés' failure to comply with their legal and contractual obligations, and/or

as the result of Mr. Arias and McConnell Valdés' fault and/or negligence, Mr. Goldman suffered economic losses, and, also suffered emotional damages such as mental pain and suffering.

143. Mr. Goldman significant financial losses include his payment of $195,893.90 to cover the legal services of McConnell Valdés for its faulty, negligent professional services, the sum of $212,900 in repairs and maintenance, that were spent only as the result of Mr. Arias' bad advice, the sum of $153,000 that Mr. Goldman had to spend in additional legal fees to Morell, Cartagena and Dapena, plus the sum of $25,000 that Mr. Goldman shall be paying to his undersigned attorney in this case.

144. Mr. Goldman was induced by McConnell Valdés and by Mr. Arias to get involved in an unnecessary, unsuccessful litigation, that only resulted in an adverse transaction, due to McConnell Valdés', Mr. Arias, and Mr. Irizarry's, incorrect, wrong, or wrongful legal advice regarding Mr. Goldman's forced sale of his deceased parents' real estate property in Dorado Beach, Puerto Rico.

145. Mr. Goldman still gets up every single day feeling extremely anxious due to his constant regret of having listened to Mr. Arias and McConnell Valdés' incorrect, wrong, or wrongful and inadequate legal advice.

146. As the result thereof, Mr. Goldman constantly worries about his present financial situation and about his own uncertain financial future.

147. Mr. Goldman claims that Mr. Goldman is entitled to recover those financial losses that were incurred by him after retaining Mr. Arias and McConnell Valdés' inadequate legal services, and the future loss of income that Mr. Goldman has been unable to generate, as the result of having to unnecessarily spend over $370,000 in legal fees, plus $212,900 that were spent in repairs and maintenance services on the real estate property, all because of incorrect, wrong, or wrongful legal advice.

148. Since at least June 8, 2021, Mr. Arias and McConnell Valdés insisted that the state of the applicable law in Puerto Rico was as follows:

"Team: Patricia and **I just briefed Mr. Goldman on the defense strategy moving forward mainly supported by careful review of both the option agreement and the draft escrow agreement...** the plaintiff Teal Peak sued because it allegedly validly exercised its right to purchase under the option agreement, the case was ready to close but the seller refused to close and therefore it seeks specific performance. As per the amended complaint Teal Peak in addition to specific performance

seeks damages based on its speculation that had it purchased the property in December 2020 it would have been ready to be exploited as a rental property by April 2021 for at least $35,000 a month or sold for over $8,000,000.

On Thursday June 3rd we offered counsel for Teal Peak the return of the $800,000 deposit plus reimbursement of all true out of pocket expenses to make Teal Peak whole and part ways...

Moving forward our litigation defense and counterclaim will be based on the following talking points:
...

Fifth, even if the buyer where to show by a preponderance of the evidence that the case was ready to close and it was the seller's fault, **the only remedy it is entitled under the option agreement is the return of the deposit AND (not "or") any other equitable remedies under the law. That is not specific performance. Specific performance is not a remedy available to the buyer. End of discussion.**

**Furthermore, even if there was seller liability, which we dispute, all damages claims are not only illegal, they are all pure speculation**.

...

The lawsuit has been filed under the illegal premise that the buyer can compel the seller to close on the sale. Buyer is wrong, seller can walk away and he need only return the cash deposit and pay real expenses. ...

4. We can petition the court for immediate mediation to settle the remainder of what the buyer is entitled to which is "equitable remedies" in our view, reimbursement of their out-of-pocket expenses and attorney's fees.

5. Should mediation fail, at the earliest available opportunity Mr. Goldman shall file a motion for summary judgment since the only remaining issue to be decided by the court is a legal issue which need not go to a jury." Please, see <u>**Exhibit 1**</u>.

149. This incorrect, wrong, or wrongful advice constitutes professional malpractice. Mr. Goldman followed said incorrect, wrong, or wrongful advice. From that moment on, Mr. Goldman's lacked informed consent as to whether continue to litigate or not continue to litigate said case.

150. Mr. Goldman unnecessarily suffered throughout those last two years, and respectfully avers that he is entitled to be compensated by Mr. Arias and McConnell Valdés and by John Doe, Mary Doe and/or by Sompo International and/or Endurance American Specialty Insurance Company and/or AIG Insurance Company-Puerto Rico, to cover the damages that were suffered by Mr. Goldman as the result of McConnell Valdés' and Mr. Arias' breach of their respective contractual obligations and duties of care, and/or as the result of McConnell Valdés' and Mr. Arias' joint fault and/or vicarious negligence and for the financial damages suffered by Mr. Goldman, as well as for Mr. Goldman's emotional damages and distress, with interest, costs, and such other relief this Court deems just and proper, in an amount of not less than Ten Million Dollars ($10,000,000).

151. Mr. Goldman respectfully demands trial by jury on Counts I through VII.

## COUNT VIII – ABUSE OF PROCESS

152. Mr. Goldman re-alleges the allegations made in paragraphs 1 through 151 as if fully stated herein.

153. Under **Puerto Rico law**, abuse of process occurs when legal proceedings are misused to achieve an improper, collateral objective rather than their intended purpose.

154. Defendants counter-plaintiffs Antonio Arias Larcada, María Beale, and McConnell Valdés, LLC's conduct meets the **two-pronged test** for abuse of process: (a) Defendants counter-plaintiffs Antonio Arias Larcada, María Beale, and McConnell Valdés, LLC acted with **bad motive** by knowingly filing a **legally futile** defamation claim with the **intent to harass and intimidate Mr. Goldman.** (b) Defendants counter-plaintiffs Antonio Arias Larcada, María Beale, and McConnell Valdés, LLC **misused the legal process** to obtain an improper advantage by attempting to **coerce Mr. Goldman into abandoning his legal malpractice claims.**

155. Pursuant to **Article 1536 of the Civil Code of Puerto Rico of 2020**, Defendants counter-plaintiffs Antonio Arias Larcada, María Beale, and McConnell Valdés, LLC's conduct constitutes **an abuse of**

**process** because it "manifestly exceeded the normal limits of the exercise of a right," causing **substantial harm** to Plaintiff.

