IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| ALAN GOLDMAN | * | CIVIL NO.: 24CV01136 |
| Plaintiff | * | |
| V | * | |
| McCONNELL VALDÉS, LLC; | * | |
| ANTONIO A. ARIAS-LARCADA, ET AL | * | |

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' "MOTION TO STAY DISCOVERY PENDING RESOLUTION OF THRESHOLD ISSUES" [DOCUMENT NUMBER 118]

TO THE HONORABLE COURT:

COMES NOW, Plaintiff, Alan Goldman, through his undersigned counsel and files his opposition to Defendants, Antonio Arias-Larcada, María Beale, their Conjugal Partnership, and McConnell Valdés, LLC's Motion for Stay of Discovery [Document Number 118], and respectfully States and Prays as follows:

1. Granting any stay of the discovery proceedings would prejudice Plaintiff's legal malpractice claim by causing unnecessary delay and would result in rewarding Defendants' lack of cooperation in the orderly discovery process.

2. Discovery should proceed as was previously determined by the Court's Scheduling Order [Document Number 91].

3. Defendants seek to stay discovery pending resolution of Defendants' Motion to Compel Plaintiff's physical and mental examination [Document Number 92], and Plaintiff's Motion for Change of Venue [Document Number 102], and Plaintiff's Motion to Amend the Complaint [Document Number 110].

4. Plaintiff, Goldman, is a Vermont resident who presents severe agoraphobia, *[long term PTSD], [OCD - Obsessive Compulsive Disorder - TIA's and heart troubles]* and immune-compromised status, who has sued Defendants for their legal malpractice, while they were representing Plaintiff in a previous lawsuit involving a Puerto Rico real estate property transaction.

5. In said previous lawsuit, Defendants, Arias and McConnell Valdés LLC did fail to pursue available legal remedies, such as rescinding or annulment of the option to purchase and sale contract, and by failing to obtain any appraisal reports, thus allowing the buyer's exploiting Plaintiff, Goldman's vulnerabilities.

6. On July 23, 2024, pursuant to Fed.R.Civ.P. 26(a)(1), Plaintiff, Goldman notified his initial disclosures. A link containing bate-stamped pages numbers 1 through 612 was sent electronically and was downloaded by Defendants' counsel, Mr. Manuel San Juan on or prior to July 25, 2024.

7. On July 23, 2024, pursuant to Fed.R.Civ.P. 26(a)(1), Defendants, Arias, Beale and McConnell Valdés LLC notified their initial disclosures.

8. On July 25, 2024, Plaintiff Goldman notified a link containing bate-stamped pages numbers 001-3,152.

9. On July 27, 2024, Plaintiff Goldman notified a link containing bate-stamped pages numbers 3,153 – 3,500.

10. On August 23, 2024, Defendants, Arias, Beale and McConnell Valdés served their "Defendants' First Set of Interrogatories and Request for Production of Documents."

11. On September 10, 2024, Plaintiff Goldman re-notified a link containing bate-stamped pages numbers 001-3,152.

12. On September 16, 2024, Plaintiff Goldman notified a link containing bate-stamped pages numbers 0001-7,466.

13. On September 18th, 2024, this Honorable Court ordered Plaintiff's medical examination to take place in Puerto Rico [Document Number 45], despite medical evidence of travel risks.

14. On September 24, 2024, Plaintiff Goldman re-notified a link containing bate-stamped pages numbers 001-3,500.

15. On September 30, 2024, Defendant, AIG Insurance Company served its "First Document Request to Plaintiff" and "First Set of Interrogatories to Plaintiff".

16. Plaintiff, Goldman sought relief [Documents Numbers 47, 62, 63], proposing a remote exam, and later filed for change of venue to Vermont [Document Number 102] and sought permission to file his third amended complaint [Document Number 110].

17. On October 2, 2024, Plaintiff, Goldman notified Plaintiff's First Set of Interrogatories to Defendants, McConnell Valdés, to Antonio Arias-Larcada and to Maria Beale.

