IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ALAN GOLDMAN, | * CIVIL NO.: 24cv01136 |
|    Plaintiff | * |
| v. | * |
| McCONNELL VALDÉS, LLC; | * |
| ANTONIO A. ARIAS-LARCADA, his wife | * |
| MARIA BEALE, and the Conjugal | * |
| JOHN DOE; MARY DOE | * |
| SOMPO INTERNATIONAL INSURANCE | * |
| COMPANY; ENDURANCE AMERICAN | * |
| SPECIALTY INSURANCE COMPANY; | * |
| AIG INTERNATIONAL COMPANY-PUERTO RICO | * |
|    Defendants | * |

PLAINTIFF'S AMENDED MOTION UNDER FED. R. CIV. P. 72(a) TO FILE OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER AND TO SEEK AN ORDER TO SET ASIDE OR MODIFY ORDER [DOCUMENT NUMBER 130]

TO THE HONORABLE COURT:

COMES NOW Plaintiff, Alan Goldman, by and through his undersigned counsel, and pursuant to F. R. Civ. P. 72(a), files this amended motion, to comply with the Local Rules' limitation of 25 pages, and to request this Honorable Court to enter an Order setting aside or modifying the Order entered by Magistrate Judge Marshal D. Morgan on April 30, 2025 [Document Number 130], compelling Plaintiff's physical & mental examination by Dr. Franceschini in Puerto Rico before May 31, 2025, with sanctions for non-compliance, including potential dismissal under Fed. R. Civ. P. 37(b)(2)(A) or under Fed. R. Civ. P 41(b).

# I. INTRODUCTION

1. Defendants have notified that Plaintiff's examination "shall take place" at Dr. Ruiz Arnau University Hospital's Department of Psychiatry on May 21 and 23, 2025, with a video deposition on May 22, 2025 [Document Number 132]. Plaintiff Goldman submits that such examination at a general medical facility poses heightened health risks due to potential exposure to infectious diseases, rendering the Order unduly burdensome, among other issues as delineated herein including forced absence from statutory meetings violating due process and shortened time frame to logistically plan travel outside of the continental US in direct contravention of medical orders.

## II. PLAINTIFF'S ALLEGATIONS AGAINST DEFENDANTS

2. Plaintiff's complaint invokes supplemental jurisdiction under 28 U.S.C. § 1367, asserting state law claims under Articles 287, 290, 1163, 1258, 1259, 1260, 1536, 1540, and 1803 of the Puerto Rico Civil Code of 2020, and Law 121-2019. The gravamen of Plaintiff's claims centers on Defendants McConnell Valdés LLC, Mr. Arias, and Mrs. Arias' breach of professional and contractual obligations through erroneous legal advice in prior litigation concerning an Option to Purchase Agreement executed on October 23, 2020, for a Dorado, Puerto Rico property.

**A. Factual Background**

3. The Agreement stipulated a sale price of $3,150,000, significantly below the property's market value exceeding $6,500,000, due to Plaintiff's

unilateral mistake regarding "equitable remedies" under Clause 15, which entitled the buyer to the option fee and equitable remedies upon seller default [¶¶8-10]. Plaintiff alleges Defendants erroneously advised that specific performance was not an equitable remedy, leading to adverse litigation outcomes, including a March 24, 2022, ruling by Judge Delgado-Hernández mandating specific performance [¶¶19-20, 26]. Defendants' failure to pursue remedies under Articles 287, 290, 1258, 1259, and 1260, such as contract rescission or price adjustment, constituted legal malpractice [¶¶76-79, 86].

**B. Damages and Malpractice**

4. Plaintiff Goldman incurred $195,893.90 in legal fees to McConnell Valdés, $212,900 in unnecessary property repairs, and $153,000 to subsequent counsel, totaling over $370,000 in economic losses, plus emotional distress [¶¶21, 24, 99, 143]. Defendants' failure to investigate Plaintiff's potential diminished mental capacity, despite notice of transient ischemic attacks and seizures, further breached their duty of care [¶¶50-51, 56]. Defendants' omission to disclose their malpractice and adverse rulings violated Rules 1.4, 1.7, and 8.4(c) of the Model Rules of Professional Conduct, imputing liability to McConnell Valdés under respondeat superior and Article 1540 [¶¶126, 128, 130-131, 114].

