IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

ALAN GOLDMAN,

   Plaintiff,

        v.

MCCONNELL VALDÉS, LLC, ANTONIO A. ARIAS-LARCADA, MARIA BEALE, THE CONJUGAL PARTERNSHIP ARIAS-BEALE, SOMPO INTERNATIONAL, ENDURANCE AMERICAN SPECIALITY INSURANCE COMPANY AND AIG INSURANCE COMPANY PUERTO RICO,

   Defendants.

CIV. NO. 24-1136 (SCC)

**OPINION AND ORDER**

Pending before the Court is Plaintiff Alan Goldman's ("Mr. Goldman") request for a change of venue under 28 U.S.C. § 1404(a) (the "Motion"). *See* Docket No. 102. He seeks the transfer of the captioned case from the District of Puerto Rico to the District of Vermont because, he claims, he suffers from several medical conditions that make it difficult for him to travel and "key witnesses and parties" are in Vermont, not in Puerto Rico. *Id.* at pg. 1. Defendants McConnell Valdés, LLC ("McV"), Antonio Arias-Larcada ("Mr. Arias-Larcada"), his wife María Beale ("Mrs. Beale"), and the conjugal

partnership constituted between them (collectively, the "Defendants"), opposed the request. *See* Docket No. 108.[1] Mr. Goldman subsequently filed a reply in support of his request. *See* Docket No. 112.

For the reasons set forth below, Mr. Goldman's Motion is **DENIED**.

## I. ANALYSIS

### A. A Brief Primer

At the crux of Mr. Goldman's claims in this suit is his contractual relationship for legal services with McV, a Puerto Rican law firm. But what prompted Mr. Goldman to seek the legal services of McV in the first place? Well, Mr. Goldman owned a home in Dorado, Puerto Rico (the "Property") and on October 23, 2020, he executed an "Option to Purchase Agreement" (the "Agreement") with Mr. John Michael Grzan and Mrs. Namrata Khimani (the "Buyers") for the future sale of the Property.

---

[1] Co-defendants AIG Insurance Company Puerto Rico, Sompo International Insurance Company and Endurance American Specialty Insurance Company moved to join Defendants' opposition. *See* Docket Nos. 109, 113. The requests were noted. *See* Docket Nos. 121-122.

Things started to get rocky, however, when Mr. Goldman refused to execute the deed of sale of the Property. This prompted the Buyers, through their designated assignee, Teal Peak Capital, LLC ("Teal Peak Capital") to sue him. *See generally Teal Peak Capital, LLC v. Bram-Goldman*, Civ. No. 20-1747 (CVR). [2] That suit was filed in this District on December 24, 2020.[3] There, Teal Peak Capital claimed, *inter alia*, that by refusing to execute the deed of sale of the Property, Mr. Goldman breached the clear text of the Agreement. This is where McV comes into the picture.

On January 13, 2021, Mr. Goldman hired McV to represent him in the Teal Peak Capital case. Things appeared to be going well. Mr. Goldman incorporated to his Verified Second Amended Complaint a series of emails where Mr. Arias-Larcada suggests a way to resolve the legal foibles with Teal Peak Capital. Those emails, and the legal opinions

---

[2] The case was initially assigned to Judge Pedro A. Delgado and was subsequently transferred to Judge Camille Vélez-Rivé. *See* Civ. No. 20-1747, Docket No. 141.

[3] An Amended Complaint was filed on May 28, 2021. *See* Civ. No. 20-1747, Docket No. 50.

rendered therein apparently led Mr. Goldman to believe that the Court would not order the sale of the Property. So, under that impression, Mr. Goldman incurred in over $200,000 worth of repairs to the Property.

Notwithstanding McV's representations, on March 24, 2022, then presiding Judge Pedro A. Delgado, issued a "Memorandum and Order" whereby he denied Mr. Goldman's motion to dismiss Teal Peak Capital's case against him. There, Judge Delgado highlighted that Teal Peak Capital was essentially entitled to the relief it sought, to wit, specific performance and recovery of the option fee. According to Mr. Goldman, McV never gave him a copy of Judge Delgado's ruling. And this is reportedly when the relationship between McV and Goldman started going awry.

