IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| ALAN GOLDMAN | * | CIVIL NO.: 24CV01136 |
| Plaintiff | * | |
| V | * | |
| McCONNELL VALDES, LLC; ANTONIO A. ARIAS-LARCADA, ET AL | * | |
| Defendants | * | |

## WITNESS, IRMARILIS TORRES FALCON'S STATEMENT UNDER PENALTY OF PERJURY IN SUPPORT OF MOTION IN COMPLIANCE WITH COURT'S ORDER

**I, Irmarilis Torres Falcón, under penalty of perjury, declare and state as follows:**



1. I am the Plaintiff's witness and submit this statement under penalty of perjury concerning certain facts surrounding the Court-ordered psychiatric and physical evaluation of Plaintiff Goldman that was conducted by Dr. Franceschini on June 27th, 2025.

2. I was retained to accompany Plaintiff, Goldman during said evaluation. I was not present during Plaintiff's evaluation, but I shall provide key factual testimony regarding some of the events that took place during the two evaluation dates, as well as about the interactions that took place in my presence, by and between Dr. Franceschini as the medical examiner and Plaintiff, Goldman.

3. On June 26, 2025, I picked up the plaintiff at 8:05 a.m. at the Vanderbilt Hotel in Condado and drove him to Dr. Franceschini's office at the Universidad Central del

Caribe, Ramón Ruiz Arnau University Hospital, Laurel Avenue, Bayamón, Puerto Rico. We arrived at approximately 9:00 a.m. Dr. Franceschini's assistant received us and took us to a conference room to wait for the doctor.

4. Dr. Franceschini arrived at 10:00 a.m. We introduced ourselves and, after a brief conversation, Dr. Franceschini asked me to step out of the conference room so that he could begin the physical and mental evaluation of the plaintiff. I remained in the hallway of the facilities near Dr. Franceschini's office and later met with his assistant in her office until the evaluation was completed.

5. Once the evaluation concluded, Dr. Franceschini said goodbye and stated, "See you tomorrow at 10:00 a.m." Afterwards, on same date the plaintiff expressed to me that he was very satisfied with the evaluation that had taken place on said date. I then drove the plaintiff back to his hotel, finishing my duties at approximately 12:45 p.m.



6. The following day, June 27, 2025, I picked up the plaintiff from the hotel in Condado at 9:00 a.m. and drove him to Dr. Franceschini's office, arriving at approximately 9:40 a.m. At 10:00 a.m., Dr. Franceschini arrived. I left the conference room and went to my car parked in the parking lot, to handle some work-related matters while the evaluation was ongoing.

7. While in my car, I received a telephone call from Plaintiff's attorney Francisco M. López-Romo, asking me where I was, and he told me that the session had ended, that the plaintiff was looking for me and could not find me. I immediately returned to Dr. Franceschini's office. When I entered, I was able to observe that there was a separate office, located to the left of the assistant's desk, and the plaintiff and Dr. Franceschini were there.

8. When the plaintiff saw me, he asked me where I had been, saying that he had gone out looking for me and couldn't find me. I explained to him that I was waiting in the parking lot for his call once the session was over. The Plaintiff told me that he had looked for me multiple times in the parking lot but could not locate me, that a situation had come up with some questions, that he had called attorney López Romo and was unable to reach him, that he kept calling but got no answer. Plaintiff then said that he had eventually spoken with the attorney, but I do not recall to which attorney the Plaintiff was referring to, and that the situation had been resolved. At that moment, Dr. Franceschini told me that, in over 30 years of his practice, this was the first time that any patient had refused to answer his questions. I asked Dr. Franceschini whether everything had been clarified and if the evaluation could now continue. Dr. Franceschini responded to me that his time was over, that the session had been scheduled for two hours and that his time had expired. In my presence, the plaintiff stated to Dr. Franceschini that he was available to continue with the evaluation, but Dr. Franceschini said no, that the time had ended. I then told the plaintiff, 'Let's go, there's nothing else to do' and we left.

9. On the way back, the plaintiff seemed very concerned about the questions Dr. Franceschini had asked him about. Mr. Goldman said that he believed that he was not required to discuss the legal case with the doctor, but that Mr. Goldman had not been able to reach his attorney. On our return trip, we stopped at CPA Javier M. García Quintana's office, and I later drove Mr. Goldman to his hotel at approximately 1:00 p.m.

I affirm under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: _September 30th, 2025_
  [Date]

Signature: _____
  Irmarilis Torres Falcón