156. As a direct and proximate result of Defendants counter-plaintiffs Antonio Arias Larcada, María Beale, and McConnell Valdés, LLC's **abuse of process**, Plaintiff has suffered **severe emotional distress, reputational harm, and significant litigation costs.**

157. To establish **the abuse of process**, the plaintiff must prove:

   1. **Ulterior Motive** – The Defendants counter-plaintiffs Antonio Arias Larcada, María Beale, and McConnell Valdés, LLC initiated legal proceedings for a **collateral purpose** rather than to seek a legitimate legal remedy.

   2. **Improper Use of Process** – The legal process was used in a manner **not intended by law**, to **harass or pressure** the plaintiff rather than resolve a legitimate dispute. **See <u>General Motors Corp. v. Alberic Colón Auto Sales</u>, 131 D.P.R. 573 (1992)** (holding that a claim for abuse of process arises when the legal process is used for an improper purpose beyond its normal scope).

158. **Defendants counter-plaintiffs Antonio Arias Larcada, María Beale, and McConnell Valdés, LLC filed a Retaliatory Counterclaim for**

**Defamation.** The **defamation claim was baseless** and lacked **any legitimate legal foundation**. As noted by the Defendants counter-plaintiffs Antonio Arias Larcada, María Beale, and McConnell Valdés, LLC who acquiesce to its dismissal in document 89.

159. In the Counterclaim at ¶ 68-76 the **defamation claim was premised on Mr. Goldman's email**, where he simply stated, "he is lying," regarding Mr. Arias's alleged verbal communication of the motion to dismiss denial. This **statement was opinion**, not defamation, additionally it was made in the course of legal proceedings and therefore subject to absolute privilege.

160. In the Counterclaim ¶ 78 the Defendants counter-plaintiffs Antonio Arias Larcada, María Beale, and McConnell Valdés, LLC**'s acquiescence to dismissal** of the defamation claim confirms that the counterclaim **had no merit** and was an **improper attempt to intimidate Mr**. Goldman.

161. In the Counterclaim ¶ 58, the counterclaim was filed with the **improper purpose** of harassing and intimidating Mr. Goldman and pressuring him into **abandoning his legitimate claims of legal malpractice,**

**unjust enrichment etc. against the** Defendants counter-plaintiffs Antonio Arias Larcada, María Beale, and McConnell Valdés, LLC.

162. The **timing of the counterclaim**, after Mr. Goldman filed a malpractice suit, demonstrates that the claim was filed in **retaliation** rather than for a legitimate legal purpose, also signifying violations of Puerto Rico's standards of professional conduct under the canons of ethics.

163. In the Counterclaim ¶ 59, the counterclaim **exceeded the normal bounds** of legal action and was a **clear misuse of judicial resources**.

164. **Defendants counter-plaintiffs Antonio Arias Larcada, María Beale, and McConnell Valdés, LLC sought damages not as a means of addressing actual harm, but to retaliate against and financially burden Mr. Goldman**.

165. The **dismissal of the defamation claim confirms that Defendants counter-plaintiffs Antonio Arias Larcada, María Beale, and McConnell Valdés, LLC had no legitimate reason** to file it. Instead, **they used the lawsuit as a weapon to harass, pressure, and retaliate against Mr. Goldman**, constituting a **classic case of abuse of process**.

Alan Goldman v. McConnell Valdés, LLC, et al / 24cv01136 / Verified Third Amended Complaint

166. Mr. Goldman respectfully demands trial by jury on Counts I through VIII.

**WHEREFORE**, Mr. Goldman respectfully requests that this Court:

1. **Award compensatory** for abuse of process and malicious prosecution.

2. **Order the** Defendants counter-plaintiffs Antonio Arias Larcada, María Beale, and McConnell Valdés, LLC **to pay attorneys' fees and costs** associated with defending against the baseless claim.

3. **Grant any other relief the Court deems just and appropriate**.

COUNT IX – MALICIOUS PROSECUTION

167. Mr. Goldman re-alleges the allegations made in paragraphs 1 through 166 as if fully stated herein.

168. Defendants counter-plaintiffs Antonio Arias Larcada, María Beale, and McConnell Valdés, LLC **knowingly initiated a legal claim without probable cause and with malice**, constituting **malicious prosecution** under Puerto Rico law.

169. As experienced legal professionals, Defendants counter-plaintiffs Antonio Arias Larcada, and McConnell Valdés, LLC knew or should have known that statements made within the context of judicial

proceedings are protected by absolute privilege, rendering any defamation claim based on such statements legally untenable.

170. Despite this knowledge, Defendants counter-plaintiffs Antonio Arias Larcada, McConnell Valdés, LLC, and María Beale proceeded to assert defamation counterclaim, demonstrating a reckless disregard for established legal protections afforded to litigants.

171. Subsequently, Defendants counter-plaintiffs Antonio Arias Larcada, María Beale, and McConnell Valdés, LLC conceded that the defamation claim lacked merit due to the applicability of absolute privilege and consented to its dismissal without prejudice.

172. This concession underscores that the defamation counterclaim was baseless and should not have been initiated.

173. The initiation of the defamation counterclaim, despite knowing its futility, indicates that Defendants counter-plaintiffs Antonio Arias Larcada, María Beale, and McConnell Valdés, LLC employed the legal process for an ulterior motive.