18. On October 25, 2024, Plaintiff Goldman notified a link containing his medical records bate-stamped pages numbers 267-388.

19. On January 23, 2025, Plaintiff, Goldman notified Plaintiff's First Request for Production of Documents to Defendant, María Beale.

20. On January 23, 2025, Plaintiff, Goldman notified Plaintiff's Second Request for Production of Documents to Defendants, Arias-Larcada and McConnell Valdés, LLC.

21. On January 23, 2025, Plaintiff, Goldman notified Plaintiff's First Request for Admissions to Defendants, Arias-Larcada, Beale and McConnell Valdés, LLC.

22. On February 3, 2025, Plaintiff, Goldman provided his answers to Defendant, AIG Insurance Company's First Set of Interrogatories.

23. On February 3, 2025, Plaintiff, Goldman provided his answers to Defendants, Arias, Beale and McConnell's interrogatories.

24. On February 13, 2025, Defendants, Arias-Larcada, McConnell Valdés LLC provided their Answers to Requests for Admissions.

25. On February 22, 2025, Plaintiff Goldman re-notified a link containing bate-stamped pages numbers 0001-7,466.

26. On March 12, 2025, Plaintiff, Goldman sent Plaintiff's First Set of Interrogatories to Defendants, AIG Insurance Company and to Endurance American International Insurance Company.

27. On March 21, 2025, Defendant, AIG Insurance Company notified its objections.

28. On April 12, 2025, Plaintiff Goldman notified a link containing four appraisals of the real estate property for the years 2020, 2022, 2023 and 2024.

29. As of this date, Defendants, Arias-Larcada, Beale and McConnell Valdés LLC, have refused to provide any answers to Plaintiff's interrogatories and have not provided any documents that were requested by the Plaintiff.

30. In short, said Defendants have refused to participate in any good faith discovery.

31. This Honorable Court has broad discretion to stay discovery, but such a stay is considered an extraordinary remedy. It should not be granted if it would prejudice a party's ability to prepare its case or cause undue delay. *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990).

32. The <u>stay of discovery is an extraordinary remedy</u> that should **not be granted** where it would <u>prejudice a party's ability to prepare its case or cause undue delay</u>. *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936).

33. Courts weigh prejudice, hardship, dispositive likelihood, and judicial economy. *Jiménez v. Nielsen*, 326 F.R.D. 357, 361 (D. Mass. 2011).

34. When deciding whether to grant a stay, courts should evaluate the following factors:

    a) **Prejudice to the non-moving party** – Whether the stay would unfairly harm the opposing party's case preparation.

    b) **Hardship to the moving party** – The burden on the party requesting the stay if discovery continues.

    c) **Likelihood of case disposition** – Whether pending motions could resolve the case, making discovery unnecessary.

    d) **Judicial economy** – The potential for the stay to streamline court proceedings. *Landis*, 299 U.S. at 254-55; *Jiménez v. Nielsen*, 326 F.R.D. 357, 361 (D. Mass. 2011).

35. In their motion for stay of discovery, Defendants place much emphasis on Plaintiff, Goldman's claim that "his former lawyers failed to raise his alleged cognitive

impairment as a defense to the suit" and then, Defendants state that if the plaintiff still refuses to travel to Puerto Rico, the "Court will have no choice but to dismiss his complaint."

36. These two arguments have no substance. First, the claims pertaining to the defendants' lack of competence and legal malpractice, do not solely rely on the defendants' failure to properly address their former client's cognitive issues. That is only one of several errors and omissions that were incurred by them.

37. And, as to the issue of whether Plaintiff shall be able to travel or not for trial, there are several alternatives that would remedy this situation. For example: Plaintiff's **Remote Participation.**

38. The Federal Rules of Civil Procedure allow for remote participation under specific conditions. F.R.Civ.P. 30(b)(4) and 43(a) permit remote testimonies and depositions in substitution for live testimony at trial when there is **"good cause in compelling circumstances,"** such as any health risks that prevent travel. *Bluestar Expo Inc. v. Enis*, No. 21-20875-Civ-Scola (S.D. Fla. Oct. 17, 2022).