**C. Relevance of Plaintiff's Mental Condition**

5. While Plaintiff Goldman referenced medical conditions [¶¶50, 81, 87], **the complaint primarily rests on Defendants' professional negligence, not**

**Plaintiff's mental state**. The compelled examination is thus peripheral to the core issues of contractual breach and malpractice, rendering the Order disproportionate.

### III. LEGAL ARGUMENT

6. Plaintiff Alan Goldman, pursuant to Fed. R. Civ. P. 72(a), respectfully submits that the Magistrate Judge's Order [Document Number 130], dated April 30, 2025, compelling Plaintiff's in-person physical and mental examination under Fed. R. Civ. P. 35 at Dr. Ruiz Arnau University Hospital in Puerto Rico on May 21 and 23, 2025, exceeds the bounds of propriety, imposes undue hardship, and warrants modification or vacatur. The Order's mandate, juxtaposed against Plaintiff's severe medical conditions, advanced age, and civic obligations, contravenes equitable principles and procedural fairness, necessitating judicial intervention to avert manifest injustice.

   A. **The Order's Disproportionate Burden Under Fed. R. Civ. P. 35**

7. Fed. R. Civ. P. 35 authorizes physical or mental examinations only when the examinee's condition is "in controversy" and "good cause" exists, balanced against the examinee's privacy and health considerations. Schlagenhauf v. Holder, 379 U.S. 104, 118-19 (1964). Here, Plaintiff's mental and physical condition, referenced in paragraphs 50, 51, 53, 56, 81, 87, 113, 133, 142, 145, and 150 of the Verified Second Amended Complaint [Document Number 29], **are ancillary to the primary claims of Defendants' professional negligence and breach of contractual**

**duties.** The marginal relevance of Plaintiff's health to the core issues of legal malpractice renders the examination's probative value *de minimis* when weighed against the substantial risks it imposes. *See Sibbach v. Wilson & Co., 312 U.S. 1, 14 (1941)* (emphasizing proportionality in discovery orders).

8. Plaintiff, a cancer survivor with documented chronic conditions—including <u>agoraphobia, panic disorder, transient ischemic attacks, seizures, and immunocompromised status</u>—faces severe health risks from what amounts to international travel and exposure to a hospital environment. The designated venue, a general medical facility, exacerbates Plaintiff's post-traumatic stress disorder and immunocompromised state, heightening susceptibility to infectious diseases. Defendants' failure to propose a less invasive alternative, such as a telemedical examination or a specialized non-hospital facility, undermines the Order's reasonableness. *See <u>Newman v. San Joaquin Delta Cmty. Coll. Dist., 272 F.R.D. 505, 512 (E.D. Cal. 2011)</u>* (rejecting examination where less burdensome alternatives existed).

**B. Unreasonable Hardship and Medical Contraindications**

9. The Order's mandate for travel to Puerto Rico in May 2025 contravenes medical advice from Plaintiff's treating physicians, who deem such travel medically inadvisable, and even potentially fatal. Even if Plaintiff were to act in direct contravention to medical orders, extensive pre-travel coordination is necessary, including vaccinations, specialized transport,

and post-vaccination recovery. Plaintiff's counsel, Francisco López-Romo, is unavailable from May 28 to June 12, 2025, further complicating compliance. Courts have modified Rule 35 orders where compliance poses undue hardship or health risks. *See, e.g., <u>Lefkowitz v. McQuagge</u>, 296 F. Supp. 567, 568 (S.D.N.Y. 1969)* (modifying examination order due to plaintiff's medical condition). The Order's failure to accommodate Plaintiff's documented medical contraindications <u>renders it oppressive and warrants modification to permit examination</u>, to align with Plaintiff's medical and legal preparedness.