Mr. Goldman argues that, not only did McV fail to provide him a copy of Judge Delgado's ruling, but it also failed to inform the Court of his declined mental state. Mr. Goldman further claims that had his mental state not been deteriorating, he would not have agreed to the sale of the Property for what he believes was an amount below market value. He claims McV knew that the Property was being sold

below market value. In sum, Mr. Goldman contends McV did not adequately represent him throughout the Teal Peak Capital case.

Dissatisfied with McV's work, on March 26, 2023, Mr. Goldman asked McV to withdraw as his legal counsel in the Teal Peak Capital case. McV did so the next day.

Mr. Goldman's apparent discontent with McV's work during the Teal Peak Capital case led to the filing of the captioned case in this District. In the Verified Second Amended Complaint, Mr. Goldman includes allegations against the Defendants, under Puerto Rico law, for unjust enrichment, legal malpractice, negligence, vicarious liability, and failure to report malpractice. Also alleged is a direct action, under Puerto Rico law, against the following insurers: AIG Insurance Company Puerto Rico ("AIG"), Sompo International Insurance Company and Endurance American Specialty Insurance Company (collectively, "Sompo"). In the Verified Second Amended Complaint, Mr. Goldman claims that venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) and "since the events giving rise to these claims arose in this District." *See* Docket No. 29, pg. 2.

With this primer in tow, the Court turns to Mr. Goldman's request to transfer this case to the District of Vermont.

**B. 28 U.S.C. § 1404(a)**

The Court's starting point is 28 U.S.C. § 1404(a). That statute states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Mr. Goldman's request relies on the first two portions of the change of venue statute, to wit the convenience of the parties and witnesses and the interest of justice. But by framing his request exclusively under those two categories, Mr. Goldman overlooks the fact that the Court must first evaluate whether this case could have been brought in Vermont or if the parties consented to the transfer to Vermont "by contract or stipulation." *See Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013) (quoting 28 U.S.C. § 1404(a)). If either of those preconditions is satisfied, then the Court can consider if the requested transfer will be suitable

for the witnesses and parties or if the transfer will be in the interest of justice.[4] Mr. Goldman bears the burden of establishing that transfer under § 1404(a) is warranted. *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 13 (1st Cir. 2009).

Here, the parties have not consented to the transfer. So the Court need only consider if Mr. Goldman could have originally filed this suit in the proposed transferee district, Vermont. To make that determination, the Court must "inquire as to whether jurisdiction and venue are proper in the transferee court." *Marel Corp. v. Encad Inc.*, 178 F.Supp.2d 56, 58 (D.P.R. 2001); *see also* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3845 (4th ed. 2025) (explaining that, per the Supreme Court's ruling in *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960), § 1404(a) "requires the district judge to assess personal jurisdiction and venue in the transferee court as of the time the suit was brought").

---

[4] It is worth mentioning, however, that even when parties consent to a transfer, the Court must still ensure that it has subject matter jurisdiction to hear the case for "a lack of subject matter jurisdiction cannot be cured by consent." *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3845 (4th ed. 2025).

Subject matter jurisdiction in this case is predicated on diversity jurisdiction. The parties are on the same page as to that point. However, that is the only thing they appear to agree on.

Defendants, for their part, claim that Vermont does not have personal jurisdiction over them. *See* Docket No. 108, pgs. 12-13. And if Vermont does not have personal jurisdiction over them, a change of venue under § 1404(a), is out of the question. *Id.* Not so, says Mr. Goldman. *See* Docket No. 112, pgs. 2-5. The Court agrees with the Defendants.

## C.  Personal Jurisdiction

The Vermont long-arm statute allows courts to exercise personal jurisdiction over a defendant if certain constitutional due process requirements are satisfied. *See Fox v. Fox*, 2014 VT 100, ¶ 9, 197 Vt. 471, 106 A.3d 919. Personal jurisdiction can be divided into two categories: general and specific. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017). Here, Vermont has neither specific nor general jurisdiction over the Defendants.

1. *Specific Jurisdiction*

"Specific jurisdiction exists when 'a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum[.]'" *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567-68 (2d Cir. 1996) (quoting *Helicópteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984)). "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).