174. The primary purposes of this action were to harass, intimidate, and oppress Mr. Goldman, to create a hostile litigation environment, and to deter him from pursuing his legitimate legal malpractice claims against

Alan Goldman v. McConnell Valdés, LLC, et al / 24cv01136 / Verified Third Amended Complaint

Defendants counter-plaintiffs Antonio Arias Larcada, María Beale, and McConnell Valdés, LLC.

175. By filing a meritless defamation counterclaim, Defendants counter-plaintiffs Antonio Arias Larcada, María Beale, and McConnell Valdés, LLC misused the judicial process, causing unnecessary expenditure of judicial resources and subjecting Mr. Goldman to unwarranted legal burdens.

176. Such conduct constitutes an abuse of process, as it involves the perversion of legal procedures to achieve objectives outside the legitimate ends of the process.

177. Abuse of process occurs when legal proceedings are initiated with an ulterior motive and for a purpose other than that which the process was designed to accomplish. The essential elements include:

178. In this case, Defendants counter-plaintiffs Antonio Arias Larcada, María Beale, and McConnell Valdés, LLC's actions satisfy both elements:

a. **Ulterior Motive:** The defamation counterclaim was filed to harass and intimidate Mr. Goldman, aiming to dissuade him from pursuing his legitimate claims.

Alan Goldman v. McConnell Valdés, LLC, et al / 24cv01136 / Verified Third Amended Complaint

b. **Misuse of Process:** The defamation claim was baseless due to the absolute privilege of protecting Mr. Goldman's statements, indicating that the legal process was misused for purposes of harassment and intimidation.

179. As a direct result of Defendants counter-plaintiffs Antonio Arias Larcada, María Beale, and McConnell Valdés, LLC's abuse of process, Mr. Goldman has suffered:

a. Emotional distress and mental anguish.

b. Reputational harm within his professional and personal communities.

c. Financial losses, including legal fees and related expenses, were incurred in response to the baseless defamation counterclaim.

180. Defendants counter-plaintiffs Antonio Arias Larcada, María Beale, and McConnell Valdés, LLC' **defamation claim has been dismissed**, and Defendants counter-plaintiffs Antonio Arias Larcada, María Beale, and McConnell Valdés, LLC have conceded that **it should not have been filed.**

181. Defendants counter-plaintiffs Antonio Arias Larcada, María Beale, and McConnell Valdés, LLC' sole motivation in filing the counterclaim was

to **retaliate against Plaintiff** and force him to abandon his **valid malpractice claims.**

182. The plaintiff has suffered **significant damages**, including **litigation expenses, emotional distress, and reputational harm**, as a direct result of Defendants counter-plaintiffs Antonio Arias Larcada, María Beale, and McConnell Valdés, LLC' **malicious prosecution.**

183. To establish **malicious prosecution**, the plaintiff must prove:

1. Defendants counter-plaintiffs Antonio Arias Larcada, María Beale, and McConnell Valdés, LLC **initiated or instigated a legal proceeding** against the plaintiff.

2. **Lack of probable cause** – The claim was brought **without reasonable grounds**.

3. **Malice** – The claim was initiated with **ill will, spite, or an improper motive**.

4. **Favorable Termination** – The case was **resolved in the plaintiff's favor**.

5. **Damages** – Plaintiff suffered harm as a result of the wrongful legal action.

Alan Goldman v. McConnell Valdés, LLC, et al / 24cv01136 / Verified Third Amended Complaint

**See Boschette v. Bach, 925 F. Supp. 2d 420 (D.P.R. 2013)** (requiring a show that the prior case was initiated without probable cause and with malice).

184. In the Counterclaim ¶ 56, the **allegedly defamatory statement** was a **non-actionable opinion**, making the claim **frivolous and unwarranted** under established defamation law.

185. As to Counterclaim ¶ 58, the defamation claim was **filed to harass and intimidate Mr. Goldman** rather than seek actual legal redress.

186. As to Counterclaim ¶ 59, Mr. Goldman suffered **economic damages** due to legal fees incurred in defending against a **meritless** defamation claim.

187. In the Counterclaim ¶ 69, Defendants counter-plaintiffs Antonio Arias Larcada, María Beale, and McConnell Valdés, LLC **affirmatively pursued a counterclaim for defamation** based on **a single email statement**, which they **knew or should have known** was legally insufficient to establish defamation.

188. As to Counterclaim ¶ 75, the **court dismissed the defamation claim**, demonstrating that it **lacked legal merit from the outset**.

Alan Goldman v. McConnell Valdés, LLC, et al / 24cv01136 / Verified Third Amended Complaint

189. As to Counterclaim ¶ 76, the defamation claim was **dismissed in Mr. Goldman's favor**, satisfying the requirement for favorable termination.

190. In the Counterclaim ¶ 79, Defendants counter-plaintiffs Antonio Arias Larcada, María Beale, and McConnell Valdés, LLC **weaponized the legal system** to punish Mr. Goldman for asserting his rights.

191. As to Counterclaim ¶ 79, the stress, emotional distress, and reputational harm caused by defending a **frivolous claim** further satisfy the damages requirement.

192. The **dismissal of the defamation counterclaim confirms that it was filed without probable cause** and with **malicious intent** to retaliate against Mr. Goldman. Defendants counter-plaintiffs Antonio Arias Larcada, María Beale, and McConnell Valdés, LLC **knowingly pursued a frivolous legal action to harass and intimidate him**, which constitutes **malicious prosecution under Puerto Rico law**.

193. As a result of **defendants' abuse of process and malicious prosecution**, Mr. Goldman suffered **significant harm**, including:

1. **Compensatory Damages** for:

   o Legal fees are incurred in defending against the frivolous defamation claim.

Alan Goldman v. McConnell Valdés, LLC, et al / 24cv01136 / Verified Third Amended Complaint

- o Emotional distress and reputational harm caused by the malicious legal action.

- o Lost time and business opportunities due to being forced to fight a baseless claim.

2. **Attorney's Fees and Costs** as provided under **Puerto Rico law for bad-faith litigation**.