39. Any stay of discovery would halt Plaintiff, Goldman's evidence collection, including obtaining the witnesses' testimonies, and the opposing parties' expert witnesses' opinions, and delays Plaintiff's efforts directed to locate certain documents that would help to show Defendants' negligence, that actually led to the purchase and sale of Plaintiff's real property for less than 40% of the then current market value. *See,* Article 285, Civil Code of Puerto Rico (defects: error, fraud).

40. As of this date, Defendants' bad faith has been demonstrated by their failure to provide any answers to the pending interrogatories and by their failure to provide the documents that have been requested.

41. Defendants' focus on Plaintiff's health, but the legal malpractice claims rests primarily upon the legal issues and the applicable law, not on Plaintiff's health issues:

    (1) Their failure to advise on specific performance (Article 1060, 31 LPRA § 5311).

    (2) No due diligence, leading to exploitative sale (Article 1258).

    (3) No effort to obtain the annulment of the contract for fraud (*Article 292, Civil Code of Puerto Rico*: deception voids consent).

42. The gravamen of this litigation has little if anything to do with Plaintiff's health. Negligence under Article 1536, *Civil Code of Puerto Rico*, not health, is key.

43. Granting a stay would reward the bad faith litigation practice of Mr. Manuel San Juan, by allowing Defendants to further delay their discovery obligations while Plaintiff's <u>ability to continue prosecuting his case is stymied</u>.

44. Plaintiff Goldman's medical condition, including agoraphobia and immunocompromised status, necessitates expeditious proceedings including change of venue to avoid exacerbating his health risks.

45. Any stay delays justice for Plaintiff, Goldman, potentially violating his due process rights, and certainly violating F.R.Civ.P. 1's <u>mandate for "just, speedy, and inexpensive" resolution.</u>

46. **Remote Testimony Is Judicially Sanctioned Where Health Risks Preclude Travel:** Federal jurisprudence unequivocally affirms the propriety of remote participation in

civil proceedings where health-related impediments constitute "good cause in compelling circumstances," as contemplated under *Fed. R. Civ. P. 43(a)*. The federal judiciary has repeatedly recognized that live testimony via contemporaneous video transmission, where adequately safeguarded, satisfies both procedural integrity and constitutional due process.

47. In <u>*United States v. Yida*</u>, 498 F.3d 945 (9th Cir. 2007), the Ninth Circuit held that physical unavailability caused by health impairments, when corroborated through competent medical evidence, justifies remote testimonial accommodations. Likewise, <u>*Swenson v. GEICO Cas. Co.*</u>, No. 2:19-cv-01639, 2020 WL 4815035 (D. Nev. Aug. 19, 2020), solidified the courts' willingness to allow remote depositions based on credible health concerns, recognizing such conditions as a legitimate basis for deviation from in-person norms. These holdings are consonant with the pragmatic realities that were imposed by the COVID-19 pandemic and reflect a sustained judicial inclination toward remote accommodations when necessary <u>to preserve life and judicial access</u>.

48. Legal scholarship mirrors this position. *Professor Mary Margaret Chalk's article, Zoom-ing Around the Rules, 27 Stan. Tech. L. Rev. 180 (2024)*, synthesizes Rule 43(a)'s evolution, noting that *"courts have generally required a showing of medical necessity or other compelling circumstances to justify remote testimony, ensuring that the process does not compromise…trial integrity."* Similarly, *Dr. Karen Lisko, writing in 71 Sw. L. Rev. 63 (2021)*, observed that **the post-pandemic legal ecosystem**

**now anticipates regularized remote testimony for litigants and witnesses facing significant medical or logistical hardship.**

49. Plaintiff, Goldman has submitted voluminous, uncontroverted medical evidence—authored by Dr. Benjamin Flinn and Dr. Stone attesting to his immunocompromised state and chronic psychiatric fragility. Despite this, Defendants, through counsel Mr. Manuel San Juan, have repeatedly sought to compel Plaintiff, Goldman's physical presence in Puerto Rico, with full knowledge that such <u>travel may pose a lethal risk</u>. Mr. San Juan has brazenly acknowledged that such travel "may very well kill" Plaintiff Goldman, a staggering admission that amplifies the recklessness and bad faith animating the defense's strategy.