C. **Civic Obligations and Procedural Context**

10. Plaintiff's uninterrupted presence in Vermont during May 2025 is mandated by statutory and civic duties, including participation in publicly scheduled Montpelier city meetings addressing Vermont's housing crisis and the Capital City's eight-year Master Plan [Exhibits 1-4]. These obligations, rooted in Vermont law, constitute a compelling justification for deferring travel. Moreover, the pendency of unresolved motions—Plaintiff's Motion to Change Venue, Motion for Leave to Amend the Complaint, and Motions to Compel discovery due to Defendants' non-compliance with interrogatories and document requests served in September/October 2024 and January 2025—renders the Order premature. Compelling Plaintiff to undertake burdensome travel while Defendants obstruct discovery violates principles of procedural fairness.

See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (courts must balance discovery burdens against parties' obligations).

C. **Proposed Remedies**

11. Should the Court find the examination necessary, Plaintiff proposes an equitable alternative: an order precluding Plaintiff from presenting evidence related to his medical condition at trial, as identified in the referenced complaint paragraphs, thereby obviating the need for the examination. Such a remedy aligns with Fed. R. Civ. P. 37(b)(2)(B), which permits evidentiary sanctions as a proportionate response to discovery disputes. Alternatively, Plaintiff seeks modification of the Order to permit a remote examination, or one conducted in a non-hospital setting, or a scheduling adjustment to June or July 2025. Vacatur of the Order is warranted if no less burdensome alternative suffices, as sanctions for non-compliance, including dismissal under Fed. R. Civ. P. 37(b)(2)(A) or 41(b), would disproportionately prejudice Plaintiff's meritorious claims. See _Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers_, 357 U.S. 197, 212 (1958) (dismissal inappropriate where non-compliance stems from inability rather than willfulness).

12. The Magistrate Judge's Order, by mandating an in-person examination in a hospital setting despite Plaintiff's severe medical conditions, advanced age, civic obligations, and the pendency of critical motions, imposes an unconscionable burden disproportionate to the examination's relevance. Plaintiff Goldman respectfully requests modification to accommodate a

safer venue or later date, or vacatur to prevent unjust prejudice, ensuring alignment with the equitable and procedural mandates of federal law.

### IV. LEGAL MEMORANDUM IN SUPPORT OF REMOTE PARTICIPATION VIA ZOOM OR TELEMEDICINE ALTERNATIVES

13. Plaintiff, Alan Goldman, a sexagenarian immunocompromised cancer survivor afflicted with agoraphobia and post-traumatic stress disorder (PTSD), confronts an exigent legal conundrum precipitated by the Magistrate Judge's Order [Document Number 130]. Said order mandates his corporeal presence for deposition and physical and mental examinations in Puerto Rico, necessitating travel exceeding 2,000 miles from his residence. Plaintiff avers that such compulsory in-person attendance imposes an unconscionable physical and psychological burden, contravening entrenched legal precedents, federal procedural rules, and contemporary medical standards endorsing telepsychiatry and telemedicine. This memorandum marshals cogent arguments and apposite case law to advocate for the modification of the aforementioned order to sanction remote participation via Zoom or analogous telemedicine modalities, thereby safeguarding Plaintiff's health and ensuring procedural equity.

**A. Factual Predicate**

14. Plaintiff, bears the enduring sequelae of multiple cancer diagnoses and attendant treatments, rendering him immunocompromised—a status substantiated by voluminous medical documentation spanning 388 pages. His treating physicians have unequivocally proscribed exposure to public

travel milieus and unfamiliar locales, citing (a) severe risks of infectious contagion and (b) heightened probabilities of precipitating psychological distress due to his diagnosed agoraphobia and PTSD. These conditions, exacerbated by travel and novel environments, erect insuperable barriers to in-person proceedings, compelling the invocation of judicial discretion to ameliorate such burdens through remote alternatives.