Specifically, the contacts "must show that the defendant deliberately 'reached beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Ford Motor Co.*, 592 U.S. at 359 (quoting *Walden v. Fiore,* 571 U.S. 277, 285 (2014)). This follows that "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers Squibb Co.*, 582 U.S. at 262 (quoting *Goodyear Dunlop*

*Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

McV entered into a contract with Mr. Goldman to serve as his legal counsel in the Teal Peak Capital case. Mr. Goldman claims he signed that contract while in Vermont. *See* Docket No. 112, pg. 5. Therefore, he maintains, "[a]lleging that Vermont laws and Vermont interactions are lacking, is to lack candor with the Court." *Id.* Mr. Goldman also claims that McV "sent its invoices to a mail address in Vermont, solicited payments from a resident of Vermont, and received wire transfers from banks operating in Vermont." *Id.* at pg. 4. He adds that McV "received payments from Vermont Citizens, communicated with Vermont Citizens, and [Mr.] Arias-Larcada and [McV] rendered their legal advice and provided their services and consultation, while [Mr.] Goldman was present at those times in Vermont." *Id.* Mr. Goldman is under the impression this is enough for Vermont to exercise specific jurisdiction over the Defendants. It is not.

The Court has not been provided with a copy of the contract executed by Mr. Goldman and McV. But that is neither here nor there. Whether Mr. Goldman signed the contract in Vermont is inconsequential to the specific

jurisdiction analysis the Court is tasked with running here because ultimately, Mr. Goldman has not shown that the Defendants' contacts with Vermont are tied to the captioned case. And there is a simple explanation for why he is unable to make such a showing: the Defendants' purported contacts with Vermont were purely incidental.

Here, McV did not reach out to Mr. Goldman to do business in Vermont. To the contrary. Mr. Goldman sought the services of McV to represent him in connection with the Teal Peak Capital case. And that case was initiated and litigated in the District of Puerto Rico. Puerto Rico law governed the suit and the case dealt with the Agreement which in turn implicated the Property, located in Dorado, Puerto Rico. And it is because of Mr. Goldman's purported discontent with how McV represented him in the Teal Peak Capital case that this suit was filed. Neither the Teal Peak Capital case nor the instant case have anything to do with Vermont.

Furthermore, Mr. Arias-Larcada is "admitted to practice law in Puerto Rico." *See* Docket No. 29, pg. 17. No allegation, let alone evidence, has been advanced to support

the proposition that Mr. Arias-Larcada or any McV attorney that may have represented Mr. Goldman in the Teal Peak Capital case, are authorized to practice law in Vermont and there is no allegation that Vermont law governed the legal services contract entered into between McV and Mr. Goldman.

That Mr. Goldman resides in Vermont and that invoices were sent to a Vermont address are purely incidental occurrences that are not enough to establish specific jurisdiction over the Defendants. Those actions by McV were out of necessity since Mr. Goldman was in Vermont, not Puerto Rico. But the substantive matters that McV handled for Mr. Goldman, by virtue of the legal services contract, pertained to events that occurred in Puerto Rico, not Vermont. McV's actions throughout its contractual relationship with Mr. Goldman for legal services in connection with the Teal Peak Capital case do not establish that Vermont can exercise specific jurisdiction over the Defendants.

Moreover, allegations regarding Sompo and AIG are scarce. There is not much for the Court to go on. But what is clear is that the Verified Second Amended Complaint is

devoid of any indication that Sompo and AIG had any contacts with Vermont that were somehow tied to the Teal Peak Capital case and to this suit.

What is more, Vermont is only mentioned twice in the Verified Second Amended Complaint and none of those instances concern the Defendants' contacts with Vermont, in any capacity. The first mention makes clear that Mr. Goldman is a "resident of Montpelier, Vermont." *See* Docket No. 29, pg. 2. The second mention excludes the possibility that Defendants John Doe and Mary Doe are residents of Vermont. *Id.* at pg. 3. Based on this analysis, the Court holds that Vermont cannot exercise specific jurisdiction over the Defendants (including Sompo and AIG).