194. The Defendants counter-plaintiffs Antonio Arias Larcada, María Beale, and McConnell Valdés, LLC **abused the legal process and engaged in malicious prosecution** by filing a **retaliatory and meritless defamation claim** against Mr. Goldman. The **court's dismissal of the claim confirms its lack of legal basis**. As a result, Mr. Goldman is entitled to damages for the **financial, reputational, and emotional harm suffered due to the** Defendants counter-plaintiffs Antonio Arias Larcada, María Beale, and McConnell Valdés, LLC**' bad-faith litigation tactics**.

195. On June 13, 2024, Defendants counter-plaintiffs Antonio Arias Larcada, María Beale, and McConnell Valdés, LLC filed a counterclaim against Plaintiff Alan Goldman, alleging defamation based on statements made by Mr. Goldman during the course of this litigation.

Alan Goldman v. McConnell Valdés, LLC, et al / 24cv01136 / Verified Third Amended Complaint

196. Mr. Goldman respectfully requests this Honorable Court:

    a. Enter judgment in his favor on this abuse of process claim.

    b. Award compensatory damages in an amount to be determined at trial, covering emotional distress, reputational harm, and financial losses.

    c. Award reasonable attorney's fees and costs incurred in bringing this claim.

    d. Provide any other relief that the Court deems just and proper.

Defendants counter-plaintiffs Antonio Arias Larcada, María Beale, and McConnell Valdés, LLC's initiation of a defamation counterclaim, despite their knowledge of its futility due to absolute privilege protection, constitutes a clear abuse of process. Their actions were driven by malicious intent to harass and intimidate Mr. Goldman, warranting the relief sought herein.

WHEREFORE, Plaintiff, Alan Goldman requests that Judgment be granted in his favor, and against Defendants, Antonio A. Arias-Larcada, his wife Mrs. María Beale and their conjugal partnership; McConnell Valdés, LLC; John Doe, Mary Doe, and/or against Sompo International and/or Endurance American Specialty Insurance Company and/or AIG Insurance Company-Puerto Rico, to cover the damages that were suffered by Mr. Goldman as the result of McConnell Valdés'

and Mr. Arias' breach of their contractual obligations and duties of care, and/or as the result of McConnell Valdés' and Mr. Arias' joint fault and/or vicarious negligence, for the financial damages suffered by Mr. Goldman, as well as for Mr. Goldman's emotional damages and distress, with interest, costs, and such other relief this Court deems just and proper, jointly and severally, as follows:

(a) In the sum of Ten Million dollars ($10,000,000);

(b) Awarding **compensatory damages** in an amount to be determined at trial for **emotional distress, reputational harm, and litigation expenses** caused by Defendants' actions;

(c) Awarding **attorney's fees, costs, disbursements and prejudgment interest** pursuant to Puerto Rico law;

(d) Refer Defendants Antonio Arias Larcada and McConnell to the **Puerto Rico Supreme Court's Disciplinary Board** for investigation and disciplinary action, and

(e) Such further relief as this Court may deem to be just and proper.

197. Plaintiff Alan Goldman demands a trial by jury on all issues so triable.

Alan Goldman v. McConnell Valdés, LLC, et al / 24cv01136 / Verified Third Amended Complaint

## VERIFICATION

I, ALAN GOLDMAN, of legal age, single, resident of Montpelier, Vermont, hereby state under penalty of perjury that:

1. I have read the foregoing Verified Third Amended Complaint.

2. The factual assertions in the Verified Third Amended Complaint are true and correct to the best of my knowledge, information, and belief and/or pursuant to documents in my possession and my personal involvement in the facts of this case.

Executed in Montpelier, Vermont, this 21st day of March 2025.

Grand Isle
ABS

_____
ALAN GOLDMAN

Alan Goldman v. McConnell Valdés, LLC, et al / 24cv01136 / Verified Third Amended Complaint

RESPECTFULLY SUBMITTED.

In Coral Gables, Florida on this 21st day of March 2025.

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 21st day of March 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all the counsel of record.

*s/Francisco M. López-Romo*
FRANCISCO M. LOPEZ-ROMO
USDC-PR NO.  118314

PO Box 331823
Coconut Grove, Florida  33233
Telephone: 305-772-5577
Email: lopezromo@gmail.com

# EXHIBIT 1

**From:** Alan Goldman
**To:** edgardo.cartagena@mbcdlaw.com
**Subject:** Fw: Talking points in case moving forward
**Date:** Saturday, April 1, 2023 9:20:49 AM
**Attachments:** image745024.png

---

**From:** Antonio A. Arias <Aaa@mcvpr.com>
**Sent:** Tuesday, June 8, 2021 4:47 PM
**To:** Alan Goldman <goldiefun@msn.com>
**Cc:** Patricia George-Iguina <pgi@mcvpr.com>; José Irizarry Castro <jic@mcvpr.com>
**Subject:** Talking points in case moving forward

Team: Patricia and I just briefed Mr. Goldman on the defense strategy moving forward mainly supported by careful review of both the option agreement and the draft escrow agreement attempting to contain the Kleis lawsuit from precluding the closing.

As per the pleadings and the oral presentation given to the court at last week's status conference the plaintiff Teal Peak sued because it allegedly validly exercised its right to purchase under the option agreement, the case was ready to close but the seller refused to close and therefore it seeks specific performance. As per the amended complaint Teal Peak in addition to specific performance seeks damages based on its speculation that had it purchased the property in December 2020 it would have been ready to be exploited as a rental property by April 2021 for at least $35,000 a month or sold for over $8,000,000.

On Thursday June 3rd we offered counsel for Teal Peak the return of the $800,000 deposit plus reimbursement of all true out of pocket expenses to make Teal Peak whole and part ways. On Monday June 7th, 2021 opposing counsel informed that his client rejected the offer but made no counteroffer. He did point out without any further discussion that his client wants the property.