50. This is not merely an affront to medical science, but a <u>profound violation of the due process rights enshrined in the Fifth and Fourteenth Amendments</u>, which guarantee every litigant meaningful access to the judicial forum.

51. Denial of remote participation in the face of such overwhelming justification would constitute a constructive denial of justice and violations of Plaintiff, Goldman's constitutional due process rights.

52. **To be clear, Plaintiff, Goldman's physical condition is not the gravamen** of this legal malpractice action; rather, the relevant allegations pertain to the flagrant dereliction of fiduciary and professional obligations by Defendants, McConnell Valdés, LLC and its partners, including—but not limited to—their failure to pursue annulment of a patently unconscionable contract or to procure basic property appraisals safeguarding their elderly client's financial interests.

53. The egregiousness of Defendants' conduct is compounded by their exploitative use of Plaintiff, Goldman's debilitated condition not as a factor meriting accommodation, but as a tactical device aimed at impeding litigation, frustrating accountability, and avoiding adjudication on the merits.

54. This strategy is emblematic of the elder exploitation that Puerto Rican civil law—deeply rooted in Spanish legal tradition—unequivocally condemns. As expounded by the Tribunal Supremo de Puerto Rico in <u>Utility Consulting Services, Inc. v. Municipio de San Juan</u>, 115 D.P.R. 088 and <u>La Costa Sampedro v. La Costa Bolívar</u>, 112 D.P.R. 9, the doctrine of **"equivalencia o proporcionalidad"** mandates that contracts must bear some semblance of proportionality between consideration and obligation. Agreements so disproportionately imbalanced as to render them devoid of causality or justification are voidable under Puerto Rican contract law.

55. Defendants, failed Plaintiff, Goldman by providing erroneous legal advice, constituting legal malpractice. In <u>López de Victoria v. Rodríguez</u>, the Supreme Court invalidated an abusive legal fee arrangement that constituted economic coercion, reaffirming that attorneys owe clients not just competence, but fundamental fairness. The failure by Defendant McConnell Valdés LLC to advise Plaintiff, Goldman competently—combined with their current weaponization of his declining health—presents a paradigmatic case of compounded legal and moral failure.

56. Stay disrupts Scheduling Order, delays case. Discovery aids motions (Vermont contacts, medical records, malpractice evidence). Targeted limits suffice, not a stay. A stay would disrupt the Scheduling Order, require rescheduling deadlines, and

prolong litigation, undermining the Court's prior efforts to manage this case [Document Number 91].

57. Discovery is intertwined with the pending motions:

    (1) Evidence of Defendants' Vermont contacts, including emails, invoices, and payment records, supports the Motion for Change of Venue.

    (2) Medical records and expert testimony clarify Plaintiff, Goldman's health limitations.

    (3) Documents revealing Defendants' failure to advise on specific performance or to obtain or conduct appraisals strengthen the arguments raised in Plaintiff's Third Amended Complaint, along with the defendants "acquiescence" to the fact Defendants should never have abused the legal process, presenting frivolous and meritless allegations that they have now acquiesced to dismissal of based on the doctrine of absolute immunity, demonstrating clear malicious prosecution and abuse of process committed by the defendants, demonstrating continued legal malpractice.

58. Continuing discovery ensures the case progresses efficiently, avoiding piecemeal litigation. Defendants' concerns about discovery's scope can be addressed through targeted measures, such as limiting depositions or resolving specific disputes (e.g., María Beale's objections, Endurance and Sompo's Motion for Protective Order), without a blanket stay.