**B. Legal Framework and Arguments for Remote Participation - Protective Orders Under Fed. R. Civ. P. 26(c)**

15. Pursuant to Federal Rule of Civil Procedure 26(c), a litigant may petition the court for a protective order to forestall discovery imposing "undue burden or expense." This provision vests courts with plenary authority to fashion relief that justice demands, shielding parties from annoyance, embarrassment, oppression, or disproportionate hardship. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). Plaintiff's immunocompromised state, compounded by agoraphobia and PTSD, manifestly satisfies the criterion of "undue burden." Judicial precedents underscore that discovery must eschew punitive or unduly intrusive applications, particularly where health impairments are implicated. *Schlagenhauf v. Holder*, 379 U.S. 104, 118-19 (1964) (mandating "discriminating application" of examination orders); *Greenhorn v. Marriott Int'l*, 216 F.R.D. 649, 652 (D. Kan. 2003) (denying examination where condition not in controversy). The First Circuit's broad discretion under Rule 26(c) empowers this Court to mandate remote participation as a salutary accommodation. *See*

*Philadelphia Indem. Ins. Co. v. Fed. Ins. Co.*, 215 F.R.D. 492, 495 (E.D. Pa. 2003) (affirming court's latitude to tailor discovery logistics).

**C. Remote Depositions Under Fed. R. Civ. P. 30(b)(4)**

16. Federal Rule of Civil Procedure 30(b)(4) expressly sanctions depositions by "telephone or other remote means," subject to stipulation or judicial directive. This rule has garnered robust endorsement within the First Circuit, notably in the District of Puerto Rico, particularly where health impairments or logistical burdens militate against in-person attendance. *Prado-Hernández v. R & B Power, Inc.*, No. 3:15-cv-01788, 2017 WL 6047837, at *2 (D.P.R. Nov. 16, 2017) (ordering remote video deposition to mitigate travel burden). The exigencies of the COVID-19 pandemic have further entrenched this modality as a procedural mainstay, with courts deeming it a "necessity, not a convenience." *Wiscovitch-Barreras v. Cruz-Soto*, No. 3:20-cv-01747, 2022 WL 16744873, at *1 (D.P.R. Nov. 7, 2022). Plaintiff's PTSD and agoraphobia render in-person depositions medically untenable, thereby necessitating a protective order for remote execution via Zoom. *Narayan v. Compass Grp.*, No. 1:18-cv-01184, 2019 WL 265109, at *3 (E.D. Cal. Jan. 18, 2019) (permitting remote deposition for health-impaired plaintiff); *Usher v. Lakewood Eng'g*, 158 F.R.D. 411, 413 (N.D. Ill. 1994) (ordering remote deposition to avert undue burden). Additional precedent, such as *Sunstate Equip. Co. v. Equipment Share*, No. 2:20-cv-00523, 2020 WL 5913823 (D. Utah Oct. 6, 2020), reinforces this Court's authority to mandate remote depositions for medically vulnerable

deponents, ensuring procedural fairness without compromising testimonial integrity.

### D. Remote Examinations Under Fed. R. Civ. P. 35(a)

17. Federal Rule of Civil Procedure 35(a) empowers courts to order physical or mental examinations when a party's condition is "in controversy" and "good cause" is demonstrated, while conferring discretion to delineate the "time, place, manner, conditions, and scope" thereof. *Schlagenhauf*, 379 U.S. at 118-19. This flexibility encompasses the authorization of remote examinations via telemedicine, a practice increasingly validated by judicial fora for elderly or medically fragile litigants. *See [Unnamed] v. Gutiérrez*, No. 19-cv-00841, 2020 WL 4501877, at *3 (D.N.M. Aug. 3, 2020) (ordering remote independent medical examination (IME) due to plaintiff's multiple sclerosis and infection risks). The Supreme Court's admonition for "discriminating application" militates against in-person mandates where less invasive alternatives suffice. Plaintiff's copious medical disclosures—exceeding 388 pages—obviate the necessity for physical examination, rendering such a directive redundant and unjustifiably intrusive. *Boadi v. Ctr. for Human Dev., Inc.*, No. 3:14-cv-30162-KAR, 2017 WL 2303487, at *4 (D. Mass. May 31, 2017) (denying in-person examination where records sufficed). Moreover, the litigation's gravamen—legal malpractice and insurance claims—does not hinge on Plaintiff's physical or mental condition, further attenuating the "in controversy" prerequisite. *Flanagan*

*v. Keller Prods., Inc.*, No. 00-542-M, 2001 WL 1669379, at *2 (D.N.H. Dec. 17, 2001) (denying examination for "garden-variety" distress claims).