   **2.** *General Jurisdiction*

General jurisdiction entails different considerations. "[A]n individual is subject to general jurisdiction in [his or] her place of domicile." *See Ford Motor Co.*, 592 U.S. at 358-59. Meanwhile, "the equivalent forums for a corporation are its place of incorporation and principal place of business." *Id.* at 359.[5] Logically, the inquiry here focusses on whether the

---

[5] There is no indication that the "at home" test would be different for McV

defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 317 (1945)). General jurisdiction, contrary to personal jurisdiction, "permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." *Metro. Life Ins. Co.*, 84 F.3d at 568.

Here, none of the Defendants (including Sompo and AIG) are domiciled in Vermont. Further, McV, Sompo and AIG were not incorporated in Vermont and their respective principal places of business are not in Vermont. There are no claims as to the Defendants having any continued and systematic contacts with Vermont that would essentially render them "at home" in Vermont. Accordingly, the Court finds that Vermont cannot exercise general jurisdiction over the Defendants (including Sompo and AIG). And since

---

because it is a limited liability company, not a corporation. After all, "the entity type is not germane to this jurisdictional analysis; instead it is the company's domicile that merits attention." *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 337 n. 10 (5th Cir. 2020). In any event, there is no indication that McV's members are domiciled in Vermont.

Vermont has neither general nor specific jurisdiction over the Defendants, Vermont lacks personal jurisdiction over the Defendants (including Sompo and AIG).

## D. Venue

Since the Court has determined that Vermont lacks personal jurisdiction over the Defendants (including Sompo and AIG), its analysis could end here. However, the Court will still run the venue analysis to determine if Vermont is a proper venue.

"[V]enue is proper so long as the requirements of § 1391(b) are met[.]" *See Atl. Marine Constr. Co., Inc.*, 571 U.S. at 57. And § 1391(b) states that "[a] civil action may be brought in" the following places:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

In this case, none of the Defendants (including Sompo and AIG) reside in Vermont. None of the events that prompted this suit occurred in Vermont. Lastly, as the Court's analysis *supra* revealed, Vermont lacks personal jurisdiction over the Defendants (including Sompo and AIG). In short, venue is not proper in Vermont.

Having found that Vermont lacks personal jurisdiction over the Defendants (including Sompo and AIG) and that Vermont is not a proper venue, the Court need not consider if the transfer would benefit the parties and witnesses or if it would be in the interest of justice. The matter of personal jurisdiction presented a threshold matter and the Court has found that Vermont lacks it. The Court also found that venue would be improper in Vermont. Therefore, the Court's analysis ends here.[6]

---

[6] Mr. Goldman mentions that because courts must comply with the American with Disabilities Act ("ADA"), this favors a transfer. *See* Docket No. 102, pg. 6. The Court does not turn a blind eye to Mr. Goldman's medical conditions. However, the mere invocation of the ADA does not clear the personal jurisdiction hurdle.

## II. CONCLUSION

The question the Court had to answer was the following: Could this suit have been initiated in Vermont? And based on the Court's analysis, the answer is no. Accordingly, Mr. Goldman's Motion at Docket No. 102 is **DENIED.** [7]

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of May 2025.

S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE

---

[7] After Mr. Goldman filed the Motion for Change of Venue (the "Motion"), he filed a motion for leave to file a verified third amended complaint (the "Motion for Leave"). *See* Docket No. 110. Since the Motion for Leave is still pending before this Court, throughout this Opinion and Order, the Court relied on the operative complaint in this case, to wit, the Verified Second Amended Complaint. In any event, had the Court relied on the tendered Verified Third Amended Complaint, *see* Docket No. 110-1, the Court would still have reached the same conclusion it reached today. Neither the Verified Second Amended Complaint nor the tendered Verified Third Amended Complaint, show that Vermont can exercise personal jurisdiction over the Defendants (including Sompo and AIG) or that venue is proper in Vermont. Interestingly, even though the Motion for Leave was filed after the Motion, in the tendered Verified Third Amended Complaint, Mr. Goldman states that venue is proper in this District, not Vermont. *See* Docket No. 110-1, pg. 3.