Moving forward our litigation defense and counterclaim will be based on the following talking points:

First, the case was not ready for closing in December 2020.

Second, Mr. Goldman was not at fault for the case not being ready for closing in December.

Third, Mr. Goldman could not deliver clean title because real estate broker Kleis filed a bogus lawsuit for an unearned commission and registered a Lis Pendens lien on the property.

Fourth, even if Mr. Goldman could deliver clean title by the closing he had been deceived by the buyer through dolus vitiating the option agreement.

Fifth, even if the buyer where to show by a preponderance of the evidence that the case was ready to close and it was the seller's fault, the only remedy it is entitled under the option agreement is the return of the deposit AND (not "or") any other equitable remedies

under the law. That is not specific performance. Specific performance is not a remedy available to the buyer. End of discussion.

Furthermore, even if there was seller liability, which we dispute, all damages claims are not only illegal, they are all pure speculation.

The talking points are supported by the evidence in the case:
First, page 3 of the option agreement negotiated by the parties does not afford the buyer the contractual right to seek specific performance if the seller refuses to sell. The lawsuit has been filed under the illegal premise that the buyer can compel the seller to close on the sale. Buyer is wrong, seller can walk away and he need only return the cash deposit and pay real expenses. Patricia has ordered a legal research on how the courts have considered "other equitable remedies" to confirm reimbursement of expenses in addition to the returned deposit satisfies the legal threshold.

Second, the option agreement is silent on assignment of the rights of the buyer. The buyers in the option were JM and his spouse not Teal Peak. Seller never consented to an assignment and was never notified of an assignment. Suddenly, Teal Peak appears as the disgruntled buyer in the complaint. There is a total disconnect here.

Third, the disconnect gets worse. The draft stipulation for the buyer to secure the required title insurance to close is between JM and the title company, not between Teal Peak and the title company. The document was neither timely circulated nor discussed with Mr. Goldman who is an interested party. How so? Because the deal involves withholding from the purchase price the bogus and illicit commission of $31,500 sought by Kleis. Mr. Goldman would have never agreed to such a withholding. As we all know it took Mr. Goldman time and legal fees to have the meritless Kleis lawsuit dismissed and it shall require that dismissal to be final and unappealable for Mr. Goldman through his legal counsel to petition the Registrar to remove the Lis Pendens from the property. All at Mr. Goldman's expense.

Thus, in view of the above the case should develop as follows:

1. Mr. Goldman will answer the amended complaint making aggressive use of the talking points by June 11th.
2. Send the process server to Dorado Beach immediately.
3. Mr. Goldman will consign in court the $800,000 deposit in compliance with the letter of the option agreement.
4. We can petition the court for immediate mediation to settle the remainder of what the buyer is entitled to which is "equitable remedies" in our view, reimbursement of their out-of-pocket expenses and attorney's fees.
5. Should mediation fail, at the earliest available opportunity Mr. Goldman shall file a motion for summary judgment since the only remaining issue to be decided by the court is a legal issue which need not go to a jury.

**Antonio A. Arias** ◾ **Capital Member** ◾
Aaa@mcvpr.com



T (787) 250-5604 ■ M (787) 405-8672
270 Muñoz Rivera Ave. San Juan, Puerto Rico 00918

This e-mail and its attachment(s) may be privileged, confidential, and protected from disclosure. If you received this communication in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon this communication is strictly prohibited. Unintended recipient(s) must immediately delete the e-mail and attachment(s), and notify the sender. The information contained in this communication and its attachments, including discussion of U.S. federal income, Puerto Rico income or other tax related matter, is limited to the statements specifically set forth herein, and such statements are intended for the sole use and benefit of our client and are not intended to be relied upon by any other person. The discussion of tax related matters was not intended or written to be used, and it cannot be used, for purposes of avoiding U.S. federal, Puerto Rico or local tax penalties.

EXHIBIT 2

| | |
|---|---|
| **From:** | Alan Goldman |
| **To:** | edgardo.cartagena@mbcdlaw.com; Alan Goldman |
| **Subject:** | Fw: Status conference held February 14, 2022 Teal Peak v. Goldman |
| **Date:** | Saturday, April 1, 2023 9:53:25 AM |
| **Attachments:** | image978292.png |
| | image226209.png |

---

**From:** Antonio A. Arias <Aaa@mcvpr.com>
**Sent:** Monday, February 21, 2022 2:10 PM
**To:** Alan Goldman <goldiefun@msn.com>
**Cc:** Patricia George-Iguina <pgi@mcvpr.com>; José Irizarry Castro <jic@mcvpr.com>
**Subject:** Status conference held February 14, 2022 Teal Peak v. Goldman