59. Defendants' Vermont ties—emails, payments (People's Bank, Community National Bank), LLC and legal instructions—support jurisdiction. *State of Vermont v. MPHJ Tech. Invs., LLC, 15-1310 (Fed. Cir. 2015)* (Vt. Super. Ct.): intentional conduct

suffices. Defendants' claim that the case could not have been brought in Vermont ignores their extensive contacts with the state, including:

(1) Arias' planned (but canceled) travel to Vermont and regular communications via emails and phone calls to Plaintiff's Vermont offices and residences.

(2) Instructions to sell Vermont properties and form LLCs for Vermont and Puerto Rico properties, documented in emails.

(3) Document transmissions to Vermont addresses and invoices issued to Plaintiff in Vermont.

(4) Payments processed through Vermont banks (People's Bank, Community National Bank) via checks and wires from ABG Corporation and Plaintiff personally from Vermont.

(5) Review of Vermont-generated documents by Defendant Arias.

(6) Verbal references to Defendant MCV personnel's visits to Stowe, Vermont, and property ownership there.

60. These contacts, supported by bate-stamped emails, invoices, and bank records, establish sufficient minimum contacts for jurisdiction in Vermont, weakening Defendants' opposition to the Motion for Change of Venue and their justification for a stay.

61. Vermont courts may exercise personal jurisdiction over non-resident defendants to the full extent permitted by the Due Process Clause of the Fourteenth Amendment. This is an exclusive right of the U.S. District Court for the District of Vermont in making such determination.

62. This means, that if a defendant has "minimum contacts" with Vermont, as the defendants here do, maintaining the lawsuit does not offend traditional notions of fair play and substantial justice, jurisdiction is appropriate. <u>State of Vermont v. MPHJ Technology Investments, LLC</u>, *supra,* Vermont Superior Court found personal jurisdiction appropriate where the defendant sent numerous correspondence to Vermont based clients, directed at Vermont residents. The court emphasized that such intentional conduct aimed at Vermont residents established sufficient contacts for jurisdiction. <u>Vieira v. Korda, et al, 17cv00160.</u> The court noted that mere incidental contacts are insufficient; however, consistent and intentional interactions with the forum state could establish jurisdiction. <u>Bank Brussels Lambert v. Fiddler González & Rodríguez</u>, 98-7706, the Second Circuit held that personal jurisdiction is proper when the defendant's conduct and connection with the forum state are such that they should reasonably anticipate being hauled into court there. Regular communications and transactions with the forum state can satisfy this standard. Based on Vermont's long-arm statute and supporting case law, the Defendants deliberate and substantial contacts with Vermont provide a strong basis for establishing personal jurisdiction in the state. Their activities were purposefully directed at Vermont, and the claims arise out of these contacts, satisfying the requirements for specific personal jurisdiction; wherein Plaintiff Goldman could have brought his case against Defendants in Vermont.

63. Defendants' Motion for Stay of Discovery is a dilatory tactic to avoid accountability for their legal malpractice and bad faith litigation conduct. A stay would prejudice

Plaintiff, Goldman, delay the proceedings, and undermine judicial economy, while the pending motions are unlikely to dispose of the case. Plaintiff, Goldman's health, while not central to the malpractice claim, supports remote participation under established federal law. Discovery should proceed to ensure a just and timely resolution.

WHEREFORE, Plaintiff, Alan Goldman respectfully requests from this Court to take notice of this opposition to Defendants' motion for stay of discovery, and:

(1) Deny Defendants' Motion for Stay of Discovery [Document Number 118];

(2) Order Defendants to comply with their discovery obligations;

(3) Grant Plaintiff Goldman an opportunity to submit any follow-up interrogatories, if necessary after defendants' compliance with their discovery obligations;

(4) Grant such further relief as the Court may deem to be just and proper.

RESPECTFULLY SUBMITTED.

In Miami, Florida, on the 21st day of April 2025.

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 21st day of April 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all the counsel of record.

*s/Francisco M. López-Romo*
FRANCISCO M. LOPEZ-ROMO
USDC-PR NO. 118314

PO Box 331823
Coconut Grove, Florida 33233
Telephone: 305-772-5577
Email: lopezromo@gmail.com