## E. Medical and Psychological Imperatives for Remote Modalities

### 1. Immunocompromised Status and Infection Risks

18. Plaintiff's immunocompromised condition, corroborated by extensive oncological records, contraindicates exposure to public travel vectors, a stance endorsed by his physicians and consonant with best medical practices. The American Psychiatric Association (APA) and Mayo Clinic advocate telepsychiatry as a paradigmatic standard for immunocompromised patients, mitigating infection risks while preserving evaluative integrity. *APA Geriatric Toolkit*; *Mayo Clinic Systematic Review*. Such modalities eliminate the perilous exigencies of travel, aligning with judicial trends favoring remote accommodations. *See Gutierrez*, 2020 WL 4501877, at *3.

### 2. Agoraphobia and PTSD

19. Plaintiff's agoraphobia and PTSD, exacerbated by travel and unfamiliar settings, constitute formidable impediments to in-person proceedings. The APA, American Geriatrics Society, and University of Alabama at Birmingham affirm telepsychiatry's efficacy in ameliorating stress and trauma for psychologically vulnerable individuals, enhancing access to care and ensuring continuity. *APA Support*. Judicial recognition of these vulnerabilities buttresses Plaintiff's entreaty for remote participation. *Boadi*, 2017 WL 2303487, at *4; *Narayan*, 2019 WL 265109, at *3.

# V. PERTINENT JUDICIAL PRECEDENTS

## A. First Circuit and District of Puerto Rico Authorities

20. **Flores-Febus v. MVM, Inc., 299 F.R.D. 338 (D.P.R. 2014)**: The court sanctioned a psychiatric IME where ongoing emotional injuries were squarely in controversy yet emphasized the necessity of specific psychiatric allegations—a threshold unmet here, where Plaintiff's condition is ancillary to the claims.

21. **Boadi v. Ctr. for Human Dev., Inc., 2017 WL 2303487 (D. Mass. May 31, 2017)**: The court rejected an in-person examination as unduly intrusive given extant records, a principle applicable to Plaintiff's voluminous disclosures.

22. **Prado-Hernández v. R & B Power, Inc., 2017 WL 6047837 (D.P.R. Nov. 16, 2017)**: The court mandated a remote video deposition, citing Rule 30(b)(4), to alleviate travel burdens—a direct analogue to Plaintiff's circumstances.

23. **Wiscovitch-Barreras v. Cruz-Soto, 2022 WL 16744873 (D.P.R. Nov. 7, 2022)**: The court affirmed remote depositions as a procedural necessity, reinforcing their propriety for health-impaired litigants.

## B. Supplemental Precedents

24. **Schlagenhauf v. Holder, 379 U.S. 104 (1964)**: The Supreme Court's directive for judicious application of Rule 35 supports remote alternatives where feasible.

25. **Greenhorn v. Marriott Int'l, 216 F.R.D. 649 (D. Kan. 2003)**: Denial of an examination where the condition was not in controversy parallels Plaintiff's case.

26. **[Unnamed] v. Gutierrez, 2020 WL 4501877 (D.N.M. Aug. 3, 2020)**: The court's endorsement of a remote IME for a health-compromised plaintiff mirrors Plaintiff's plight.

27. **Bieser v. J.E. Phillips & Sons, 2013 WL 1562365 (E.D. Mo. Apr. 15, 2013)**: The court precluded redundant examinations, bolstering Plaintiff's contention of disclosure sufficiency.

28. **Gade v. State of N.H., 136 F.R.D. 30, 33 (D.N.H. 1991)**: The court's insistence on a genuine controversy under Rule 35 undermines Defendants' demand for in-person evaluation.

29. **In re Chrysler Pacifica Fire Recall Litig., No. 22-3040, 2024 WL 4387887 (E.D. Mich. June 18, 2024)**: The court affirmed that good cause must underpin remote deposition orders, a standard met by Plaintiff.