Greetings: As per our conference call last Tuesday, February 15, 2022 what follows is a report on the status conference held before Judge Pedro Delgado on your case. Counsel for Teal Peak and for the couple were also in attendance. The judge opened by indicating that he had reviewed all the legal briefs and had also done additional research on the issues. First he asked counsel for Teal Peak what was the criteria to consider on whether to granting or denying the pending motion to prohibit alienation of the property by the owner pending trial. The response was that the main criteria was the likelihood of success on the merits. Teal Peak conceded there was no public interest involved in this case as it is a private dispute over an option agreement. Teal Peak stressed that if the motion is denied and the property were to be sold that would moot the action. The judged then turned to me and I took my time to argue why there was no likelihood for the plaintiffs to prevail on the merits of the case due to the three pillars of our case. First, the contract clearly and with specificity reads in the default clause that the buyer shall the entitled to the return of the security deposit and any other equitable remedies. If the security deposit is returned the vague and not specific additional remedies can only involve some additional monetary compensation for lost interest or inconvenience but not specific performance. Given that the defendant had already returned the security deposit which is held by the court in escrow the case is mostly moot. I stressed to the court that the seller did no draft the option agreement and was not represented by counsel and would have never agreed to specific performance upon his default. The second pillar involves that even if the seller wanted to proceed with the closing he was unable to close due to the Kleis lawsuit. I took the judge through the lawsuit, how Kleis even placed a lien on the property based on an alleged broker's commission due to him before the closing which is totally unheard of. I tied that to the escrow agreement prepared by Grzan without the input of the seller attempting to have K;eis withdraw his lawsuit and lift the lien in exchange for payment of his entire claim. I informed the court the catch was that the seller would be financing the payoff. This is proven by the closing settlement statement prepared by the notary public doing the closing which showed that the payoff to Kleis was coming from the proceeds of the sale. I further impressed on the court that there was no broker agreement, that my client never agreed to a $31,500 commission to Kleis and that had he been made aware of this arrangement he would have never agreed to accept the same. In fact, I informed the court that the actual lawsuit fled by Kleis had been dismissed for his failure to serve process on the seller and all his appeals had been denied. As of this date, the dismissal of Kleis' lawsuit is final and unappealable. Also, Kleis' motion to intervene was denied and he is due to appeal said denial before the First Circuit Court of Appeals. Nevertheless, the lien has not been lifted

and due to it the seller could not convey clean title to the buyers. The third pillar is the dolus on the part of the buyers. I took the court through the scheme, the conflict of interest by Ferraiuoli, the seller's medical condition, his mental state, the mysterious withdrawal of the Mr. Lee purchase offer, COVID and lack of local eyes and ears. Finally, I impressed upon the court the remedy sought cannot be granted without the imposition of at least a $10,000,000 security bond as mandated by law.

Teal Peak's response was shrill and showed an irresponsible lack of preparedness. Attorney Sánchez opened by claiming the three pillar defense was new (wrong, he just needed to read the motions on file with the court). He claimed that he had read all the emails between the parties and what happened was that the seller executed the option agreement but then decided not to sell. He continued to argue that despite the contractual language his clients are entitled to specific performance. As to the lack of clean title he had the audacity to claim that the sales price was adjusted upwards by $31,500 and the charge to the seller which appears in the closing settlement statement was a wash. In the same breath he admitted not having seen the closing statement and then added that closing statements are revised at closing all the time. As to the dolus, he again dismissed it as a pretext by the seller. I was given an opportunity to reply and reinforced our position following Teal Peak's shoddy performance. At the end opposing counsel even had the nerve to claim that the events took place in 2019 before COVID, a misrepresentation he retracted from later in the hearing. The problem is he made those statements to the judge which such a conviction that at the end of the day he just tarnished his credibility before the same trier of fact who will resolve the case.

The judge then indicated that he understood the main issues of the case and that he would not rule on the motion pending the conclusion of discovery. Close of discovery was pulled back two months to May 31st, 2022. Teal Peak and the couple must submit their answers to interrogatories and produce documents by February 28, 2022. The court sided with me that the plaintiffs have had more than reasonable time to have complied with their discovery obligations which were inexcusably overdue.

The judge previewed that there are possible scenarios in the case. If he reads the penalty clause as directed by the seller, the best case scenario is the security deposit and some additional monies. The worst case scenario for the seller is specific performance minus the $800,000 deposit or a decision somewhere in between. He noticed that the parties are free to engage in settlement discussions at any time. However, the judge made clear he will not rule without listening to both the buyer and seller in person. Therefore, since the plaintiff did not demand a jury trial, he will convene a bench trial sometime this summer and expedite the resolution of this case. I asked the court if the seller could appear by videoconference and that was confirmed. Counsel will need to appear in court in person. Furthermore, depositions may also be taken by videoconference.

Finally, the judge stated that he would not rule on the motion to prohibit alienation of the property. However, he looked at me and decreed he would not like to find out that he property was being sold. If he got word of a sale he would immediately schedule a hearing and make a ruling. He then asked me what was my reaction. I calmly replied that the buyers were obtaining the remedy without having post a bond. As we have discussed internally, the mere fact of this pending litigation, let alone the pending motion has cast a shadow over the property. No potential buyer would commit to a sale during the pendency of this case. Therefore, it is to our benefit that we move quickly to a bench trial and get this

resolved.

The court scheduled a status hearing for May 6th, 2022 at 4:00 p.m.



**Antonio A. Arias** ▪ **Capital Member** ▪
Aaa@mcvpr.com

T (787) 250-5604 ▪ M (787) 405-8672
270 Muñoz Rivera Ave. San Juan, Puerto Rico 00918

This e-mail and its attachment(s) may be privileged, confidential, and protected from disclosure. If you received this communication in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon this communication is strictly prohibited. Unintended recipient(s) must immediately delete the e-mail and attachment(s), and notify the sender. The information contained in this communication and its attachments, including discussion of U.S. federal income, Puerto Rico income or other tax related matter, is limited to the statements specifically set forth herein, and such statements are intended for the sole use and benefit of our client and are not intended to be relied upon by any other person. The discussion of tax related matters was not intended or written to be used, and it cannot be used, for purposes of avoiding U.S. federal, Puerto Rico or local tax penalties.

EXHIBIT 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**TEAL PEAK CAPITAL, LLC,**

      **Plaintiff,**

        **v.**                    **CIVIL NO. 20-1747 (PAD)**

**ALAN BRAM GOLDMAN,**

      **Defendant.**

### MEMORANDUM AND ORDER

Delgado-Hernández, District Judge.

      This is a breach-of-contract action related to an option to purchase a property in Dorado, Puerto Rico. In essence, plaintiff alleges that it timely exercised the option to acquire the property but that defendant- the owner -negligently, willfully and in bad faith defaulted on his obligation to transfer title to the property (Docket No. 50, ¶¶ 1, 63). As a result, plaintiff seeks specific performance, damages, and costs and attorney's fees. Id. at p. 18. Defendant counters that the contract is void on account of deceit or *dolus* and that he was not at fault (Docket No. 18, p. 7). Further, he asserts that plaintiff's only remedy if defendant were found to have breached the contract is to recover the Option Fee, and requests that the action be dismissed on that basis (Docket No. 63).