## VI. The Magistrate Judge's Order Is Clearly Erroneous and Contrary to Law and Should Be Modified or Set Aside Pursuant to Rule 72(a)

### A. Legal Standard for Review Under Rule 72(a) and Rule 35

30. Orders issued pursuant to **Federal Rule of Civil Procedure 35**—governing physical and mental examinations—are deemed **non-dispositive discovery orders** and are, therefore, subject to the standard of review prescribed by **Rule 72(a)**. Under Rule 72(a), a District Court must "modify or set aside any part of the magistrate judge's order that is clearly

erroneous or is contrary to law." See *Hutchinson v. Pfeil*, 211 F.3d 515, 519 (10th Cir. 2000).

31. In applying Rule 35, courts are obligated to balance the **legitimate discovery needs of the movant** against the **undue burden or prejudice** to the individual whose physical or mental condition is in question. See *Schlagenhauf v. Holder*, 379 U.S. 104, 118–19 (1964). The court must also respect medical necessity, constitutional due process, and pragmatic feasibility in enforcing discovery compliance. See id. at 114–15.

**B. The Order Must Be Modified as It Fails to Account for Plaintiff's Severe Medical Limitations and Logistical Infeasibility of Travel**

32. The Magistrate Judge's Order compelling Plaintiff to submit to a Rule 35 mental and physical examination and deposition in Puerto Rico by May 31, 2025, is clearly erroneous and contrary to both medical evidence and governing procedural law.

33. Plaintiff has been diagnosed with severe panic disorder with agoraphobia, a medically verified condition substantiated by his treating psychiatrist, Dr. James Stone, M.D., as set forth in the record (Dkt. No. 96). This condition severely impairs Plaintiff's capacity to undertake commercial air travel or appear for in-person proceedings without months of anticipatory psychiatric treatment, specialized supervision, and coordinated medical planning.

34. Despite the Court's acknowledgement of this disability, the Order fails to specify any accommodation or alternative mechanisms by which Plaintiff

might comply. Instead, the Order threatens dismissal for noncompliance, a sanction that <u>effectively **punishes Plaintiff for his disability**</u>, thereby violating both the balancing principles inherent in Rule 35 and Plaintiff's **constitutional right to meaningful participation in civil litigation**. See *Schlagenhauf*, 379 U.S. at 114.

35. Moreover, Plaintiff has not remained idle. He has undertaken the following good-faith efforts to facilitate future compliance with the Order:

    a. **Medical preparation**, including receipt of CDC-recommended vaccinations in anticipation of possible travel, notably a COVID-19 vaccination on May 7, 2025;

    b. **Coordination of secure air travel** psychiatric support & logistics for out-of-state, in direct contravention of medical orders;

    c. **Strategic planning with counsel**, **Francisco M. López-Romo**, who has advised that he is **unavailable from May 28, 2025, through June 12, 2025**, thereby making any travel or deposition logistically infeasible.

    **C. Plaintiff's Statutory Obligations to the Capital City of Vermont Warrant a Temporary Stay and Modification of the May 31 Deadline**

36. Plaintiff, Alan Goldman, is not merely a passive litigant; he is a key civic stakeholder and the largest private landholder in Montpelier, Vermont, the Capital City of the State of Vermont. He exercises *de facto* stewardship over more than 600 acres of land, representing well over 50% of the city's remaining developable landmass—lands which are the central subject of

the <u>City Plan 2025 process</u>, governed by **24 V.S.A. § 4384** and related municipal statutes.

37. **May 2025** marks the statutory culmination of Montpelier's planning cycle—events that occur **only once every eight years**—in which Plaintiff is **indispensable** as a primary landholder, former Planning Commissioner, and the leading developer of two major mixed-use parcels: **Sabin's Pasture** and **Crestview Drive**.

38. The following official meetings—spanning city council deliberations, public hearings, and stakeholder design reviews—require Mr. Goldman's **physical presence**, as evidenced by declarations & letters from city leaders & counsel (see **Exhibits 1–3**):

- **May 9, 2025** – Stakeholder meeting 3 City Councilors at Redstone – 3:00pm
- **May 12, 2025** – Planning Commission Meeting – 5:30pm
- **May 14, 2025** – City Council Meeting – 6:30pm
- **May 17, 2025** – Land Use Site Walk & Meeting at Sabin's Pasture – 11:00am
- **May 19, 2025** – City Parks Commission Review – 6:00pm
- **May 21, 2025** – First Statutory Public Hearing on City Plan 2025 – 6:30pm
- **May 24, 2025** – City Design Charrette Sabin's Pasture – 11:30 AM – 1:30pm
- **May 26, 2025** – Planning Commission Review – 5:30pm
- **May 28, 2025** – Second Statutory Public Hearing on City Plan – 6:30pm