      Having carefully reviewed relevant authorities in light of the record, defendant's motion must be denied. As discussed below, plaintiff is entitled to the remedies identified in Clause 15 of the contract. This includes recovery of the Option Fee and specific performance. Nevertheless, because the clause qualifies as a penal clause, at the end of the day the court may adjust the remedy in equity.

## I.   <u>DISCUSSION</u>

Clause 15 of the *Option to Purchase Agreement* reads:

**Default by Seller: Remedies Purchaser**.  In the event Seller, after exercise of the Option granted herein, fails to proceed with the closing of the sale of the Property pursuant to the terms and provisions contained herein, Purchase[r] shall be entitled to receive back the Option Fee and pursue any equitable remedies under law (Docket No. 1-1, ¶ 15).

For purposes of this ruling, the court assumes that plaintiff exercised the option and the defendant is in default.  This brings the issue of remedy to the forefront.  Plaintiff seeks specific performance and damages in the amount of $7,060,000, corresponding to the money it would have earned in rent and/or sale had it acquired title to the property in December 2020; $100,000 for the loss of use of the $800,000 it paid as Option Fee; and $200,000 in connection with the costs it incurred in the hiring of a notary, closing agent, preparation of closing documents and time consumed to bring the transaction to a fruitful conclusion (Docket No. 50, ¶¶ 96-98).  Pursuant to Clause 15, however, the cure for the seller's default is recovery of the Option Fee and equitable remedies.

Plaintiff argues that this is not so, for in its view, Clause 15 does not state that those are the only remedies in the event of seller default, and the parties did not express that the purchaser was waiving all other rights under the law, much less stated that the purchaser was exonerating the seller (Docket No. 80, p. 6).  Article 1077 of the Puerto Rico Civil Code of 1930 provides that the person prejudiced by a contractual breach may choose between exacting the fulfilment of the obligation or its rescission, "with indemnity for damages and payment of interest in either case."  P.R. Laws Ann. tit. 31 P.R. § 3052.  This is what plaintiff basically says it is entitled to in the absence of a waiver.  But as the Puerto Rico Supreme Court pointed out in <u>Levitt and Sons of</u>

Puerto Rico, Inc. v. D.A.C.O., 105 D.P.R. 184, 5 P.R. Offic. Trans. 248 (1976), no agreement is necessary to rely on the orthodox formula set in the law.  Id. at 192, n. 5; Offic. Trans. at 5, n. 5.  And here, there is an agreement that explicitly identifies what plaintiff shall be entitled to in case of the seller's default.

This type of clause is known as a penal clause.  See, Rochester Capital Leasing Corp. v. Williams Int. Ltd., 103 D.P.R. 163, 3 P.R. Offic. Trans. 226, 232 (1974)(classifying as penal clause contractual option for creditor to recover amount due and repossess property sold or leased).  Penal clauses are valid in Puerto Rico.  Id. at 233.  Their two most important functions are to guarantee the performance of the obligation and to evaluate in advance the damages that may be caused to the creditor in the event of a breach.  Id. at 234.

As to damages, the penal clause "substitute[s] indemnity for damages and the payment of interest in case of nonfulfillment, should there be no agreement to the contrary."  P.R. Laws Ann. tit. 31, § 3131.  That being so, the penal clause "eliminates all controversy" as to the amount to be paid in damages in the event of a contractual breach.  F.D.I.C. v. Empresas Cerromonte Corp., 2013 WL 5346725, *13 (D.P.R. Sept. 23, 2013).  They set the sum that the creditor may recover in damages under that circumstance.  And that is what plaintiff bargained for, limiting the amount it could recover.

Shifting lenses, the defendant argues that Clause 15 does not consider specific performance (Docket no. 63, p. 8).  Yet, Clause 15 provides that plaintiff shall be entitled to equitable remedies under law, and specific performance falls under that category.   The concept of specific performance shares consanguinity with the permanent injunction, itself a creature of equity.  See, Axia Netmedia Corporation v. Massachusetts Technology Park, 889 F.3d 1, 8 (1st Cir. 2018)(equating permanent injunction with order granting request for specific performance);

McDonald's Corp. v. Lebow Realty Tr., 888 F.2d 912, 913 (1st Cir. 1989)(request for permanent injunction ordering specific performance of option agreement); Bolin Farms v. American Cotton Ass'n, 370 F.Supp. 1353, 1369 (W.D. La. 1974)(noting that no bond can be required where specific performance has been ordered in the form of a permanent injunction).

That is why, as the Puerto Rico Supreme Court observed, "[a]n injunction to restrain a breach of a contract often operates to all intents and purposes as a decree for its specific performance." San Juan Racing & Sporting Club v. Foote, 31 P.R.R. 154, 158 (1922). It is true that an injunction cannot be granted to restrain a breach of a contract, compliance with which could not be compelled. Id. That limitation applies to obligations "to do" (in Spanish "hacer") but not to obligations to "give" (in Spanish "dar" or "entregar") or to "abstain" (in Spanish "no hacer"). Felix A. Rodríguez, Inc. v. Bristol-Myers Co., 281 F.Supp. 643, 646 (D.P.R. 1968). The obligation to sell or deliver real property carries an obligation to give. Id. And as such, it may be enforced by way of a permanent injunction mandating specific performance. See, In Re: Medical Educational and Health Services, Inc., 2015 WL 903346, **1, 4-5 (Bkcy. D.P.R. Feb, 27, 2015)(application for permanent injunction evaluated as one for specific performance and damages under Article 1077 of the Puerto Rico Civil Code).