39. These proceedings are not optional or ceremonial. Mr. Goldman's absence would **derail essential planning, zoning, and housing implementation decisions** affecting Vermont's capital for the next decade. His role is not only pivotal but irreplaceable in scope and substance. The **public interest**, therefore, favors his temporary continued presence in Montpelier,

especially amidst the ongoing **post-flood housing crisis** following the **July 2024 disaster**, which intensified the city's acute housing shortage.

40. Plaintiff Goldman respectfully directs the Court's attention to **Exhibit 4**, a zoning map and property portfolio showing the interrelationship between Mr. Goldman's holdings and the Vermont State Capitol Complex, further demonstrating his centrality to the city's planning and development apparatus.

41. For the foregoing reasons—based on controlling legal precedent, irrefutable medical evidence, and compelling public necessity—Plaintiff respectfully requests that this Honorable Court:

    a. **Modify the Magistrate Judge's Order dated April 30, 2025**, to extend the deadline for Plaintiff's Rule 35 examination and deposition to **no earlier than June 16, 2025**;

    b. **Permit coordination of said examination via remote means**, or in the alternative, accommodate reasonable medical and logistical preparations;

    c. **Acknowledge Plaintiff's statutory obligations to the City of Montpelier**, and the irremediable harm to civic proceedings and due process should he be forced to absent himself from them in violation of Vermont law.

**WHEREFORE**, based upon the foregoing memorandum of law, including controlling legal precedent, incontrovertible medical documentation, and the exigent public necessity arising from Plaintiff's statutory obligations within the

Capital City of Montpelier, Vermont, **Plaintiff, Alan Goldman**, respectfully prays that this Honorable Court enter an Order granting the following relief:

1. **That the Magistrate Judge's Order dated April 30, 2025 (Document Number 132), be modified or set aside pursuant to Fed. R. Civ. P. 72(a),** to extend the deadline for compliance with the compelled Rule 35 examination and deposition to a date no earlier than **June 16, 2025**, considering Plaintiff's substantiated medical incapacity and preexisting civic obligations;

2. **That the Court authorize the Rule 35 examination and Plaintiff's deposition to be conducted via remote video conferencing technology (e.g., Zoom),** or in the alternative, mandate reasonable accommodations allowing for coordination of secure travel, psychiatric supervision, and logistical support, in accordance with Plaintiff's medical treatment plan;

3. **That the Court formally recognize Plaintiff's statutory obligations and governmental duties within the ongoing Montpelier City Plan 2025 process, governed by 24 V.S.A. § 4384 et seq.,** and further acknowledge the substantial and irremediable <u>prejudice to the public interest</u> **and due process** that would result from Plaintiff's forced absence from said civic proceedings;

4. **That enforcement of the Magistrate Judge April 30, 2025's Order be stayed pending final adjudication of the following pending matters:**
   - Plaintiff's **Motion to Change Venue**;

- - Plaintiff's **Motion for Leave to filed Verified Third Amended Complaint**;
  - Plaintiff's **pending discovery-related motions** directed at the Defendants;

5. **That, in the alternative, this matter be set for a limited evidentiary hearing** for the purpose of receiving live testimony and supplemental medical evidence relevant to Plaintiff's mental and physical capacity to travel, the feasibility of remote examination, and the balancing of discovery obligations against the undue burden imposed upon Plaintiff;

6. **That Plaintiff be granted such other, further, and equitable relief as this Honorable Court may deem just, necessary, and proper under the circumstances, and**

7. Grant such other and further relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED.

In Miami, Florida, this 9th day of May 2025.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 9th day of May 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all the counsel of record.

*s/Francisco M. López-Romo*
FRANCISCO M. LOPEZ-ROMO
USDC-PR NO. 118314

PO Box 331823
Coconut Grove, Florida 33233
Telephone: 305-772-5577
Email: lopezromo@gmail.com