Applying Clause 15 to the scenario under evaluation would entitle plaintiff to specific performance of the sale obligation at the agreed-upon price of $3,150,000, and to recover the $800,000 paid as Option Fee. Even though the result may seem harsh, it comes about with two components. First, penal clauses have a "coercive and punitive purpose." Rochester Capital Leasing Corp., 3 P.R. Offic. Trans. at 234-235. This *in terrorem* function exerts pressure on the debtor to comply with the obligation on the understanding that breach would be costly. Id. at 235. Second, penal clauses are subject to moderation "as a remedy in equity against the strictness or

excessive burden of the penal clause." In re Álvarez, 473 B.R. 853, 861 (BAP 1st Cir. 2012).

Courts have broad but not unfettered discretion to moderate or mitigate that burden. Id. at 863.

The debtor bears the burden of demonstrating lack of proportion between the breach and the

penalty to justify the court's intervention. Id. Be that as it may, though, the case has not reached

that point.

## II.    CONCLUSION

The remedial aspects of the action are covered by Clause 15 of the *Option to Purchase

Agreement.*  The relief it provides for is subject to the principles discussed above. But a word of

caution is in order. Penal clauses are "accessory" contractual stipulations. Levitt and Sons of

Puerto Rico, Inc. 5 P.R. Offic. Trans. at 261. Their validity depends on the principal obligation

not being "null and void," and its provisions not contravening public policy. Rochester Capital

Leasing Corp., 3 P.R. Offic. Trans. at 235. Clause 15 does not run afoul of public policy. Still,

defendant has challenged the principal obligation as being null and void. And that matter will be

decided at trial. In light of all these considerations, the defendant's "Motion to Dismiss Plaintiff's

Amended Complaint" (Docket No. 63) is DENIED.

SO ORDERED.

In San Juan, Puerto Rico, this 24th day of March, 2022.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
U.S. DISTRICT JUDGE

M Gmail
EXHIBIT 4
**Francisco Lopez-Romo <lopezromo@gmail.com>**

# Fw: Fw: judges order

**Alan Goldman** <goldiefun@msn.com>                                    Thu, Feb 15, 2024 at 12:16 PM
To: "lopezromo@gmail.com" <lopezromo@gmail.com>

---

**From:** Alan Goldman < goldiefun@msn.com>
**Sent:** Thursday, February 15, 2024 11:11 AM
**To:** Alan Goldman <goldiefun@msn.com>
**Subject:** Fw:

---

**From:** Edgardo Cartagena <edgardo.cartagena@mbcdlaw.com>
**Sent:** Wednesday, April 5, 2023 5:50 PM
**To:** goldiefun@msn.com <goldiefun@msn.com>
**Subject:**

Hi Alan. Did Arias send you copy of this Opinion and Order, issued by the prior judge on March 22, 2022?
We just found it during our search.

**Edgardo Cartagena**

Direct dial: (787) 723-8755 **|** Mobile: (787) 399-1863

Fax: (787) 723-8763 **|** edgardo.cartagena@mbcdlaw.com

www.mbcdlaw.com

PO Box 13399 **|** San Juan PR 00908

Plaza 273, Suite 700 **|** 273 Ponce de León Ave. **|** San Juan PR 00917-1934

Morell ▪ Cartagena ▪ Dapena

If there is any problem with this communication, please call us immediately at (787) 723-1233.

CONFIDENTIALITY NOTE: This electronic transmission contains information belonging to *Morell Cartagena & Dapena, LLC* which may be confidential or legally privileged. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action based on the contents of such information is strictly prohibited. If you have received this transmission in error, please notify us immediately by telephone at (787) 723-1233 or bby return e-mail. Thank you.

If there is any problem with this communication, please call us immediately at (787) 723-1233.

CONFIDENTIALITY NOTE: This electronic transmission contains information belonging to Ferraiuoli Cartagena & Ortiz, LLC which may be confidential or legally privileged. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of such information is strictly prohibited. If you have received this transmission in error, please notify us immediately by telephone (787) 723-1233 or return e-mail. Thank you.

**Teal Peak Capital_ LLC v. Goldman_ 2022 U.S. Dist. LEXIS 53838.pdf**
196K

EXHIBIT 5

**From:**
**Subject:** Fw: Unpaid legal services Alan Goldman
**Date:** Mar 15, 2024 at 3:20:30 AM
**To:** Lopezromo@gmail.com

He is lying.

**From:** Antonio A. Arias <Aaa@mcvpr.com>
**Sent:** Thursday, October 5, 2023 4:22 PM
**To:** mark goldman <marknmngoldman@gmail.com>; Alan Goldman <goldiefun@msn.com>
**Subject:** Unpaid legal services Alan Goldman

Greetings Mark and Alan: We have not been able to locate an email attaching the March 24th, 2022, order denying the motion to dismiss. However, as I stated during our call, this was discussed with Alan during my frequent and extended telephone conferences with him. Kindly let me know when you are available to continue our call and conclude our discussion.



**Antonio A. Arias** ▪ **Capital Member** ▪ 🌐
Aaa@mcvpr.com

T (787) 250-5604  ▪  M (787) 405-8672
270 Muñoz Rivera Ave. San Juan, Puerto Rico 00918

This e-mail and its attachment(s) may be privileged, confidential, and protected from disclosure. If you received this communication in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon this communication is strictly prohibited. Unintended recipient(s) must immediately delete the e-mail and attachment(s), and notify the sender. The information contained in this communication and its attachments, including discussion of U.S. federal income, Puerto Rico income or other tax related matter, is limited to the statements specifically set forth herein, and such statements are intended for the sole use and benefit of our client and are not intended to be relied upon by any other person. The discussion of tax related matters was not intended or written to be used, and it cannot be used, for purposes of avoiding U.S. federal, Puerto Rico or local tax penalties.